# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.  23-55019-LRC |
| BINANAT CAPITAL, LLC, | ) | |
| | ) | CHAPTER 7 |
| DEBTOR. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| KATHLEEN STEIL, CHAPTER 7 | ) | |
| TRUSTEE, | ) | ADVERSARY NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARINAT HOLDINGS, LLC | ) | |
| SINDRE, LLC, | ) | |
| THE KOHLER FAMILY TRUST, | ) | |
| DOUGLAS LEE WYATT, | ) | |
| JOHN DOUGLAS WYATT, | ) | |
| ANDRE M. JONES, | ) | |
| AMJ SOLUTIONS, LLC | ) | |
| MATT WAYNE PUSKARICH a/k/a | ) | |
| WAYNE PUSKARICH, | ) | |
| MWP REAL ESTATE HOLDINGS, LLC, | ) | |
| MWP FINANCIAL, LLC, | ) | |
| JOEL R. GOLDSMITH, | ) | |
| MASHALA INVESTMENTS, LLC, | ) | |
| RICHARD SVENSSON, | ) | |
| PV CAPITAL, LLC, | ) | |
| LAFER FAMILY INVESTMENTS, LLC, | ) | |
| DEBRA SIPLES, | ) | |
| JONATHAN BRETT BAHNSEN, | ) | |
| BRETT BAHNSEN REVOCABLE | ) | |
| LIVING TRUST JULY 11, 2018, | ) | |
| CRAIG BARRETT, | ) | |
| NICHOLAS P. BODIN, | ) | |
| ROBERT A. HOLTON, JR. | ) | |
| Defendants. | ) | |

## COMPLAINT

Kathleen Steil as Chapter 7 Trustee ("Trustee") files this Complaint as follows:

**Jurisdiction**

1.

The Involuntary Petition for Chapter 7 Bankruptcy relief was filed by several creditors of BinaNat Capital, LLC (the "Debtor" and/or "BinaNat") on or about May 31, 2023 ("Petition Date").  The Order for Relief in Involuntary Case ("Order for Relief") was entered on September 22, 2023.  Notice of Appointment of Kathleen Steil as the Interim Chapter 7 Trustee was entered on September 29, 2023. The 341 meeting was concluded on December 8, 2023.

2.

Defendant AriNat Holdings, LLC ("Arinat") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

3.

Defendant Sindre, LLC ("Sindre") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

4.

Defendant PV Capital, LLC ("PVC") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

5.

Defendant The Koehler Family Trust ("KFT") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

6.

Defendant Douglas Lee Wyatt ("Wyatt") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

7.

Defendant John Douglas Wyatt ("J. Wyatt") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed.R.Bank.P. 7004.

8.

Defendant Andre M. Jones ("Jones") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed.R.Bank.P. 7004.

9.

Defendant AMJ Solutions, LLC ("AMJ") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed.R.Bank.P. 7004.

10.

Defendant Matt Wayne Puskarich a/k/a Wayne Puskarich ("Puskarich") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

11.

Defendant MWP Real Estate Holdings, LLC ("MWP Real Estate") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

12.

Defendant MWP Financial, LLC ("MWP Financial") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

13.

Joel R. Goldsmith ("Goldsmith") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

14.

Mashala Investments, LLC ("Mashala") is subject to the jurisdiction and venue of this

Court and may be served pursuant to Fed. R. Bankr. P 7004.

15.

Defendant Richard Svensson ("Svensson") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

16.

Defendant Richard Lafer Family Investments, LLC ("Lafer") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

17.

Defendant Debra Siples ("Siples") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

18.

Defendant Jonathan Brett Bahnsen ("Bahnsen") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

19.

Defendant Brett Bahnsen Revocable Living Trust July 11, 2018 ("Bahnsen Trust") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

20.

Defendant Craig Barrett ("Barrett") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

21.

Defendant Nicholas P. Bodin ("Bodin") is subject to the jurisdiction and venue of this Court and may be served pursuant to Fed. R. Bankr. P 7004.

22.

Defendant Robert A. Holton, Jr. ("Holton") is subject to the jurisdiction and venue of this

Court and may be served pursuant to Fed. R. Bankr. P 7004.

23.

This Adversary Proceeding arises out of and relates to the Chapter 7 Bankruptcy Case of

BinaNat Capital, LLC Case No. 23-55109-lrc (the "Bankruptcy Case"), on the docket of this

Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Court may, therefore,

issue appropriate orders or judgments in this core proceeding.

24.

Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory

predicates for the relief sought herein are sections 11 U.S.C. §§ 541, 544, 547, 550, 551

O.C.G.A. §11-9-312, O.C.G.A. § 11-9-314, O.C.G.A. § 18-2-70, *et seq.*, and other applicable

statues and laws.

**Background**

25.

Upon information and belief, the Debtor was a hard money lender.

26.

Debtor was operated and managed by its principal and sole member Robert Storm.

27.

Upon information and belief, for several years prior to the entry of the Order for Relief,

the Debtor, by and through its principal Robert Storm, sought funds from third party investors

for the investments in loan documents such as promissory notes and security deeds for particular pieces of real properties.

28.

Upon information and belief, in several instances the Debtor, by and through its principal Robert Storm, promised to initiate and record transfers of interests in the loan document to investors, but failed to do so.

29.

Upon information and belief, in several instances investors were paid from the sale of a piece of property unrelated to their investment or to which their interest did not attach.

30.

Upon information and belief, in several instances investors did not receive payment.

31.

Robert Storm also owned and/or otherwise operated several other entities, including Sindre, Arinat and PVC.

32.

At all times relevant to this complaint, Sindre is an insider of the Debtor, as the term "insider" is defined by 11 U.S.C. § 101(31)(A)(i), and O.C.G.A. § 18-2-71, or was otherwise a non-statutory insider, as Sindre and the Debtor have common management and ownership.

33.

At all times relevant to this complaint, Arinat is an insider of the Debtor, as the term "insider" is defined by 11 U.S.C. § 101(31)(A)(i), and O.C.G.A. § 18-2-71, or was otherwise a non-statutory insider, as Arinat and the Debtor have common management and ownership.

34.

At all times relevant to this complaint, PVC is an insider of the Debtor, as the term "insider" is defined by 11 U.S.C. § 101(31)(A)(i), and O.C.G.A. § 18-2-71, or was otherwise a non-statutory insider, as PVC and the Debtor have common management and ownership.

35.

According to the Debtor's Bankruptcy Schedules filed with the Court, subsequent to the transfers set forth below, the Debtor's total assets were no more than $286,111.00 and the Debtor's liabilities were no less than $12,611,770.42.

36.

Some of Debtor's creditors at the time of the transfers (as set forth herein and defined below) were creditors of the Debtor on the Petition Date and are, thus, creditors in the Debtor's current bankruptcy case holding claims allowable under 11 U.S.C. § 502.

37.

Upon information and belief, at all times relevant to this Complaint, the Debtor was not paying its debts as they became due.

38.

Prior to, at the time of the transfers set forth herein and defined below, and up to the entry of the Order for Relief, the Debtor was a defendant in various pending lawsuits or judicial proceedings for failing to pay certain debts or obligations, many of which alleged fraudulent activities of Debtor.

**Georgia Judicial Lien**

39.

Defendant Mashala obtained a Writ of Fieri Facias against the Debtor which was filed
and recorded on March 14, 2023 in Book 5615, Page 269, Fulton County, Georgia GED, in the
amount of $845,863.40. A true and correct copy of this Writ of Fieri Facias is attached hereto and
incorporated herein by reference as **Exhibit 1** ("Mashala Fifa").

**Florida Judicial Liens and Related Filings**

40.

The following is a list of purported non-tax, non-governmental judicial liens filed and
recorded in Duval County, Florida:

a.  On May 10, 2023, Mashala filed its Plaintiff's Election of Remedy and Entry of
    Judgment with the clerk of Duval County Florida in Book 20674, Page 298 of the Duval
    County Records ("Mashala Florida Judgment").  A true and correct copy of said Mashala
    Florida Judgment is attached hereto and incorporated herein by reference as **Exhibit 2**.

**b.**  On May 10, 2023, Mashala also filed its Affidavit of Angela Weiland, as manager of
    Mashala Investments, LLC, with the clerk of Duval County Florida in Book 20674, Page
    296 (Mashala Florida Affidavit). A true and correct copy of the Mashala Florida Affidavit
    is attached hereto and incorporated herein by reference as **Exhibit 3.**

c.  On February 22, 2023, Defendant Svensson recorded his Final Judgment against Debtor
    in Book 20589, Page 2241 of the Duval County, Florida Records ("Svensson Judgment").
    The Svensson Judgment was re-recorded on April 17, 2023 in Book 20646, Page 749 of
    the Duval County, Florida Records. A true and correct copy of the Final Judgment

bearing both the February 22, 2023 and April 17, 2023 records is attached hereto and incorporated herein by reference as **Exhibit 4**.

### First Horizon Funds and 6016 Bordeau Walk

41.

Prior to the entry of the Order for Relief, the Debtor was the holder of a Security Deed encumbering the real property commonly known as 6016 Bordeau Walk, Smyrna, GA 30082 (Tax Parcel ID: 17027200780) (the "Bordeau Property"). Said Security Deed from Kelvin A. McDuffie to BinaNat Capital, LLC was filed in the Cobb County real estate records on May 6, 2019 at Book 15625, page 3275 ("Bordeau Security Deed"). A true and correct copy of said Bordeau Security Deed is attached hereto and incorporated herein by reference as **Exhibit 5.**

42.

Upon information and belief, the Debtor did not record transfers and/or assignments of the Bordeau Security Deed.

43.

On or about August 4, 2023, the Debtor received a wire into its First Horizon bank account ending in 9234 ("First Horizon Account") in the amount of $41,641.67, representing the payoff amount for the Bordeau Security Deed (the "Payoff Amount"). A true and correct copy of the redacted First Horizon Account statement for August 2023 is attached hereto and incorporated herein by reference as **Exhibit 6** ("First Horizon Statement").

44.

At the time of the entry of Order for Relief was entered, the Payoff Amount, plus an additional $996.06 ("Total Funds") was in the Debtor's First Horizon Account.

45.

By virtue of the entry of the Order for Relief, the Payoff Amount, plus the additional

$996.06, is property of the Estate pursuant to 11 U.S.C. § 541.

46.

As part of the administration of the Debtor's Estate, the Trustee collected the Payoff

Amount and the additional $996.06 from the First Horizon Account and now holds said funds.

(the "Horizon Funds")

**The Hunts Mill Transfers**

47.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deeds

recorded in the Spalding County, Georgia real estate records encumbering the following real

property (collectively "Hunts Mill Properties"):

| PARCEL ID | LOT NO. | ADDRESS | SECURITY DEED |
|---|---|---|---|
| 229 03009 | Lot 9 | 125 Hunts Mill Circle Griffin, GA 30223 ("Lot 9") | Deed Book 4162, Page 76 |
| 229 03010 | Lot 10 | 127 Hunts Mill Circle Griffin, GA 30223 ("Lot 10") | Deed Book 4162, Page 208 |
| 229 03011 | Lot 11 | 129 Hunts Mill Circle Griffin, GA 30223 ("Lot 11") | Deed Book 4162, Page 186 |
| 229 03012 | Lot 12 | 131 Hunts Mill Circle Griffin, GA 30223 ("Lot 12") | Deed Book 4162, Page 164 |
| 229 03013 | Lot 13 | 133 Hunts Mill Circle Griffin, GA 30223 ("Lot 13") | Deed Book 4162, Page 142 |
| 229 03014 | Lot 14 | 135 Hunts Mill Circle Griffin, GA 30223 ("Lot 14") | Deed Book 4162, Page 120 |

A true and correct copy of the relevant first page of each Security Deed referenced in the above table, is attached hereto and incorporated herein by reference as **Exhibit 7** (collectively the "Hunts Mill Lots 9-14 Security Deeds").

48.

Upon information and belief, the Debtor did not did not record transfers and/or assignments of the Hunts Mill Lots 9-14 Security Deeds.

49.

On or about February 2, 2021, the Debtor foreclosed on the Hunts Mill Properties.  A Deed Under Power, dated February 2, 2021, evidencing the foreclosure and transfer of title to the Debtor was filed on February 5, 2021 in the Spalding County real estate records in Book 4696, Page 79.  A true and correct copy of said Deed Under Power is attached hereto and incorporated herein by reference as **Exhibit 8** ("Hunts Mill DUP").

50.

On or about February 16, 2021, the Debtor transferred its interest in the Hunts Mill Properties to Sindre (the "Hunts Mill Transfers").  A Limited Warranty Deed evidencing said transfers was filed on February 16, 2021 in the Spalding County real estate records in Book 4699, Page 254.  A true and correct copy of said Limited Warranty Deed is attached hereto and incorporated herein by reference as **Exhibit 9** ("Hunts Mill LWD").

51.

Upon information and belief, no money or other consideration was given to the Debtor by Sindre for the Hunts Mill Transfers.

52.

The result of the Hunts Mill Transfers was to remove from the reach of creditors and the

Trustee an otherwise unencumbered assets of the Debtor, and transfer the value of said asset to an

insider or insiders.

**Sale of Hunts Mill Lots 12, 13, and 14**

53.

Prior to June 2024, the Trustee received notice that Sindre was attempting to sell Lots 12,

13, and 14.  Believing those lots were fraudulently transferred to Sindre by the Debtor, the Trustee

filed an emergency motion on June 4, 2024 (Doc. 93) seeking, among other things, to retain the net

proceeds from the lot sales pending further order from the Court.  An order was entered on June 14,

2024 granting the Trustee's emergency motion.

54.

The Trustee is currently holding the net proceeds from the sale of Lots 12, 13, and 14 in the

amount of $85,483.60 ("Sindre Net Proceeds").

**Sale of Hunts Mill Lots 3, 8, 22 and 25**

55.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deeds

each in the principal amount of $181,500.00 encumbering the following real property

(collectively "Arinat Properties"):

| PARCEL ID | LOT NO. | ADDRESS |
|---|---|---|
| 229 03003 | Lot 3 | 105 Hunts Mill Circle Griffin, GA 30223 ("Lot 3") |

| 229 03022 | Lot 22 | 138 Hunts Mill Circle<br>Griffin, GA 30223 ("Lot 22") |
|---|---|---|

56.

Specifically, the Arinat Properties were encumbered by a:

a.   Security Deed from Arinat to Debtor filed on June 13, 2018 at Book 4294, Page 198 of

the Spalding County, real estate records; and

b.   Security Deed from Arinat to Debtor filed on June 13, 2018 at Book 4294, Page 220 of

the Spalding County, real estate records'

(collectively the "Arinat Security Deeds").

57.

A true and correct copy of the Arinat Security Deeds are attached hereto and incorporated

herein by reference as **Exhibit 10.**

58.

Prior to June 2024, the Trustee received notice that Arinat was attempting to sell Lots 3 and

22 together with Lots 8 and 25 of the Hunts Mill subdivision.

59.

Lots 3, 8, 22 and 25 were sold together and the Trustee is currently holding the net proceeds

from the sale of Lots 3, 8, 22 and 25 in the amount of $117,481.19 ("Arinat Proceeds").

60.

The total amount of the Arinat Proceeds was insufficient to satisfy the full amount of

Debtor's secured claim, which, at the time of the sale was approximately $363,700.00, and Arinat

still owes the Debtor $246,218.81.

61.

Arinat has no claim to or lien upon the Arinat Proceeds and is not entitled to any possible

distribution in this case, other than potentially as a general unsecured creditor.

**1910 Cannon Street**

62.

Prior to the entry of the Order for Relief, Debtor was the holder of Security Deed

encumbering the real property in Dekalb County, Georgia commonly known as 1910 Cannon

Street, Decatur, Georgia 30032 (Parcel ID: 15-170-11-033) (the "Cannon Property").

63.

On or about October 6, 2020, the Debtor foreclosed on the Cannon Property.  A Deed

Under Power evidencing the foreclosure and transfer of title to the Debtor was filed on October

7, 2020 in the Dekalb County real estate records in Book 28704, Page 502.  A true and correct

copy of said Deed Under Power is attached hereto and incorporated herein by reference as

**Exhibit 11** ("Cannon DUP").

64.

On or about May 6, 2021, the Debtor transferred its interest in Cannon Property to Sindre

(the "Cannon Transfer").  A Limited Warranty Deed evidencing said transfers was filed on May

17, 2021 in the Spalding County real estate records in Book 29373, Page 710.  A true and correct

copy of said Limited Warranty Deed is attached hereto and incorporated herein by reference as

**Exhibit 12** ("Cannon LWD").

65.

Upon information and belief, no money or other consideration was given to the Debtor by

Sindre for the Cannon Transfer.

66.

The result of the Cannon Transfer was to remove from the reach of creditors and the Trustee

an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or

insiders.

**508 Pomona**

67.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed

encumbering the real property in Fulton County, Georgia commonly known as 508 Pomona

Circle, SW, Atlanta, Georgia 30315 (Parcel ID: 14009200010165) (the "Pomona Property").

68.

On or about August 4, 2020, the Debtor foreclosed on the Pomona Property.  A Deed

Under Power evidencing the foreclosure and transfer of title to the Debtor was filed on August 6,

2020 in the Fulton County real estate records in Book 62048, Page 183.  A true and correct copy

of said Deed Under Power is attached hereto and incorporated herein by reference as **Exhibit 13**

("Ponoma DUP").

69.

On or about February 16, 2021, the Debtor transferred its interest in Pomona Property to

Sindre (the "Pomona Transfer").  A Limited Warranty Deed evidencing said transfer was filed on

February 16, 2021 in the Fulton County real estate records in Book 63180, Page 1.  A true and

correct copy of said Limited Warranty Deed is attached hereto and incorporated herein by

reference as **Exhibit 14** ("Ponoma LWD").

70.

Upon information and belief, no money or other consideration was given to the Debtor by Sindre for the Pomona Transfer.

71.

The result of the Pomona Transfer was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**101 Haygood Ave**

72.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed encumbering the real property in Fulton County, Georgia commonly known as 101 Haygood Avenue, SE, Atlanta, Georgia 30032 (Parcel ID: 14005500080031) (the "Haygood Property").

73.

On or about September 3, 2019, the Debtor foreclosed on the Haygood Property. A Deed Under Power evidencing the foreclosure and transfer of title to the Debtor was filed on October 29, 2019 in the Fulton County real estate records in Book 60716, Page 127. A true and correct copy of said Deed Under Power is attached hereto and incorporated herein by reference as **Exhibit 15** ("Haygood DUP").

74.

On or about April 8, 2021, the Debtor transferred its interest in Haygood Property to Sindre (the "Haygood Transfer"). A Limited Warranty Deed evidencing said transfer was filed on April 15, 2021 in the Fulton County real estate records in Book 63576, Page 165. A true and

correct copy of said Limited Warranty Deed is attached hereto and incorporated herein by reference as **Exhibit 16** ("Haygood LWD").

75.

Upon information and belief, no money or other consideration was given to the Debtor by Sindre for the Pomona Transfer.

76.

The result of the Haygood Transfer was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**134 Brown Hill**

77.

Prior to the entry of the Order for Relief, Debtor was the holder of Security Deed encumbering the real property in Houston County, Georgia commonly known as 134 Brown Hill Road, Elko, Georgia 31025 (Parcel ID: 00092-0-059-000) (the "Brown Hill Property").

78.

On or about November 5, 2019, the Debtor foreclosed on the Brown Hill Property. A Deed Under Power evidencing the foreclosure and transfer of title to the Debtor was filed on February 12, 2020 in the Houston County real estate records in Book 8484, Page 1. A true and correct copy of said Deed Under Power is attached hereto and incorporated herein by reference as **Exhibit 17** ("Brown DUP").

79.

On or about April 16, 2021, the Debtor transferred its interest in Haygood Property to Sindre (the "Brown Hill Transfer"). A Limited Warranty Deed evidencing said transfer was filed

on April 21, 2021 in the Houston County real estate records in Book 9115, Page 314-317.  A true and correct copy of said Limited Warranty Deed is attached hereto and incorporated herein by reference as **Exhibit 18** ("Brown Hill LWD").

80.

Upon information and belief, no money or other consideration was given to the Debtor by Sindre for the Brown Hill Transfer.

81.

The result of the Brown Hill Transfer was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

### Bouldercrest Properties

82.

Prior to the entry of the Order for Relief, Debtor was the title holder to the following real property (collectively "Bouldercrest Properties"):

| ADDRESS | TAX ID |
|---|---|
| 895 Bouldercrest Dr., SE, Atlanta, GA 30316 | 15-146-07-017 |
| 895 Bouldercrest Dr., SE, Atlanta, GA 30316 | 15-146-12-029 |
| 891 Bouldercrest Dr., SE, Atlanta, GA 30316 | 15-146-07-018 |
| 891 Bouldercrest Dr., SE, Atlanta, GA 30316 | 15-146-12-031 |
| 893 Bouldercrest Dr., SE, Atlanta, GA 30316 | 15-146-12-030 |

83.

On or about December 9, 2020, the Debtor transferred its interest in the Bouldercrest Properties to Sindre (the "Bouldercrest Transfers").  A Limited Warranty Deed evidencing said transfers was filed on December 15, 2020 in the Dekalb County real estate records in Book

28900, Page 423.  A true and correct copy of said Limited Warranty Deed is attached hereto and incorporated herein by reference as **Exhibit 19** ("Bouldercrest LWD").

84.

Upon information and belief, no money or other consideration was given to the Debtor by Sindre for the Bouldercrest Transfers.

85.

The result of the Bouldercrest Transfers was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

86.

On or about May 25, 2023 Sindre sold its interest in the Bouldercrest Properties to an unrelated third party for $325,000.00.  From the sale proceeds of the Bouldercrest Properties ("Bouldercrest Proceeds"), Mashala was paid $268,078.50 towards the Mashala FiFa.

**1968 Hooper Street**

87.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed encumbering the real property in Dekalb County, Georgia commonly known as 1968 Hooper Street Decatur, Georgia 30032 (Parcel ID: 15 171 15 009) (the "Hooper Property").

88.

On or about August 4, 2020, the Debtor foreclosed on the Hooper Property.  A Deed Under Power evidencing the foreclosure and transfer of title to the Debtor was filed on August 6, 2020 in the Dekalb County real estate records in Book 28533, Page 666.  A true and correct copy

of said Deed Under Power is attached hereto and incorporated herein by reference as **Exhibit 20**
("Hooper DUP").

89.

On or about May 6, 2021, the Debtor transferred its interest in Hooper Property to Sindre
(the "Hooper Transfer").  A Limited Warranty Deed evidencing said transfer was filed on May
17, 2021 in the Dekalb County real estate records in Book 29373, Page 663.  A true and correct
copy of said Limited Warranty Deed is attached hereto and incorporated herein by reference as
**Exhibit 21** ("Hooper LWD").

90.

Upon information and belief, no money or other consideration was given to the Debtor by
Sindre for the Hooper Transfer.

91.

The result of the Hooper Transfer was to remove from the reach of creditors and the Trustee
an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or
insiders.

**538 Ashburton**

92.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed
encumbering the real property in Dekalb County, Georgia commonly known as 538 Ashburton
Avenue, Atlanta, Georgia 30032 (Parcel ID: 15 171 20 004) (the "538 Ashburton Property").

93.

On or about August 4, 2020, the Debtor foreclosed on the 538 Ashburton Property.  A
Deed Under Power evidencing the foreclosure and transfer of title to the Debtor was filed on

August 6, 2020 in the Dekalb County real estate records in Book 28533, Page 662.  A true and correct copy of said Deed Under Power is attached hereto and incorporated herein by reference as **Exhibit 22** ("538 Ashburton DUP").

94.

On or about February 2, 2022, the Debtor transferred its interest in 538 Ashburton Property to Sindre (the "538 Ashburton Transfer").  A Limited Warranty Deed evidencing said transfer was filed on February 11, 2022 in the Dekalb County real estate records in Book 30118, Page 626.  A true and correct copy of said Limited Warranty Deed is attached hereto and incorporated herein by reference as **Exhibit 23** ("538 Ashburton LWD").

95.

Upon information and belief, no money or other consideration was given to the Debtor by Sindre for the 538 Ashburton Transfer.

96.

The result of the 538 Ashburton Transfer was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**551 Ashburton**

97.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed encumbering the real property in Dekalb County, Georgia commonly known as 551 Ashburton Avenue, Atlanta, Georgia 30032 (Parcel ID: 15 171 21 027) (the "551 Ashburton Property").

98.

On or about February 4, 2020, the Debtor foreclosed on the 551 Ashburton Property.  A

Deed Under Power evidencing the foreclosure and transfer of title to the Debtor was filed on

February 19, 2020 in the Dekalb County real estate records in Book 28118, Page 217.  A true and

correct copy of said Deed Under Power is attached hereto and incorporated herein by reference

as **Exhibit 24** ("551 Ashburton DUP").

99.

On or about July 24, 2020, the Debtor transferred its interest in 551 Ashburton Property

to Sindre (the "551 Ashburton Transfer").  A Quitclaim Deed evidencing said transfer was filed

on July 29, 2020 in the Dekalb County real estate records in Book 28510 Page 143.  A true and

correct copy of said Quitclaim Deed is attached hereto and incorporated herein by reference as

**Exhibit 2** ("551 Ashburton QCD).

100.

Upon information and belief, no money or other consideration was given to the Debtor by

Sindre for the 551 Ashburton Transfer.

101.

The result of the 551 Ashburton Transfer was to remove from the reach of creditors and the

Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an

insider or insiders.

**2589 and 2599 Florence**

102.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed

encumbering the real properties in Cobb County, Georgia commonly known as 2589 and 2599

Florence Road, Powder Springs, Georgia 30127 (Parcel IDs: 19058400360 and 19058400010)

(the "Florence Properties").

103.

On or about January 25, 2022, the Debtor assigned its interest in the Florence Properties

to PVC.  A Transfer and Assignment evidencing the assignment was filed on February 8, 2022 in

the Cobb County real estate records in Book 16025, Page 743.  A true and correct copy of said

Transfer and Assignment is attached hereto and incorporated herein by reference as **Exhibit 26**

("Florence Assignment").

104.

Upon information and belief, no money or other consideration was given to the Debtor by

PVC for the Florence Assignment.

105.

The result of the Florence Assignment was to remove from the reach of creditors and the

Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an

insider or insiders.

**3044 Sunset**

106.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed

encumbering the real properties in Fulton County, Georgia commonly known as 3044 Sunset

Lane, East Point, Georgia 30344 (Parcel ID: 13003100020012) (the "Sunset Property").

107.

On or about April 16, 2021 the Debtor assigned its interest in the Sunset Property to PVC.

A Transfer and Assignment evidencing the assignment was filed on April 21, 2021 in the Fulton

County real estate records in Book 63611, Page 590. A true and correct copy of said Transfer and Assignment is attached hereto and incorporated herein by reference as **Exhibit 27** ("Sunset Assignment").

108.

Upon information and belief, no money or other consideration was given to the Debtor by PVC for the Sunset Assignment.

109.

The result of the Sunset Assignment was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**2281 Pryor Road**

110.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed encumbering the real property in Fulton County, Georgia commonly known as 2281 Pryor Road, SW, Atlanta, Georgia 30315 (Parcel ID: 14009100060310) (the "Pryor Property").

111.

On or about November 23, 20020, the Debtor assigned its interest in the Pryor Property to PVC. A Transfer and Assignment evidencing the assignment was filed on November 30, 2020 in the Fulton County real estate records in Book 62691, Page 208. A true and correct copy of said Transfer and Assignment is attached hereto and incorporated herein by reference as **Exhibit 28** ("Pryor Assignment").

112.

Upon information and belief, no money or other consideration was given to the Debtor by PVC for the Pryor Assignment.

113.

The result of the Pryor Assignment was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**200 Fletcher**

114.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed encumbering the real property in Fulton County, Georgia commonly known as 200 Fletcher Street, SW, Atlanta, Georgia 30315 (Parcel ID: 14007400090078) (the "Fletcher Property").

115.

On or about November 23, 2020, the Debtor assigned its interest in the Fletcher Property to PVC. A Transfer and Assignment evidencing the assignment was filed on November 30, 2020 in the Fulton County real estate records in Book 62691, Page 263. A true and correct copy of said Transfer and Assignment is attached hereto and incorporated herein by reference as **Exhibit 29** ("Fletcher Assignment").

116.

Upon information and belief, no money or other consideration was given to the Debtor by PVC for the Fletcher Assignment.

117.

The result of the Fletcher Assignment was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**1115 MLK**

118.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed encumbering the real property in Fulton County, Georgia commonly known as 1115 Martin Luther King, Jr. Drive, SW, Atlanta, GA 30314 (Parcel ID: 14011600010134) (the "MLK Property").

119.

On or about November 23, 2020, the Debtor assigned its interest in the MLK Property to PVC.  A Transfer and Assignment evidencing the assignment was filed on November 30, 2020 in the Fulton County real estate records in Book 62692, Page 34.  A true and correct copy of said Transfer and Assignment is attached hereto and incorporated herein by reference as **Exhibit 30** ("MLK Assignment").

120.

Upon information and belief, no money or other consideration was given to the Debtor by PVC for the MLK Assignment.

121.

The result of the MLK Assignment was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**105 Courtland**

122.

Prior to the entry of the Order for Relief, the Debtor was the holder of Security Deed encumbering the real property in Cobb County, Georgia commonly known as 105 Courtland Circle, Powder Springs, Georgia 30127 (Parcel ID: 20030601680) (the "Courtland Property").

123.

On or about February 7, 2022, the Debtor assigned its interest in the Courtland Property to PVC. A Transfer and Assignment evidencing the assignment was filed on February 8, 2022 in the Cobb County real estate records in Book 16025, Page 759. A true and correct copy of said Transfer and Assignment is attached hereto and incorporated herein by reference as **Exhibit 31** ("Courtland Assignment").

124.

Upon information and belief, no money or other consideration was given to the Debtor by PVC for the Courtland Assignment.

125.

The result of the Courtland Assignment was to remove from the reach of creditors and the Trustee an otherwise unencumbered asset of the Debtor, and transfer the value of said asset to an insider or insiders.

**816 Broad Street**

126.

Prior to the filing of the Involuntary Petition and entry of the Order for Relief, Debtor was the first priority mortgage holder for the real property commonly known as 816 Broad Street North, Jacksonville, Florida 32202 a/k/a 816 N Broad St, Jacksonville, Florida 32202  (the

"<u>Broad Street Property</u>") and had a judicial foreclosure action pending for the Broad Street

Property in the Circuit Court, Fourth Judicial Circuit, in and For Duval County, Florida (Case

No. 2022-CA-959) (<u>Judicial Foreclosure Action</u>").

127.

Upon information and belief, the Debtor did not record a transfer or assignment of its

mortgage on the Broad Street Property.

128.

Pursuant to 11 U.S.C. § 541 the mortgage on the Broad Street Property and the Judicial

Foreclosure Action became property of the Estate.

129.

In further prosecuting the Judicial Foreclosure Action, the Trustee hired special counsel

and on December 18, 2023, an Amended Final Judgment of Foreclosure was entered.  A true and

correct copy of said Amended Final Judgment of Foreclosure is attached hereto and incorporated

herein by reference as **Exhibit 32** ("<u>Amended Final Judgment</u>").

130.

A Judicial Foreclosure sale on the Broad Street Property took place on January 29, 2024.

131.

After receiving no bid for the Broad Street Property in excess of the amount owed, the

Clerk of Duval County Florida issued a Certificate of Title on February 12, 2024 in the name of

the Debtor.

132.

On August 15, 2024, an Order Correcting Scrivener's Error in Legal Description; Amending Final Judgment of Foreclosure *Nunc Pro Tunc*; and Directing Clerk to Issue Amended Certificate of Service was entered in the Judicial Foreclosure Action ("Corrective Order"). A true and correct copy of the Corrective Order is attached hereto and incorporated herein by reference as **Exhibit 33.**

133.

In light of the Corrective Order, the Clerk of Duval County Florida issued an Amended Certificate of Title on August 19, 2024 in the name of the Debtor. A true and correct copy of the Amended Certificate of Title is attached hereto and incorporated herein by reference as **Exhibit 34.**

134.

Subsequently, the Trustee sold the Broad Street Property for $221,000.00 and the Estate netted $185,250.56 ("Broad Street Proceeds").

## COUNT I

### DEFENDANTS HAVE NO INTEREST IN TOTAL FUNDS

135.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 134 of this Complaint.

136.

To the extent that any of the Defendants assert that they have an interest in the Total Funds based on an assignment of the Bordeau Security Deed, said assignments are not filed of record, are unperfected, and, therefore, do not attach to the Payoff Amount.

137.

Therefore, each of the Defendants have no claim to or lien upon the Payoff Amount and are not entitled to any possible distribution in this case, other than as a general unsecured creditor.

138.

A security interest in a deposit account, such as the First Horizon bank account, is perfected by control. O.C.G.A. §11-9-314 and O.C.G.A. §11-9-312.

139.

None of the Defendants had control over the First Horizon bank account nor the Total Funds. Therefore, none of the Defendants have or had a perfected interest in the Total Funds.

140.

Therefore, each and every Defendant has no claim to or lien upon the Total Funds and are not entitled to any possible distribution in this case, other than as a general unsecured creditor.

## <u>COUNT II</u>

### SINDRE IS NOT ENTITLED TO ANY NET PROCEEDS AS THE HUNTS MILL TRANSFERS WERE FRAUDULENT TRANSFERS

141.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 134 of this Complaint.

142.

The Plaintiff, as Trustee, in accordance with 11 U.S.C. § 544, holds the rights and powers of a judicial lien creditor, and thus may use any state law remedies available to retain an interest in the Sindre Net Proceeds, including the Georgia Uniform Fraudulent Transfers Act, contained in O.C.G.A. § 18-2-70, *et seq.*

143.

The Hunts Mill Transfers were transfers of interests of the Debtor in property.

144.

The Hunts Mill Transfers were made or incurred within four years before the order for relief and the filing of the Involuntary Petition.

145.

Upon information and belief, the Debtor made the Hunts Mill Transfers with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date of the Hunts Mill Transfers, indebted.

146.

The Debtor received less than reasonably equivalent value in exchange for the Hunts Mill Transfers.

147.

At the time of the of the Hunts Mill Transfers, the Debtor was insolvent or became insolvent as a result of the Hunts Mill Transfers.

148.

Upon information and belief, at the time of the Transfers the Debtor intended to incur, or believed or reasonably believed that it would incur, debts beyond its ability to pay as they became due.

149.

Upon information and belief, at the time of the Hunts Mill Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

150.

The Hunts Mill Transfers were fraudulent transfers pursuant to O.C.G.A. § 18-2-70, *et seq.* Therefore, the Trustee is entitled to avoid the Hunts Mill Transfers and preserve the same pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. § 18-2-70, *et seq*.

151.

Pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*, the Trustee is entitled to recover from Sindre, the value of the Hunts Mill Transfers in the amount of the Net Proceeds for lots 12, 13 and 14 and in an amount to be determined for lots 9, 10 and 11 but no less than the fair market values of said lots, plus all post judgment interest allowed by law, as Sindre was the initial or mediate transferee of the Transfers or the entity for whose benefit the Transfers were made.

152.

Sindre has no claim to or lien upon the Sindre Net Proceeds and is not entitled to any possible distribution in this case, other than potentially as a general unsecured creditor.

## <u>COUNT III</u>

### FRAUDULENT TRANSFERS OF CANNON, PAMONA, HAYGOOD, BROWN HILL, HOOPER, 538 ASHBURTON and 551 ASHBURTON PROPERTIES

153.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 134 of this Complaint.

154.

The Plaintiff, as Trustee, in accordance with 11 U.S.C. § 544, holds the rights and powers of a judicial lien creditor, and thus may use any state law remedies available to retain an interest in the Cannon Property, Pamona Property, Haygood Property, Brown Hill Property, Hooper

Property, 538 Ashburton Property, and 551 Ashburton Property and any net sale proceeds, including the Georgia Uniform Fraudulent Transfers Act, contained in O.C.G.A. § 18-2-70, *et seq*.

155.

The Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer were each transfers of interests of the Debtor in property.

156.

The Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer were each made or incurred within four years before the filing of the Involuntary Petition.

157.

Upon information and belief, the Debtor made each of the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date of the Hunts Mill Transfers, indebted.

158.

The Debtor received less than reasonably equivalent value in exchange for each of the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer.

159.

At the time of the of the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer, the Debtor

was insolvent or became insolvent as a result of the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer.

160.

Upon information and belief, at the time of the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer the Debtor intended to incur, or believed or reasonably believed that it would incur, debts beyond its ability to pay as they became due.

161.

Upon information and belief, at the time of the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

162.

The Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer were fraudulent transfers pursuant to O.C.G.A. § 18-2-70, *et seq.* Therefore, the Trustee is entitled to avoid the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer and preserve the same pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. § 18-2-70, *et seq.*

163.

Pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*, the Trustee is entitled to recover from Sindre, the value of the Cannon Transfer, Pamona Transfer, Haygood Transfer,

Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer in an amount to be determined but no less than the fair market values of said lots, plus all post judgment interest allowed by law, as Sindre was the initial or mediate transferee of the Transfers or the entity for whose benefit the Transfers were made.

## COUNT IV

### FRAUDULENT TRANSFER OF BOULDERCREST PROPERTIES

164.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 134 of this Complaint.

165.

The Plaintiff, as Trustee, in accordance with 11 U.S.C. § 544, holds the rights and powers of a judicial lien creditor, and thus may use any state law remedies available to retain an interest in the Bouldercrest Properties and the Bouldercrest Proceeds, including the Georgia Uniform Fraudulent Transfers Act, contained in O.C.G.A. § 18-2-70, *et seq.*

166.

The Bouldercrest Transfers were transfers of interests of the Debtor in property.

167.

The Bouldercrest Transfers were made or incurred within four years before the order for relief and the filing of the Involuntary Petition.

168.

Upon information and belief, the Debtor made the Bouldercrest Transfers with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date of the Bouldercrest Transfers, indebted.

169.

The Debtor received less than reasonably equivalent value in exchange for the Bouldercrest Transfers.

170.

At the time of the of the Bouldercrest Transfers, the Debtor was insolvent or became insolvent as a result of the Bouldercrest Transfers.

171.

Upon information and belief, at the time of the Bouldercrest Transfers the Debtor intended to incur, or believed or reasonably believed that it would incur, debts beyond its ability to pay as they became due.

172.

Upon information and belief, at the time of the Bouldercrest Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

173.

The Bouldercrest Transfers were fraudulent transfers pursuant to O.C.G.A. § 18-2-70, *et seq.* Therefore, the Trustee is entitled to avoid the Bouldercrest Transfers and preserve the same pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. § 18-2-70, *et seq.*

174.

Pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*, the Trustee is entitled to recover from Sindre, the value of the Bouldercrest Transfers in an amount no less then $268,078.50, plus all post judgment interest allowed by law, as Sindre was the initial or mediate transferee of the Transfers or the entity for whose benefit the Transfers were made.

## COUNT V
## ARINAT HAS NO INTEREST IN THE ARINAT PROCEEDS

### 175.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in

Paragraphs 1 through 134 of this Complaint.

### 176.

The total amount of the Arinat Proceeds, $117,481.19, was insufficient to satisfy the full

amount of Debtor's secured claim, which, at the time of the sale of the Arinat Properties was

approximately $363,700.00.

### 177.

Arinat still owes the Debtor $246,218.81.

### 178.

The Arinat Proceeds are property of the Estate pursuant to 11 U.S.C. § 541.

### 179.

The Trustee is, therefore entitled to an order and judgment declaring that Arinat has no

claim to or lien upon the Arinat Proceeds.

## COUNT VI

## FRAUDULENT TRANSFERS OF FLORENCE, SUNSET, PRYOR, FLETCHER, MLK, AND COURTLAND ASSIGNMENTS

### 180.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in

Paragraphs 1 through 134 of this Complaint.

181.

The Plaintiff, as Trustee, in accordance with 11 U.S.C. § 544, holds the rights and powers of a judicial lien creditor, and thus may use any state law remedies available to retain an interest in the Florence Properties, Sunset Property, Pryor Property, Fletcher Property, MLK Property and Courtland Property and any net sale proceeds, including the Georgia Uniform Fraudulent Transfers Act, contained in O.C.G.A. § 18-2-70, *et seq.*

182.

The Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment were each transfers of interests of the Debtor in property.

183.

The Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment were each made or incurred within four years before the filing of the Involuntary Petition.

184.

Upon information and belief, the Debtor made each of the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became, on or after the date of the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment, indebted.

185.

The Debtor received less than reasonably equivalent value in exchange for each of the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment.

186.

At the time of the of the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment, the Debtor was insolvent or became insolvent as a result of the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment.

187.

Upon information and belief, at the time of the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment the Debtor intended to incur, or believed or reasonably believed that it would incur, debts beyond its ability to pay as they became due.

188.

Upon information and belief, at the time of the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

189.

The Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment were fraudulent transfers pursuant to O.C.G.A. § 18-2-70, *et seq.* Therefore, the Trustee is entitled to avoid the Florence Assignment, Sunset

Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland

Assignment and preserve the same pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. § 18-2-70,

*et seq*.

190.

Pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*, the Trustee is entitled

to recover from PVC, the value of the Florence Assignment, Sunset Assignment, Pryor

Assignment, Fletcher Assignment, MLK Assignment and Courtland Assignment in an amount to

be determined but no less than the fair market values of said assignments, plus all post judgment

interest allowed by law, as PVC was the initial or mediate transferee of the Transfers or the entity

for whose benefit the Transfers were made.

### **COUNT VII**

**Preference and Fraudulent Transfer as to Mashala - Georgia**

191.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in

Paragraphs 1 through 134 of this Complaint.

192.

The filing and recording of the Mashala FiFa perfected a lien on the Debtor's property on

March14, 2023.  Said lien created by the filing of the Mashala FiFa was a transfer of an interest

in the Debtor's Property (the "Mashala Transfer").

193.

The Mashala Transfer was "made", as that word is used in 11 U.S.C. § 547, no earlier

than March 2, 2023.

194.

The Mashala Transfer was a transfer of an interest in property of the Debtor.

195.

The Mashala Transfer, which enabled the Defendant to perfect a lien on the Debtor's property, was made to or for the benefit of a creditor, Mashala.

196.

The Mashala Transfer was for or on account of an antecedent debt owed by the Debtor on account of amounts owed to the Mashala before the Mashala Transfer was made.

197.

Pursuant to 11 U.S.C. §547(f) the Debtor is presumed to be insolvent within the 90 days prior to the Petition Date, and the Mashala Transfers were made while the Debtor was insolvent, as the value of the Debtor's debts far exceeded the value of the Debtor's assets.

198.

The Mashala Transfer was made within ninety (90) days before the Petition Date.

199.

The Mashala Transfer enabled the creditor, Mashala, to receive more than such creditor would receive under Chapter 7 of title 11 of the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) if the Mashala Transfer had not been made and such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

200.

Pursuant to 11 U.S.C. § 547, the Mashala Transfer is avoidable and should be preserved for the Estate pursuant to 11 U.S.C. § 551.

201.

Pursuant to the provisions of 11 U.S.C. §§ 547, and 550, Mashala is liable to the Trustee for the value of the Mashala Transfer in the sum of $268,078.50, plus all post judgment interest allowed by law.

202.

Pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*, the Trustee is entitled to recover from Mashala, the value of the Bouldercrest Transfers and Bouldercrest Proceeds resulting from the Bouldercrest Transfers, in an amount no less than $268,078.50, plus all post judgment interest allowed by law, as Mashala was the immediate or mediate transferee of the Bouldercrest Proceeds resulting from the Bouldercrest Transfers or the entity for whose benefit the Bouldercrest Transfers were made.

## <u>COUNT VIII</u>

### Preference as to Mashala – Florida

203.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 134 of this Complaint.

204.

The filing and recording of the Mashala Florida Judgment purportedly perfected a lien on the Debtor's property no earlier than May 10, 2023.  Said lien created by the filing of the Mashala Florida Judgment was a transfer of an interest in the Debtor's Property (the "<u>Mashala Florida Transfer</u>").

205.

The Mashala Florida Transfer was "made", as that word is used in 11 U.S.C. § 547, no earlier than May 10, 2023.

206.

The Mashala Florida Transfer was a transfer of an interest in property of the Debtor.

207.

The Mashala Florida Transfer, which enabled the Defendant to purportedly perfect a lien on the Debtor's property, was made to or for the benefit of a creditor, Mashala.

208.

The Mashala Florida Transfer was for or on account of an antecedent debt owed by the Debtor on account of amounts owed to Mashala before the Mashala Florida Transfer was made.

209.

Pursuant to 11 U.S.C. §547(f) the Debtor is presumed to be insolvent within the 90 days prior to the Petition Date, and the Mashala Florida Transfers were made while the Debtor was insolvent, as the value of the Debtor's debts far exceeded the value of the Debtor's assets.

210.

The Mashala Florida Transfer was made within ninety (90) days before the Petition Date.

211.

The Mashala Transfer enabled the creditor, Mashala, to receive more than such creditor would receive under Chapter 7 of title 11 of the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) if the Mashala Florida Transfer had not been made and such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

212.

Pursuant to 11 U.S.C. § 547, the Mashala Florida Transfer is avoidable and should be preserved for the Estate pursuant to 11 U.S.C. § 551.

213.

Pursuant to the provisions of 11 U.S.C. §§ 547, and 550, Mashala is liable to the Trustee for the value of the Mashala Florida Transfer in an amount to be determined, plus all post judgment interest allowed by law.

214.

Because the Mashala Florida Transfer should be avoided and preserved for the Estate, the Mashala Florida Judgment does not attach to the Broad Street Property, the Judicial Foreclosure Action or the Broad Street Proceeds.

## <u>COUNT IX</u>

### Preference as to Richard Svensson

215.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 134 of this Complaint.

216.

The filing of the Svensson Judgment on February 22, 2023 did not create a lien that attached to the Broad Street Property, the Judicial Foreclosure Action or the Broad Street Proceeds, as the filing of the Final Judgment did not include the address of Svensson, lacked an affidavit and did not include a certification.  See Fla. Statute 55.10(1).

217.

To the extent the Svensson Judgment filed on April 17, 2023 created a lien on the Broad Street Property, said lien is avoidable as a preference.

218.

To the extent that the filing and recording of the Svensson Judgment perfected a lien on the Debtor's property, it did so no earlier than April 17, 2023. Said lien created by the filing of the Svensson Judgment was a transfer of an interest in the Debtor's Property (the "Svensson Transfer").

219.

The Svensson Transfer was "made", as that word is used in 11 U.S.C. § 547, no earlier than April 17, 2023.

220.

The Svensson Transfer was a transfer of an interest in property of the Debtor.

221.

The Svensson Transfer, which enabled Svensson to purportedly perfect a lien on the Debtor's property, was made to or for the benefit of a creditor, Svensson.

222.

The Svensson Transfer was for or on account of an antecedent debt owed by the Debtor on account of amounts owed to the Svensson before the Svensson Transfer was made.

223.

Pursuant to 11 U.S.C. §547(f) the Debtor is presumed to be insolvent within the 90 days prior to the Petition Date, and the Svensson Transfers were made while the Debtor was insolvent, as the value of the Debtor's debts far exceeded the value of the Debtor's assets.

224.

The Svensson Transfer was made within ninety (90) days before the Petition Date.

225.

The Svensson Transfer enabled the creditor, Svensson, to receive more than such creditor would receive under Chapter 7 of title 11 of the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) if the Svensson Transfer had not been made and such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

226.

Pursuant to 11 U.S.C. § 547, the Svensson Transfer is avoidable and should be preserved for the Estate pursuant to 11 U.S.C. § 551.

227.

Pursuant to the provisions of 11 U.S.C. §§ 547, and 550, Svensson is liable to the Trustee for the value of the Svensson Transfer in an amount to be determined, plus all post judgment interest allowed by law.

228.

Because the Svensson Transfer should be avoided and preserved for the Estate, the Svensson Judgment does not attach to the Broad Street Property, the Judicial Foreclosure Action or the Broad Street Proceeds.

## **COUNT X**

### **No Perfected Liens**

229.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 228 of this Complaint.

230.

To the extent that each or any of Defendants KFT, Wyatt, J. Wyatt, AMJ, Puskarich, MWP Real Estate, MWP Financial, Goldsmith, Mashala, Svensson, Lafer, Siples, Bahnsen, Bahnsen Trust, Barrett, Bodin and Holton asserts that it has an interest in the Sindre Net Proceeds, Arinat Proceeds, Bouldercrest Proceeds, Broad Street Proceeds and/or any real property referenced in this Complaint based on an assignment of loan documents including security deeds, said assignments are not filed of record, are unperfected, and, therefore, do not attach to the Sindre Net Proceeds, Arinat Proceeds, Bouldercrest Proceeds, Broad Street Proceeds and/or any real property referenced in this Complaint..

231.

Therefore, the Defendants KFT, Wyatt, J. Wyatt, Jones, AMJ, Puskarich, MWP Real Estate, MWP Financial, Goldsmith, Mashala, Svensson, Lafer, Siples, Bahnsen, Bahnsen Trust, Barrett, Bodin and Holton have no claim to or lien upon the Sindre Net Proceeds, Arinat Proceeds, Bouldercrest Proceeds, Broad Street Proceeds and/or any real property referenced in this Complaint.  As a result, Defendants KFT, Wyatt, J. Wyatt, Jones, AMJ, Puskarich, MWP Real Estate, MWP Financial, Goldsmith, Mashala, Svensson, Lafer, Siples, Bahnsen, Bahnsen Trust, Barrett, Bodin and Holton are not entitled to any possible distribution in this case, other than as a general unsecured creditor.

**<u>RESERVATION OF RIGHT TO AMEND</u>**

232.

Trustee reserves the right to amend this Complaint pursuant to a requested accounting as well as other discovery should facts be discovered to justify the assertion of additional claims, including without limitation any and all claims arising under Title 11 of the United States Code or applicable state law.

**WHEREFORE,** the Plaintiff prays this Honorable Court:

1. As to Count I, enter an order and judgment declaring that, with regard to the Total Funds each and every Defendant has no claim to or lien upon the Total Funds and are not entitled to any possible distribution in this case, with regard to the Total Funds, other than as a general unsecured creditor;

2. As to Count II, enter an order and judgment avoiding the Hunts Mill Transfers and preserving the same pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. § 18-2-70, *et seq*.;

3. As to Count II, enter an order and judgment, pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.,* in favor of the Trustee and against Sindre for the value of the Hunts Mill Transfers in the amount of the Sindre Net Proceeds for lots 12, 13 Land 14 and in an amount to be determined for lots 9, 10 and 11 but no less than the fair market values of said lots, plus all post judgment interest allowed by law;

4. As to Count II, enter an order and judgment declaring that Sindre has no claim to or lien upon the Sindre Net Proceeds and is not entitled to any possible distribution in this case, other than potentially as a general unsecured creditor;

5. As to Count III, enter an order and judgment avoiding and preserving the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. § 18-2-70, *et seq*.;

6. As to Count III, pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*, enter an order and judgment the in favor of the Trustee and against  for the value of the Cannon Transfer, Pamona Transfer, Haygood Transfer, Brown Hill Transfer, Hooper Transfer, 538 Ashburton Transfer and 551 Ashburton Transfer in an amount to

be determined but no less than the fair market values of said lots, plus all post

judgment interest allowed by law;

7. As to Count IV, enter an order and judgment avoiding the Bouldercrest Transfers and

preserving the same pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. § 18-2-70, *et seq*.;

8. As to Count IV, pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*,

enter an order and judgment in favor of the Trustee and against Sindre, for the value

of the Bouldercrest Transfers in an amount no less then $268,078.50, plus all post

judgment interest allowed by law;

9. As to Count V, the Trustee is, therefore entitled to an order and judgment declaring that

Arinat has no claim to or lien upon the Arinat Proceeds;

10. As to Count VI, enter an order and judgment avoiding the Florence Assignment, Sunset

Assignment, Pryor Assignment, Fletcher Assignment, MLK Assignment and Courtland

Assignment and preserving the same pursuant to 11 U.S.C. §§ 544, 551, and O.C.G.A. §

18-2-70, *et seq.*;

11. As to Count VI, pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*,

enter an order and judgment in favor of the Trustee and against PVC for the value of

the Florence Assignment, Sunset Assignment, Pryor Assignment, Fletcher

Assignment, MLK Assignment and Courtland Assignment in an amount to be

determined but no less than the fair market values of said assignments, plus all post

judgment interest allowed by law;

12. As to Count VII, enter an order and judgment avoiding the Mashala Transfer pursuant to

11 U.S.C. § 547, the Mashala Transfer is avoidable and should be preserved for the Estate

pursuant to 11 U.S.C. § 551.

13. As to Count VII, pursuant to 11 U.S.C. §§ 547, and 550, enter an order and judgment in favor of the Trustee and against Mashala, for the value of the Mashala Transfer in the amount of $268,078.50, plus all post judgment interest allowed by law.

14. As to Count VII, pursuant to 11 U.S.C. §§ 544, 550 and O.C.G.A. § 18-2-70, *et seq.*, enter an order and judgment in favor of the Trustee and against Mashala for the value of the Bouldercrest Transfers in an amount no less than $268,078.50, plus all post judgment interest allowed by law;

15. As to Count VIII, enter an order and judgment avoiding the Mashala Florida Transfer pursuant to 11 U.S.C. § 547 and preserving the same for the Estate pursuant to 11 U.S.C. § 551;

16. As to Count VIII, pursuant to 11 U.S.C. §§ 547, and 550, enter an order and judgment in favor of the Trustee and against Mashala for the value of the Mashala Florida Transfer in an amount to be determined, plus all post judgment interest allowed by law;

17. As to Count IX, enter an order and judgment avoiding the Svensson Transfer pursuant to 11 U.S.C. § 547 and preserving the same for the Estate pursuant to 11 U.S.C. § 551;

18. As to Count IX, pursuant to 11 U.S.C. §§ 547, and 550, enter an order and judgment in favor of the Trustee and against Svensson for the value of the Svensson Transfer in an amount to be determined, plus all post judgment interest allowed by law;

19. As to Count X, enter and order and judgment declaring that, to the Defendants KFT, Wyatt, J. Wyatt, Jones, AMJ, Puskarich, MWP Real Estate, MWP Financial, Goldsmith, Mashala, Svensson, Lafer, Siples, Bahnsen, Bahnsen Trust, Barrett, Bodin and Holton have no claim to or lien upon Sindre Net Proceeds, Arinat Proceeds, Bouldercrest Proceeds, Broad Street Proceeds and/or any real property referenced in this Complaint.

20. As to Count X, enter and order and judgment declaring that, with regard to the Payoff

Amount, Total Funds, Sindre Net Proceeds, Arinat Proceeds, Bouldercrest Proceeds,

Broad Street Proceeds and/or any real property referenced in this Complaint, the

Defendants KFT, Wyatt, J. Wyatt, Jones, AMJ, Puskarich, MWP Real Estate, MWP

Financial, Goldsmith, Mashala, Svensson, Lafer, Siples, Bahnsen, Bahnsen Trust, Barrett,

Bodin and Holton are not entitled to any possible distribution in this case, other than as a

general unsecured creditor; and

21. Such other and further relief as the Court deems just.


OGIER, ROSENFELD & STEIL, P.C.


/s/  *Kathleen Steil*
       Kathleen Steil
       Georgia Bar No. 598895
       *Counsel for Chapter 7 Trustee*

P.O. Box 1547
Decatur, GA 30031
(404) 525-4000
ks@orsatl.com

Exhibit 01

## WRIT OF FIERI FACIAS
## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

CIVIL ACTION NUMBER  2022CV363021

JUDGMENT DATE  03/02/23

Plaintiff's Attorney – Name, Address & Telephone

Name: JON A GOTTLIEB

Address:
FLYNN & GOTTLIEB PA
800 JOHNSON FERRY RD NE
ATLANTA GA 30342-1417

Telephone & Area Code 404-497-8000

Fi. Fa. In Hands of:_____

_____

Lien  5615 Pg  269
Filed and Recorded Mar-14-2023 03:56pm
2023-01013334
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

### CANCELLATION

The within and forgoing Fi Fa. Having been paid in full
the Clerk of Superior Court is hereby directed to cancel it
of this _____ day of _____ 20 _____

Signature: _____

Title: _____

MASHALA INVESTMENTS LLC

Plaintiff(s)

VS.

BINANAT CAPITAL LLC, ROBERT STORM

Defendant(s)

To all and singular the sheriffs of the State and their
lawful deputies:

In the above styled case, and on the judgment date set
out, the plaintiff(s) named above, judgment in the
following sums:

| | | |
|---|---|---|
| Principal | $ | 704,250.00 |
| Interest | $ | 80,871.38 |
| Interest – Other | $ | |
| Attorney's Fees | $ | 60,433.29 |
| Court Cost | $ | 308.73 |
| Totals | $ | |

NOTE:_____

_____

with future interest upon said principal amount from the
date of the judgment at the legal rate.

Therefore, YOU ARE COMMANDED, that of the goods
and chattels, land and tenements of said defendant(s).
and ESPECIALLY/ONLY of the following described
property, to wit:

YOU cause to be made the several sums set out in the forgoing recital of the judgment in this cause and have the
said several sums of money before the Superior Court of this County at the next term of court, with this Writ to render
to said plaintiff(s), interest, attorney fees and costs aforesaid.

Witness the Honorable ____URAL GLANVILLE____ Judge of Said Court, this the
13TH _____ day of MARCH, 2023 .

Cathelene Robinson, Clerk of Superior Court

By_____
Deputy Clerk

Entered on General Execution Docket at
Page _____ this _____ day of _____, 20_____

166-16-689

Doc # 2023094589, OR BK 20674 Page 298, Number Pages: 2,
Recorded 05/10/2023 10:54 AM, JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $18.50

| Fulton County Superior Court Certified Document | 7CKA4-7Q4LC-MU2A | Page 1 of 2 |
|---|---|---|

Fulton County Superior Court
***EFILED***QW
Date: 3/2/2023 4:16 PM
Cathelene Robinson, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| Mashala Investments, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION FILE |
| | ) | NO. 2022CV363021 |
| BinaNat Capital, LLC, Robert | ) | |
| Storm, and Sindre, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ELECTION OF REMEDY AND ENTRY OF JUDGMENT**

THE COURT ENTERED its Order in this action upon Plaintiff Mashala Investments,

LLC's ("Mashala") Motion for Summary Judgment on February 24, 2023, granting Mashala the

right to elect its remedy between the Court's award of breach of contract, conversion and fraud.

Within 10 business days of the entry of said Order, Mashala hereby elects the remedy of fraud as

set forth in the Order, and judgement is hereby awarded in favor of Mashala against BinaNat

Capital, LLC and Robert Storm in the following amounts:

| | |
|---|---|
| Principal: | $704,250.00 |
| Interest: | $ 80,871.38 |
| Court Costs: | $    308.73 |
| Attorney's Fees and Costs: | $ 60,433.29 |
| TOTAL: | $845,863.40 |

IT IS HEREBY FURTHER ORDERED AND ADJUDGED that the Clerk immediately

enter this judgment and issue and record in the public lien records for Fulton County a Writ of

Fieri Facias in favor of Mashala; and

{00238759 1 }

A True Copy
Certification on Last Page

Fulton County Superior Court Certified Document    7CKA4-7Q4LC-MU2A    Page 2 of 2

IT IS HEREBY FURTHER ORDERED AND ADJUDGED that Sindre, LLC is prohibited

from financing or transferring 891 Bouldercrest Drive in Atlanta, DeKalb County, Georgia until

the monetary portion of this judgment is satisfied.

SO ORDERED this 2nd day of March, 2023.

_____
Honorable Ural Glanville
Chief Judge, Superior Court of Fulton County,
Georgia

Prepared and submitted by:

/s/ Jon A. Gottlieb
Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
FLYNN & GOTTLIEB, P.A.
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
(404) 497-8000 Telephone
(404) 497-8009 FAX
jong@lawfg.com
Attorneys for Plaintiff
Mashala Investments, LLC

{00238759 1 }    - 2 -

STATE OF FLORIDA, VOLUSIA COUNTY
I HEREBY CERTIFY the foregoing is a true copy
of the original filed in this office. This

April 24, 2023
Clerk of Circuit Court

By: Deputy Clerk
e-signed, 04/24/2023, 2023 31119 CICI

Doc # 2023094588, OR BK 20674 Page 296, Number Pages: 2,
Recorded 05/18/2023 10:54 AM, JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $18.50

Case Number: 2023 31119 CICI
Division: 32 - Mary G. Jolley

IN THE SUPERIOR COURT OF FULTON COUNTY

STATE OF GEORGIA

| | | |
|---|---|---|
| Mashala Investments, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. 2022CV363021 |
| vs. | ) | |
| | ) | |
| BinaNat Capital, LLC, Robert | ) | |
| Storm, and Sindre, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF ANGELA WEILAND**

PERSONALLY APPEARED before me, the undersigned officer, duly authorized to administer oaths, **ANGELA WEILAND**, who, after having been sworn, deposes and says under oath as follows:

1.    My name is Angela Weiland. I am above the age of 18 years, and I am competent in all respects to testify regarding the matters set forth herein. I give this Affidavit voluntarily, and I have personal knowledge of the facts stated herein and know them to be true.

2.    I am the Manager of Mashala Investments, LLC ("Mashala"), which is the Plaintiff in this action.

3.    The principal office address for Mashala is 4571 Blackland Drive, Marietta, Georgia 30067.

4.    Mashala is represented in the action by counsel Jon A. Gottlieb, Flynn & Gottlieb, P.A., 800 Johnson Ferry Road, N.E., Atlanta, Georgia 30342-1417.

5.    Mashala obtained a judgment against Defendants BinaNat Capital, LLC and Robert Storm in the amount of $845,863.40. Said judgment was entered on March 2, 2023.

{00239700 1 }

A True Copy
Certification on Last Page

6.   The last known address for Defendant Robert Storm is 94 Rosehill Court, St. Augustine, Florida, 32092.

7.   The last known address for Defendant BinaNat Capital, LLC is 5565 Glenridge Connector NE, Suite 850, Atlanta, Georgia, 30342.

Sworn to and subscribed before me this 3rd day of April, 2023.

_____          _____
Notary Public                          Angela Weiland

(NOTARY SEAL)

My Commission Expires:



STATE OF FLORIDA, VOLUSIA COUNTY
I HEREBY CERTIFY the foregoing is a true copy
of the original filed in this office. This

April 24, 2023
_____
Clerk of Circuit Court

By: Deputy Clerk
e-signed, 04/24/2023, 2023 31119 CICI

{00239700 1 }                    - 2 -

Doc # 2023074818, OR BK 20646 Page 749, Number Pages: 2,
Recorded 04/13/2023 12:43 PM, JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY
RECORDING $18.50

Doc # 2023035337, OR BK 20589 Page 2241, Number Pages: 2,
Recorded 02/22/2023 08:03 PM, JODY PHILLIPS CLERK CIRCUIT COURT DUVAL COUNTY

Filing # 167301048 E-Filed 02/22/2023 11:37:58 AM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.: 2022-CA-006793
DIVISION: CV-B

RICHARD SVENSSON,

    Plaintiff,

vs.

BINANAT CAPITAL, LLC and ROBERT STORM,

    Defendants.

_____/

### FINAL JUDGMENT

    This case comes before the Court on Plaintiff's Motion for Final Default Judgment after

entry of a Clerk's Default against Defendants Binanat Capital, LLC and Robert Storm. The Court

having reviewed the motion and the court file and considered relevant authority, it is

    ORDERED and ADJUDGED:

    1.    Plaintiff Richard Svensson shall recover from Defendants Binanat Capital, LLC,

c/o Menden Freiman RA Services, Inc., Registered Agent, 5565 Glenridge Connector NE, Suite

850, Atlanta, GA, 30342, and Robert Storm, 14370 Cottage Lake Road, Jacksonville, FL 32224,

jointly and severally, the sum of $425,799.66, which sum shall bear interest at the applicable

statutory interest rate of 5.52%, as set forth in § 55.03, Florida Statutes, for all of which let

execution issue.

    2.    The post-judgment interest rate herein shall be adjusted annually on January 1 of

each successive year in accordance with the interest rate in effect on that date as set by the Chief

Financial Officer until the judgment is paid.

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 02/22/2023 01:37:11 PM

Exhibit 04

OR BK  20646  PAGE  750

OR BK  20589  PAGE  2242

3. The Court reserves jurisdiction to consider a timely motion under Florida Rule of Civil Procedure 1.525.

DONE AND ORDERED in Chambers on this *22* day of February 2023 in Duval County, Jacksonville, Florida.

_____
KATIE L. DEARING
CIRCUIT COURT JUDGE

Copies via electronic filing to:
Counsel of Record

Copies via U.S. Mail by moving party to:

Binanat Capital, LLC,
c/o MendenFreiman RA Services, Inc., Registered Agent,
5565 Glenridge Connector NE, Suite 850,
Atlanta, GA, 30342

Robert Storm
14370 Cottage Lake Road,
Jacksonville, FL 32224

STATE OF FLORIDA
DUVAL COUNTY
I, UNDERSIGNED Clerk of the Circuit & County Courts, Duval
County, Florida, DO HEREBY CERTIFY the within and foregoing,
consisting of ___ pages, is a true and correct copy of the original
as it appears on record and file in the office of the Clerk of Circuit
& County Courts of Duval County, Florida.
WITNESS my hand and seal of Clerk of Circuit & County Courts
at Jacksonville, Florida, this the ___ day of ___ A.D., 20___
Clerk, Circuit and County Courts
Duval County, Florida
By _____
Deputy Clerk

FOR QCD REL
DE Book 16154 Page 5875

Deed Book 15625 Pg 3275
Filed and Recorded May-06-2019 07:42am
2019-0049922
Georgia Intangible Tax Paid $0.00

*Rebecca Keaton*

Rebecca Keaton
Clerk of Superior Court Cobb Cty. Ga.

**Tax Parcel ID: 17027200780**

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

<u>NOTE TO TAX COMMISSIONER</u>: **THIS DEED SECURES A NOTE IN THE AMOUNT OF $40,000.00 PAYABLE ON OCTOBER 31, 2019, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

## <u>DEED TO SECURE DEBT AND SECURITY AGREEMENT</u>

THIS INDENTURE (hereinafter sometimes referred to as the "*Security Deed*" or "**Deed to Secure Debt and Security Agreement**"), made as of the 12th day of April, 2019, by and between **KELVIN A. MCDUFFIE**, (hereinafter called "*Grantor*"), with an address of 775 Winnmark Court, Roswell, Georgia 30076, and **BINANAT CAPITAL, LLC**, a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

### W I T N E S S E T H :

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "*Property*"):

(a)     All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "*Land*");

(b)     All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes owned by Grantor and attached to said

1

Deed Book 15625 Pg 3276

buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, building supplies and materials, books and records, chattels, inventory, accounts, consumer goods, general intangibles and personal property of every kind and nature whatsoever owned by Grantor and now or hereafter located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land and the improvements located from time to time thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions or proceeds from a permitted sale of any of the foregoing, all tradenames, trademarks, servicemarks, logos, and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land and the improvements located thereon or any part thereof and are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Security Deed. The location of the above-described collateral is also the location of the Land;

(c)     All building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of, or in connection with, construction of the buildings and improvements upon the Land and which are now or hereafter owned by Grantor;

(d)     All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof and appurtenant to the title to the Land, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor;

(e)     All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor in and to the same; reserving only the right to Grantor to collect the same so long as an Event of Default has not occurred hereunder;

(f)     All permits, licenses, franchises, certificates, development rights, commitments and rights for utilities, and other rights and privileges obtained in connection with the Land and Improvements;

(g)     All oil, gas and other hydrocarbons and other minerals produced from or allocated to the Land and all products processed or obtained therefrom, and the proceeds thereof;

(h)     All site plans, drawings, plans, specifications, and studies prepared by all architects, all reports, surveys, and studies made by all engineers, and all other plans, soil test, reports, specifications, engineering plans and reports, and any other architectural or engineering data used or useful in connection with the construction of the Improvements (hereinafter collectively referred to as the "*Plans and Specifications*");

(i)     All building permits, service agreements, or other such permits and/or approvals required to construct the Improvements in accordance with the Plans and Specifications, including without limitation permits, approvals, licenses, or authorizations issued by any governmental agency or any other person in connection with the construction, operation, or maintenance of the Land, the Improvements, the

2

Deed Book 15625 Pg 3277

Contracts, or the Plans and Specifications, including, without limitation, all of Borrower's rights and interests under all zoning variances, use permits, plat approvals, building permits, development permits, sewer-tap permits, and other utility permits or governmental approvals issued in connection with the Land or Improvements;

(j)    The numerous agreements, instruments, cross easements, reciprocal easements contracts, declarations of easements and restrictive covenants and all right, title, interest, privileges and obligations as *"Declarant"* thereunder, all declarant rights and rights of control for any home owners association, community association, or otherwise, development agreements, or otherwise incident to the Land and Improvements, whether now existing or hereafter created and as approved by Lender in its sole discretion (collectively the *"Development Documents"*); and

(k)    All products and/or proceeds of any of the foregoing, including without limitation, insurance proceeds.

TOGETHER WITH all and singular the rights, tenements, hereditaments, members and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the Property hereinabove mentioned or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor, including but not limited to, all rents, profits, issues and revenues of the Property from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving only the right to Grantor to collect the same for its own account so long as Grantor is not in default hereunder.

TO HAVE AND TO HOLD the property and all parts, rights, members and appurtenances thereof unto Grantee, its respective successors and assigns, to its or their own use IN FEE SIMPLE forever.

AND Grantor covenants that Grantor is lawfully seized and possessed of the Property and has good right to convey the same as aforesaid, that the Property and every part thereof are unencumbered except for those matters (hereinafter referred to as the *"Permitted Encumbrances"*) expressly set forth in **Exhibit "B"** attached hereto and by this reference made a part hereof, and that Grantor does warrant and will forever defend the title to the Property and every part thereof against the claims of all persons and entities whomsoever, except as to the Permitted Encumbrances.

This Security Deed is intended (i) to constitute a security agreement for purposes of the Uniform Commercial Code of Georgia and (ii) to operate and is to be construed as a deed passing title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the *"Secured Indebtedness"*):

(a)    The debt evidenced by that certain Promissory Note dated of even date herewith, made by Kelvin A. McDuffie (*"Maker"*), payable to the order of Grantee, in the principal face amount of **Forty Thousand and No/100 Dollars ($40,000.00)**, together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced thereby, or any replacement note or notes that may be substituted for said Promissory Note after the date hereof (collectively hereinafter referred to as the *"Note"*, with interest on the outstanding principal at the rates provided for in the Note, with the final payment being due not later than October 31, 2019; and

(b)    Any and all additional advances made by Grantee to protect or preserve the Property or the security interest created hereby in the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's or Maker's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Property at the time of such advances); and

3

Deed Book **15625** Pg **3278**

(c)    Any and all costs, expenses, charges, liabilities, commissions and attorneys' fees now or hereafter chargeable to or incurred by, or disbursed by, Grantee as provided for herein, or by applicable law; and

(d)    Any and all other indebtedness now or hereafter owing by Grantor or Maker to Grantee under the Loan Documents, as hereinbelow defined.

The Note, this Security Deed, and all documents, instruments, deeds, mortgages and agreements now or hereafter evidencing, securing or otherwise relating to the Note, this Security Deed, or the Secured Indebtedness, together with any and all renewals, modifications, consolidations and extensions thereof, are collectively hereinafter referred to as the "*Loan Documents*."

The parties hereto further expressly agree that should all monies advanced to the Grantor herein pursuant to the note be totally repaid and the balance owing to the Grantee be reduced to zero at any time or from time to time, this Deed to Secure Debt shall not become null and void by operation of law or otherwise but shall remain in full force and effect and shall retain its priority position of record relative to any and all advances from Grantee to Grantor.  Grantor and Grantee herein intend by this conveyance to establish a perpetual or indefinite security interest in the real property conveyed herein, with this statement being made pursuant to the provision of O.C.G.A. § 44-14-80(a)(2).

PROVIDED ALWAYS, that should the Secured Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, then this Security Deed shall be canceled and surrendered, but otherwise shall remain in full force and effect.

AND GRANTOR HEREBY further covenants and agrees with Grantee as follows:

## ARTICLE 1

1.01    <u>Payment of Indebtedness and Performance of Obligations</u>.  Grantor will pay the Secured Indebtedness according to the tenor thereof promptly as the same shall become due, and shall perform every obligation of Grantor contained in this Security Deed, and in each and every instrument now or hereafter evidencing or securing the Secured Indebtedness, and in other Loan Documents.

1.02    <u>Monthly Deposits</u>.  To secure further the payment of the taxes and assessments referred to in Section 1.03 below, and the payment of premiums on the insurance policies referred to in Section 1.04 below, Grantee, at its option, shall have the right to require Grantor to deposit with Grantee on the first day of each and every month a sum which, in the reasonable estimation of Grantee, shall be equal to one-twelfth of the annual taxes and assessments and one-twelfth of such annual insurance premiums; said deposits to be held by Grantee, free of interest, and free of any liens or claims on the part of creditors of Grantor and as part of the security of Grantee, and to be used by Grantee to pay current taxes, assessments and insurance premiums on the Property as the same accrue and are payable.  Said deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Grantee.  If said deposits are insufficient to pay the taxes, assessments and insurance premiums in full as the same become payable, Grantor shall deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay such taxes, assessments and insurance premiums in full.  Upon any Event of Default hereunder or under the Note, Grantee may, at its option, apply any money in the fund resulting from said deposits to the payment of the Secured Indebtedness in such manner as Grantee may elect.

1.03    <u>Taxes, Liens and Other Charges</u>.

4

Deed Book 15625 Pg 3279

(a)    In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to affect adversely Grantee, Grantor shall promptly pay any such tax relating to this Security Deed, the Property or the Note; if Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment, then the entire balance of the principal sum secured by this indenture and all interest accrued thereon shall, thirty (30) days after written notice, become due and payable at the option of Grantee.  Nothing herein shall impose upon Grantor the obligation to pay any state or federal income taxes, corporate franchise taxes or net worth taxes assessed or levied against Grantee.

(b)    Grantor shall pay (to the extent the same are not paid from escrowed funds provided for in Section 1.02 hereof), before the same become delinquent, all taxes, liens, assessments and charges of every character already levied or assessed or that may hereafter be levied or assessed upon or against the Property and all utility charges for the Property, whether public or private; and upon demand shall furnish Grantee receipted bills evidencing such payment.

(c)    Grantor shall not suffer any mechanic's, materialmen's, laborer's, statutory or other lien to remain outstanding upon any part of the Property.

(d)    Notwithstanding the provisions of Subsection 1.03(a), 1.03(b) or 1.03(c) hereinabove to the contrary, Grantor may contest the validity and/or amount of any taxes, assessments or other charges referred to in said subsections at Grantor's sole cost and expense and shall not be required to pay or discharge any obligation imposed upon Grantor in any of said subsections so long as (i) Grantor shall in good faith contest the same by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon and the sale, levy or forfeiture of or upon all or any part of the Property to satisfy the same, and (ii) at Grantee's request, Grantor shall deposit in escrow with a title insurance company acceptable to Grantee, or provide other security reasonably satisfactory to Grantee, an amount equal to the amount being contested plus a reasonable additional sum to cover possible costs, interest and penalties.

1.04    Insurance.    Grantor shall keep or cause others to keep all buildings and improvements, whether now standing on the Property or hereafter erected, continuously insured against loss or damage by fire, by the perils covered by extended coverage insurance, by builder's risk insurance, by loss of rents or business interruption insurance and by malicious mischief and against such other hazards as Grantee, in its reasonable discretion, shall from time to time require, for the benefit of Grantee; all such insurance at all times shall be in an insurance company or companies in the amount of the full replacement cost of each such insured item and with terms acceptable to Grantee, with loss, if any, payable to Grantee as its interest may appear, pursuant to a non-contributory mortgagee clause which shall be satisfactory to Grantee; and forthwith upon the issuance of such policies Grantor shall deliver to Grantee receipts for the premiums paid thereon.  In the event of the foreclosure of this Deed or any other transfer of title to the Property in extinguishment or partial extinguishment of the Secured Indebtedness, all right, title and interest of Grantor in and to all insurance policies then in force shall pass to the purchaser or to Grantee, as the case may be, and Grantee is hereby irrevocably appointed by Grantor as attorney-in-fact for Grantor to assign any such policy to said purchaser or to Grantee, as the case may be, without accounting to Grantor for any unearned premiums thereon.  At least thirty (30) days prior to the expiration date of each policy of insurance maintained pursuant to this Section 1.04, a renewal or replacement thereof satisfactory to Grantee shall be delivered to Grantee.  Provided no Event of Default, as defined in Article 2 of this Security Deed, shall have occurred and be continuing hereunder, Grantor shall be authorized and empowered to adjust or compromise any loss under any insurance policies on the Property, subject to Grantee's approval of the terms of any adjustment or compromise, such approval not

5

to be unreasonably withheld.  In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt, the Note or any Loan Document and Security Agreement, then Grantee is hereby authorized and empowered, at its option, to adjust or compromise any such loss under any insurance policies on the Property.  Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee, instead of to Grantor or to Grantor and Grantee jointly.  In the event any insurance company fails to disburse directly and solely to Grantee but disburses to Grantor or to Grantor and Grantee jointly, Grantor agrees to immediately endorse and transfer such proceeds to Grantee.  In case of loss under any such policy of insurance, Grantee may, at its option, make all or any portion of the net proceeds available to Grantor for the purpose of restoration or repair of the Property or may apply the net proceeds or any portion thereof to the payment of the indebtedness hereby secured, whether due or not.

    1.05   <u>Care of the Property.</u>

    (a)   Grantor shall keep the improvements now or hereafter erected on the Property in good condition and repair, shall not commit or suffer any waste and shall not do or suffer to be done anything (other than construction, ownership, operation, maintenance and repair or renovation of improvements) which shall increase the risk of fire or other hazard to the Property or any part thereof.

    (b)   Grantor shall not remove or demolish nor alter the design or structural character of any building (now or hereafter erected) or other part of the Property without the prior written consent of Grantee.

    (c)   If the Property or any part thereof is damaged by fire or any other cause, Grantor shall give prompt written notice of the same to Grantee.

    (d)   Grantee or its representative is hereby authorized upon notice reasonable under the circumstances to enter upon and inspect the Property at any time during normal business hours, subject to the rights of tenants therein.

    (e)   Grantor shall promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Property or any part thereof.  If Grantor receives notice from any federal, state or other governmental entity that the Property fails to comply with any applicable law, ordinance, rule, order or regulation, Grantor will promptly furnish a copy of such notice to Grantee.

    (f)   If all or any part of the Property shall be damaged by fire or other casualty, Grantor shall, upon request of Grantee, promptly restore or cause to be restored the Property, or any portion thereof specified by Grantee, to the equivalent of its condition immediately prior to such damage, and if a part of the Property shall be damaged through condemnation (which damage does not result in acceleration of the indebtedness secured hereby by Grantee, as provided in Section 1.12 below), Grantor shall, upon request of Grantee, promptly restore, repair or alter the remaining part of the Property in a manner reasonably satisfactory to Grantee.  In the event Grantor is required pursuant to the provisions contained herein to restore, repair or alter the Property after fire, other casualty or condemnation, Grantee agrees that it shall make any net insurance proceeds or condemnation proceeds available to Grantor, pursuant to procedures satisfactory to Grantee, for the purpose of paying the cost of such restoration, repair or alteration.

    1.06   <u>Further Assurances.</u>  At any time, and from time to time, upon request by Grantee, Grantor shall make, execute and deliver or cause to be made, executed and delivered, to Grantee, any and all other further instruments, certificates and other documents as may be reasonably necessary in order to effectuate, complete or perfect or to continue and preserve the obligations of Grantor under the Note and the security interest of this Deed to Secure Debt and Security Agreement.  Upon any failure of Grantor so

Deed Book 15625 Pg 3281

to do, Grantee may make, execute and record any and all such instruments, certificates and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as the agent and attorney-in-fact of Grantor so to do. The conveyance of this Deed to Secure Debt and Security Agreement and the security interest created hereby will automatically attach, without further act, to all after-acquired land or other property attached to and/or used in the operation of the Property or any part thereof, except to the extent expressly released by Grantee.

1.07    Leases Affecting the Property. Grantor shall perform all material covenants to be performed by the landlord under any and all leases now or hereafter on the Property or any part thereof and shall not, without the written consent of Grantee, cancel, surrender or modify any such lease. Grantor shall furnish Grantee signed copies of all leases on the Property or any part thereof promptly after their execution. Grantor shall, by written instrument in form and substance satisfactory to Grantee, assign to Grantee Grantor's interest in each and every lease hereafter entered into by Grantor with respect to all or any part of the Property. The terms "lease" and "leases" as used in this Section 1.07 shall include all tenancies.

1.08    Expenses. Grantor shall pay or reimburse Grantee for all fees, costs and expenses incurred by Grantee with respect to any and all transactions contemplated herein including, without limiting the generality of the foregoing, all title and conveyancing charges, recording and filing fees, mortgage taxes, intangible personal property taxes, escrow fees, revenue and tax stamp expenses, insurance premiums (including title insurance premiums), brokerage commissions, finder's fees, court costs, surveyors', photographers', appraisers', architects', engineers', accountants' and attorneys' fees and disbursements, and will reimburse to Grantee all of the foregoing expenses paid by Grantee which have been or may be incurred by Grantee with respect to any or all of the transactions contemplated herein. In addition to the foregoing, if any action or proceeding be commenced (including but not limited to any action to foreclose this Security Deed or to collect the Secured Indebtedness), to which action or proceeding Grantee is made a party, or in which it becomes necessary to defend or uphold the lien of this Security Deed, or in which Grantee is served with any legal process, discovery notice or subpoena relating to Grantee's lending to Grantor or accepting a guaranty from a guarantor of the Secured Indebtedness, Grantor will reimburse to Grantee all of the foregoing expenses (including, without limitation, the cost of any environmental audit) which have been or may be incurred by Grantee with respect to the foregoing. All sums paid by Grantee for the expense of any litigation to prosecute or defend the rights and lien created by this Security Deed or to appear or to take action in response to any such legal process, discovery notice or subpoena (including attorneys' fees and disbursements) shall be paid by Grantor, upon demand by Grantee, and any such sum shall be a lien on the Property, prior to any right, or title to, interest in or claim upon the Property attaching or accruing subsequent to the lien of this Security Deed, and shall be deemed to be secured by this Security Deed. In any action or proceeding to foreclose this Security Deed, or to recover or collect the Secured Indebtedness, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

1.09    Estoppel Affidavits. Grantor shall, upon ten (10) days prior written notice, furnish Grantee a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not, to the best knowledge of Grantor, any off-sets or defenses exist against such principal and interest, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

1.10    Subrogation. Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Secured Indebtedness secured hereby, notwithstanding that any instrument providing public notice of same shall be satisfied and canceled of record.

7

Deed Book 15625 Pg 3282

1.11    <u>Performance by Grantee of Defaults by Grantor</u>.  If Grantor shall fail to pay any tax, lien, assessment or charge levied or assessed against the Property, any utility charge, whether public or private, required to be paid hereunder or any insurance premium required to be paid in connection with the procurement of insurance coverage and the delivery of the insurance policies required hereunder, or if Grantor shall fail to perform or observe any covenant, term or condition of any leases affecting all or any part of the Property or any other covenant, condition or term of this Deed to Secure Debt and Security Agreement, then Grantee, at its option, after the giving of any notice and expiration of any cure period provided for herein, may perform or observe the same, and all payments made or costs incurred by Grantee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate of interest under the Note. Notwithstanding the foregoing, with respect to any payments permitted hereunder other than insurance premiums, Grantee shall not make any such payments without first giving Grantor ten (10) calendar days prior written notice of its intention to do so; provided, however, that if Grantee in its good faith judgment determines that its failure so to make any of the payments permitted hereunder prior to the end of such ten (10) calendar day period would adversely affect either the Property or its security interest therein, then in such event Grantee shall have the right to make such payment prior to the end of such ten (10) calendar day period, and any such payment shall be covered by the terms of this Section 1.11.  Grantee shall be the sole judge of the legality, validity and priority of any such tax, lien, assessment, charge, claim, premium and obligation, of the necessity for any such actions, and of the amount necessary to be paid in satisfaction thereof.  Grantee is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof (subject to rights of tenants thereof) upon notice reasonable in the circumstances for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby becoming liable to Grantor or any other person in possession holding under Grantor except to the extent of the gross negligence or willful misconduct of Grantee or its agents and employees.

1.12    <u>Condemnation</u>.  If all or any material part of the Property shall be damaged or taken through condemnation (which term when used in this Deed to Secure Debt and Security Agreement shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), the entire indebtedness secured hereby shall, at the option of Grantee, become immediately due and payable.  Grantee shall be entitled to all compensation, awards and other payments or relief arising from any such condemnation.  If the condemnation shall result in a taking of less than a material portion of the Property, then Grantee, after deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, shall make the net proceeds available to Grantor for the repair and/or restoration of the Property.  Provided no Event of Default shall have occurred and be continuing hereunder, then Grantor shall be authorized, at its option, to commence, appear in and prosecute through counsel selected by Grantor and reasonably acceptable to Grantee, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith, subject to Grantee's approval of the terms of any such settlement or compromise. In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt and Security Agreement or any of the other Loan Documents, then Grantor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Property or any part thereof, will promptly notify Grantee, and Grantee is hereby authorized and empowered, at its option, to commence, appear in, and prosecute any such action or proceeding and to settle or compromise any claim in connection therewith.  All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Grantor to Grantee, who after deducting therefrom all its expenses, including attorney's fees, may release any monies so received by it without affecting the security interest of this Deed to Secure Debt and Security Agreement.  Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as Grantee may reasonably require.  If, prior to the receipt by Grantee of such award or proceeds, the Property shall have been sold on foreclosure of this Security Deed, or by deed in lieu thereof, or under the power of sale herein granted, Grantee shall have the right to receive such award or proceeds to the extent

8

of any unpaid Secured Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Security Deed or the Note shall have been sought or recovered, and to the extent of counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or proceeds.  As used herein, a "material" portion of the Property shall mean any portion of the Property such that the condemnation thereof will in the reasonable judgment of Grantee substantially adversely affect the construction or operation of the project contemplated by the Loan Documents for its intended purposes or the rental income therefrom.

1.13    Security Agreement.

(a)    With respect to the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, articles of personal property, chattels, chattel paper, documents, inventory, accounts, farm products, consumer goods and general intangibles of Grantor referred to or described in this Deed to Secure Debt and Security Agreement, or in any way connected with the use and enjoyment of the Property, this Deed to Secure Debt and Security Agreement is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Property, in compliance with the provision of the Georgia Uniform Commercial Code.  Upon request by Grantee, at any time and from time to time, a financing statement or statements reciting this Deed to Secure Debt and Security Agreement to be a security agreement affecting all of such property shall be executed by Grantor and Grantee and appropriately filed.  The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Deed to Secure Debt and Security Agreement shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Grantee's sole election.  Grantor and Grantee agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Grantor and Grantee that everything used in connection with the production of income from the Property or adapted for use therein or which is described or reflected in this Deed to Secure Debt and Security Agreement, is, and at all times and for all purposes and in all proceedings, both legal or equitable, shall be, regarded as part of the real estate conveyed hereby regardless of whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Deed to Secure Debt and Security Agreement, or (iii) any such item is referred to or reflected in any such financing statement or statements so filed at any time.  Similarly, the mention in any such financing statement or statements of the rights in and to (i) the proceeds of any fire and/or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) Grantee's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Grantee as determined by this Deed to Secure Debt and Security Agreement or affect the priority of Grantee's security interest granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Grantee in the event any court shall at any time hold with respect to the foregoing clauses (i), (ii) or (iii) of this sentence, that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the appropriate Uniform Commercial Code records.

(b)    Grantor warrants that the location of the collateral is or will be upon the Land (excepting materials intended to be located thereon and stored temporarily off-site).  Grantor covenants and agrees with Grantee that Grantor will furnish Grantee with notice of any change in the principal place of business of Grantor within thirty (30) calendar days of the effective date of any change and Grantor will promptly execute any financing statements or other instruments deemed necessary by Grantee to prevent any filed financing statement from becoming misleading or losing its status.

9

Deed Book 15625 Pg 3284

1.14    Construction Materials.  In addition to the interests in and to the Property granted, bargained, sold and conveyed by Grantor to Grantee as set forth hereinabove, Grantor has also granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto Grantee all building materials, equipment and appliances, including without limiting the generality of the foregoing, bricks, mortar, lumber and other items and equipment, which are acquired by Grantor to be placed upon or used in connection with the Property, whether or not such materials are located upon or attached to the Property, and all guaranties and warranties of workmanship or quality relating to said building materials, equipment and appliances, or other personal property and improvements and the construction and installation thereof, and all contract rights, business names and other intangibles of Grantor relating to the construction, equipment and operation of the Property; and all of the items and types of items identified in this Section 1.14 shall also be included within the meaning of the term *"**Property**"* as used in this instrument.

1.15    Conveyance of the Property.  Grantor hereby acknowledges and confirms that the identity and expertise of Grantor are material circumstances upon which Grantee has relied in connection with the sums advanced herein, and any change in such identity or expertise could materially impair or jeopardize the security afforded to Grantee by this Deed to Secure Debt and Security Agreement for the payment of the principal amount of the Secured Indebtedness. Accordingly:

(a)    Grantor shall not, without the prior written consent of Grantee, which may be exercised arbitrarily and withheld for any reason or no reason, voluntarily or by operation of law, sell, transfer, lease to one entity in its entirety, convey or assign all or any part of the legal or equitable title to the Property, or any part of, or interest in, the Property.  For purposes hereof, the change or transfer or encumbrance of the legal or equitable ownership of any interest in Grantor, or the change or transfer of any direct or indirect interest in Grantor shall constitute a transfer of the Property.

(b)    Grantor shall not, without the prior written consent of Grantee, voluntarily or by operation of law, mortgage, encumber, transfer, convey or assign the Property, or any part of, or interest in, the Property, as security for an indebtedness other than for the Secured Indebtedness.

Notwithstanding anything provided to the contrary in Section 2.01 hereinbelow, in the event Grantor breaches any term of this Section 1.15, such breach shall entitle Grantee immediately to exercise all rights and remedies provided herein, and Grantor shall not be entitled to any cure period in connection therewith.

1.16    Litigation.  Grantor shall promptly give notice in writing to Grantee of any litigation commenced or threatened affecting the Property.

1.17    Hazardous Materials.  To the best of Grantor's knowledge, the Property (including the land, surface water, ground water and all improvements) is free of the following:

(a)    any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder;

(b)    any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and regulations promulgated thereunder;

(c)    any substance the presence of which on the Property is prohibited by any law similar to those set forth in this Section 1.17;

10

Deed Book 15625 Pg 3285

(d)    any asbestos fire proofing or insulation or other form of building materials or substances which may, if not properly handled, pose a threat to the health of building users and occupants;

(e)    contamination resulting from any oil or petroleum products and their by-products;

(f)    any polychlorinated biphenyls ("*PCBs*"); and

(g)    contamination resulting from any materials which, under federal, state or local law, statute, ordinance or regulations, or court or administrative order or decree, or private agreement (hereinafter referred to collectively as "*Environmental Requirements*") require special handling in collection, storage, treatment or disposal because of toxic, flammable, explosive, corrosive, reactive, or radioactive properties or because of properties that may be hazardous or harmful to the environment or human health [items (a)-(g) are hereinafter referred to collectively as "*Hazardous Materials*"].

Grantor hereby warrants and represents to Grantee that with regard to the Property and all activities on the Property, Grantor has not received any verbal or written notice of, and is unaware of, any violation or any action, judicial or administrative, relating to the violation, of any of the Environmental Requirements. Further, Grantor warrants and represents to Grantee that it has not actually received, and is unaware of, any notice under any of the Environmental Requirements relating to the existence of any contamination or Hazardous Materials on the Property. Further, Grantor warrants and represents to Grantee that it has not spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, and that to the best of Grantor's knowledge, no other person has spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements. Grantor shall not hereafter (i) cause or suffer to occur a release, spillage, leak, uncontrolled loss, seepage or filtration of any Hazardous Materials at, upon or within the Property or any contiguous real estate in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, (ii) engage in any activity, or permit any tenant or occupant of the Property to engage in any activity, that could lead to the imposition of liability on such tenant or occupant or on Grantor or the creation of a lien on the Property, under the Environmental Requirements, except for activities involving chemicals, substances and materials routinely used in the construction of improvements such as the improvements to be constructed on the Land or used in the day-to-day operation, cleaning, maintenance and landscaping of properties such as the Property, including chemicals, substances and materials sold by tenants of the Property in the ordinary course of their business, provided that at all times Grantor shall cause any such chemicals, substances and materials to be used, stored, handled and disposed of in compliance with all applicable Environmental Requirements. If Grantor shall fail to take or cause to be taken any and all actions as may be necessary to comply with all Environmental Requirements, Grantee may make advances or payments towards performance or satisfaction of the same, but shall be under no obligation to do so; and any sums so advanced or paid, including, without limitation, all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation, attorneys' fees, fines or other penalty payments, shall be reimbursed by Grantor to Grantee in accordance with the provisions of Section 1.11 hereinabove. Grantor shall and does hereby agree to indemnify and hold Grantee harmless from and against any and all loss, expense and charge whatsoever, including, without limitation, all court costs and attorneys' fees, arising out of or in connection with any matter or thing relating to Environmental Requirements or Hazardous Materials and arising out of events or circumstances occurring or existing prior to or during the period of Grantor's ownership of the Property, except to the extent directly caused by the gross negligence or willful misconduct of Grantee or its agents,

Deed Book 15625 Pg 3286

including, without limitation, if Grantee is made a party to any action or suit brought under any of the Environmental Requirements. It is expressly agreed by Grantor that this covenant of indemnification shall survive any payment and satisfaction of the indebtedness evidenced by the Note and secured hereby and the release and satisfaction of this Deed to Secure Debt and Security Agreement and the Loan Documents, and shall continue so long as the risk or potential of any such expense, damage, loss or liability of Grantee exists. Without limiting the generality of the foregoing, the foregoing covenant of indemnification shall inure to the benefit of Grantee, in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property; provided, however, that the foregoing covenant of indemnification shall not extend to any expense, damage or loss arising directly from the acts of Grantee in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property.

1.18    <u>Americans with Disabilities Act</u>. Grantor, at its sole cost and expense, shall promptly and at all times and from time to time comply with all requirements of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 <u>et seq.</u>, the regulations promulgated in connection therewith, 28 CFR Part 36, and the applicable ADA Accessibility Guidelines. Grantor hereby indemnifies and holds harmless Grantee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges and expenses, of any nature whatsoever suffered or incurred by Grantee, whether as grantee of this Deed to Secure Debt, as mortgagee in possession, or as successor-in-interest to Grantor by foreclosure deed or deed in lieu of foreclosure, in connection with the foregoing provision.

1.19    <u>Liability for Use of Loan Proceeds</u>. Lender will not in any way be liable or responsible by reason of this Deed to Secure Debt, or otherwise, for the payment of any claims growing out of the construction, installation, or operation of any contemplated improvements on the Property of Borrower, or arising from or in connection with any other use of the loan proceeds by Borrower.

<u>ARTICLE 2</u>

2.01    <u>Default</u>. The occurrence of any one or more of the following events shall constitute an *"Event of Default"* by Grantor hereunder:

(a)    Maker or Grantor shall fail to pay in full when due and payable any installment of principal, interest or escrow deposits, as required by the Note, this Deed to Secure Debt and Security Agreement (a *"Monetary Default"*), or otherwise; or

(b)    Grantor fails duly to observe any covenant, condition or agreement of this Deed to Secure Debt and Security Agreement or of any other instrument evidencing or securing the Secured Indebtedness (a *"Non-Monetary Default"*); or

(c)    There shall have occurred a *"Default"* or an *"Event of Default"* under and as defined in any of the other Loan Documents; or

(d)    Any warranties or representations made or agreed to be made in this Deed to Secure Debt and Security Agreement or in any other instrument evidencing or securing the Secured Indebtedness shall be breached by Grantor or Maker or shall prove to be false or materially misleading; or

(e)    Any lien or claim of lien for labor, material, taxes, or otherwise shall be filed against the Property and not be removed, bonded, or contested in accordance with the terms of Subsection 1.03(d) above within thirty (30) calendar days after the date of Grantor's receipt of actual notice of such filing; or

(f)    A levy shall be made under any process on, or a receiver be appointed for, the Property or any other property of Grantor or Maker and such levy not be removed or receiver dismissed within thirty (30) calendar days of date of process or appointment; or

Deed Book 15625 Pg 3287

(g)      Grantor, Maker or any current or future guarantor of the Secured Indebtedness (hereinafter called a "*Guarantor*") shall file a voluntary petition in bankruptcy, or any other petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other similar relief for debtors; or

(h)      Grantor, Maker or any Guarantor shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Grantor or of any Guarantor or of all or any part of the Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof; or

(i)      Grantor, Maker or any Guarantor shall make any general assignment for the benefit of creditors; or

(j)      Grantor, Maker or any Guarantor shall commence or have instituted against it the process of dissolution, liquidation, or both dissolution and liquidation; or

(k)      (i) There shall be filed a petition against Grantor, Maker or any Guarantor, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or (ii) there shall be filed a petition seeking the appointment of any trustee, receiver or liquidator of Grantor, Maker, or of any Guarantor, or of all or any substantial part of the Property, or of any or all of the income, rents, issues, profits or revenues thereof; or

(l)      There shall occur a breach of the covenants and provisions of Sections 1.15 or 1.17 hereof; or

(m)      Grantor shall, without the prior written consent of Grantee, voluntarily or by operation of law, transfer, convey or assign the Property, or any part of, or interest in, the Property as security for an indebtedness other than for the indebtedness secured hereby; or

(n)      Grantor and/or Guarantors shall, without the prior written consent of Grantee, sell or otherwise dispose of all or substantially all of its respective assets.

Any periods of grace, cure or notice provided for the benefit of Grantor in this Security Deed and in the other Loan Documents shall run concurrently and not consecutively.

2.02    Acceleration of Maturity.  If an Event of Default shall have occurred hereunder, then the whole unpaid principal sum of the Secured Indebtedness and all interest and other charges accrued and accruing under the Note, this Security Deed and the other Loan Documents shall, at the option of Grantee, become due and payable without notice or demand by Grantee, except as set forth herein, time being of the essence of this Deed to Secure Debt and Security Agreement and of the Secured Indebtedness, and thereafter such Event of Default may be cured only by the payment of such entire principal balance and all other sums due and payable hereunder and thereunder; and no omission on the part of Grantee to exercise such option when entitled so to do shall be considered as a waiver of such right.

2.03    Right to Enter and Take Possession.

(a)      If any Event of Default shall have occurred and be continuing, Grantor, upon demand of Grantee, shall forthwith surrender to Grantee the actual possession of the Property and, to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of the Property and may exclude Grantor and Grantor's agents and employees wholly therefrom.

13

Deed Book 15625 Pg 3288

(b)     If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Grantee, and Grantor hereby specifically consents to the entry of such judgment or decree.  Grantor shall pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including compensation to Grantee, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

(c)     Upon every such entering and taking of possession, Grantee may hold, store, use, operate, manage, control, and maintain the Property and conduct the business thereof, and, from time to time, (i) make all necessary and proper repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor, in its name or otherwise, with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Grantee; all as Grantee may from time to time determine to be to its best advantage; and Grantee may collect and receive all of the income, rents, profits, issues and revenues of the Property, including those past due as well as those accruing thereafter and, after deducting (aa) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases, and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other charges as Grantee may determine to pay, (ee) other proper charges upon the Property or any part thereof and (ff) the compensation and expenses of attorneys and agents of Grantee, shall apply the remainder of the money so received by Grantee to the payment of the Secured Indebtedness. Notwithstanding anything provided herein to the contrary, Grantee shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as a result of any exercise by Grantee of its rights under this Deed to Secure Debt and Security Agreement, and Grantee shall be liable to account only for the rents, income, issues and profits actually received by Grantee.

(d)     For the purpose of carrying out the provisions of this Section 2.03, Grantor hereby constitutes and appoints Grantee the true and lawful agent and attorney in fact of Grantor to do and perform, from time to time, any and all actions necessary and incidental to such purpose and does, by these presents, ratify and confirm any and all actions of said attorney in fact in the Property.

(e)     In the event any such Event of Default by Grantor hereunder is cured and satisfied to the satisfaction of Grantee prior to any action taken to enforce the Security Deed pursuant to Section 2.05 below such that Grantee returns possession of the Property to Grantor, the right of Grantee to take possession from time to time pursuant to this Section 2.03 shall exist upon the occurrence of any subsequent Event of Default hereunder.

(f)     In the event that Grantor and Grantee have entered into a separate Assignment of Rents, or similarly styled agreement, the terms of such agreement shall control in case any terms or provisions thereof may contradict with this Section 2.03.

2.04     Receiver.  If an Event of Default shall have occurred hereunder, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the occupancy or value of any security for the Secured Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof.  The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia.  Grantor shall pay unto Grantee upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Section 2.04 and any such amounts paid by

14

Deed Book 15625 Pg 3289

Grantor shall be added to the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

2.05    Enforcement.

(a)    If the Secured Indebtedness is not paid in full when the same shall become due, whether by acceleration or otherwise, Grantee, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the Secured Indebtedness and all expenses of the sale and of all proceedings in connection therewith, including attorney's fees actually incurred after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county.  At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title, and to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor.  The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative of the other remedies provided hereby or by law for collection of the Secured Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Secured Indebtedness.  In the event of any sale under this Security Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its sole discretion may elect, and if Grantee so elects, Grantee may sell the personal property covered by this Security Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Property is sold or the Secured Indebtedness is paid in full.  If the Secured Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Grantee may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Grantee may determine.

(b)    If an Event of Default shall have occurred, Grantee may, in addition to and not in abrogation of the rights covered under subsection (a) of this Section 2.05, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Security Deed or any other right, and (ii) to pursue any other remedy available to it, all as Grantee shall determine most effectual for such purposes.

2.06    Application of Proceeds of Sale.  In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied first to the payment of expenses of such sale and of all proceedings in connection therewith, including attorney's fees actually incurred, to insurance premiums, liens, assessments, taxes and charges, including utility charges advanced by Grantee, to all other advances made by Grantee pursuant to this Security Deed, then to the accrued interest on the principal indebtedness secured hereby, then to payment of the outstanding principal balance of the Secured Indebtedness; and the remainder, if any, shall be paid to Grantor, or to the person or entity lawfully entitled thereto.

15

2.07    <u>Purchase by Grantee</u>.  Upon any foreclosure sale or sale of all or any portion of the Property under the power herein granted, Grantee may bid for and purchase the Property and shall be entitled to apply all or any part of the Secured Indebtedness as a credit to the purchase price.

2.08    <u>Grantor as Tenant Holding Over</u>.  In the event of any such sale under the power herein granted, Grantor (if Grantor shall remain in possession) shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.09    Intentionally left blank.

2.10    <u>Discontinuance of Proceedings and Restoration of the Parties</u>.  In case Grantee shall have proceeded to enforce any right or remedy under this Deed to Secure Debt and Security Agreement by receiver, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken.

2.11    <u>Remedies Cumulative</u>.  No right, power or remedy conferred upon or reserved by Grantee by this Deed to Secure Debt and Security Agreement is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.12    <u>Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws</u>.  Grantor agrees, to the full extent permitted by law, that in case of an Event of Default hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, exemption, homestead or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed to Secure Debt and Security Agreement, or the absolute sale of the Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof.

2.13    <u>Leases</u>.  The failure of Grantee to make any tenants of the Property parties to any foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be, by Grantor a defense to any proceedings instituted by Grantee to collect the sums secured hereby.

2.14    <u>Waiver</u>.

(a)    No delay or omission of Grantee or of any holder of this Deed to Secure Debt and Security Agreement to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default, or acquiescence therein; and every right, power and remedy given by this Deed to Secure Debt and Security Agreement to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee. Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default hereunder, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Event of Default by Grantor. This Deed to Secure Debt and Security Agreement shall remain in full force and effect during any postponement or extension of the time of payment of the Secured Indebtedness or any part thereof.

16

(b)    If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from this Deed to Secure Debt and Security Agreement or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed to Secure Debt and Security Agreement; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed to Secure Debt and Security Agreement or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Event of Default then made or of any subsequent Event of Default; nor, except as otherwise expressly provided in an instrument or instruments executed by Grantee, shall the conveyance and lien of this Deed to Secure Debt and Security Agreement be altered thereby.  In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the Secured Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

(c)    GRANTOR DOES HEREBY EXPRESSLY WAIVE ANY AND ALL BENEFITS GRANTOR MAY HAVE UNDER O.C.G.A. §44-14-85 TO CLAIM OR ASSERT THAT THE SECURED INDEBTEDNESS HAS BEEN REINSTATED IN ACCORDANCE WITH ITS TERMS FOLLOWING THE WITHDRAWAL OF ANY FORECLOSURE PROCEEDING BY LENDER, AND ACKNOWLEDGES AND AGREES THAT REINSTATEMENT SHALL OCCUR ONLY UPON WRITTEN AGREEMENT OF LENDER.

2.15    <u>Suits to Protect the Property</u>.  Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Deed to Secure Debt and Security Agreement, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Grantee; provided, however, Grantee shall not institute or maintain any such suits or proceedings against parties other than Grantor unless and until Grantee shall have first made upon Grantor such request so to do as shall then be reasonable under the circumstances, and Grantor shall have thereupon failed either to institute and maintain such suit or to otherwise cure or correct any such matters or circumstances.

2.16    <u>Grantee May File Proofs of Claim</u>.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount due and payable by Grantor under this Deed to Secure Debt and Security Agreement at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

2.17    <u>WAIVER OF GRANTOR'S RIGHTS</u>.  BY EXECUTION OF THIS SECURITY DEED, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF GRANTEE TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND

17

Deed Book 15625 Pg 3292

THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NON-JUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS OF THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; AND (C) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY DEED IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

## ARTICLE 3

3.01    Successors and Assigns Included in Parties.  Whenever in this Deed to Secure Debt and Security Agreement one of the parties hereto is named or referred to, the legal representatives, successors and permitted assigns of such parties shall be included and all covenants and agreements contained in this indenture by or on behalf of Grantor and by or on behalf of Grantee shall bind and inure to the benefit of their respective heirs, executors, legal representatives, successors and permitted assigns, whether so expressed or not.

3.02    Headings.  The headings of the sections, paragraphs and subdivisions of this Deed to Secure Debt and Security Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

3.03    Invalid Provisions to Affect No Others.  If fulfillment of any provision hereof or any transaction related hereto or to the Note, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; in no event and under no circumstances whatsoever shall Grantor be charged more than the highest lawful rate of interest permitted under applicable law; if any clause or provision herein contained operates or would prospectively operate to invalidate or impair the enforceability of this Deed to Secure Debt and Security Agreement in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Deed to Secure Debt and Security Agreement shall remain operative and in full force and effect, and shall be enforced to the greatest extent permitted by law.

3.04    Number and Gender.  Whenever the singular or plural number, masculine or feminine or neuter gender is used herein, it shall equally include the other.

3.05    Notices.  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Deed to Secure Debt and Security Agreement shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, by recognized overnight courier service, or, if mailed, sent by certified United States Mail, postage prepaid, return receipt requested, to the other party at the address of such other party set forth below or at such other address within the continental United States of America as such other party may designate by notice

18

Deed Book 15625 Pg 3293

given in accordance herewith; provided further that no notice of change of address shall be effective until the date of receipt thereof. The effective date of such notice shall be the sooner to occur of the date of actual receipt, regardless of the method of delivery, or the date which is three (3) business days after the date on which the notice is postmarked by the United States Postal Service. Delivery to a party or to any officer, partner, agent or employee of such party at the designated address shall constitute effective delivery for purposes hereof. Rejection or other refusal to claim or accept or inability to deliver because of changed address of which no notice was given as prescribed herein shall not affect the effective date of any such notice, election or demand sent as aforesaid. Any such notice, demand, or request shall be addressed as follows:

If to Grantee:        BinaNat Capital, LLC
                      2204 Sawgrass Village Drive
                      Ponte Vedra Beach, FL 32082
                      Attn: Robert Storm, President

with a copy to:       Menden Freiman, LLP
                      5565 Glenridge Connector NE, Suite 850
                      Atlanta, Georgia 30342
                      Attn:  Nathan T. Johns, Esq.

If to Grantor:        Kelvin A. McDuffie
                      775 Winnmark Court
                      Roswell, Georgia 30076

## ARTICLE 4

4.01    Governing Law, Consent to Jurisdiction.   This Deed to Secure Debt and Security Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Georgia, without reference to the application of the choice of law principles. Grantor hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Deed to Secure Debt and Security Agreement may be instituted in the Superior Court of any County in the State of Georgia, or in any United States District Court in Georgia, or in such other appropriate court and venue as Grantee may choose in its sole discretion. Grantor consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which Grantor may now or hereafter have in any such legal action or proceedings.

4.02    Time of Essence.   Time is of the essence in the performance of all obligations hereunder.

4.03    Assignment.   This Deed to Secure Debt and Security Agreement is assignable by Grantee and any assignment hereof by Grantee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Grantee.

4.04    Replacement of Note.   Upon receipt of evidence reasonably satisfactory to Grantor of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Grantor or, in the case of any such mutilation, upon surrender of the Note, Grantor shall sign in lieu thereof a new note, dated the date to which interest has been paid on the lost, stolen, destroyed or mutilated Note and otherwise of like tenor, with appropriate variations.

4.05    Patriot Act.   Grantor warrants, represents and covenants that neither Grantor nor any Obligor nor any of its respective affiliated entities is or will be an entity or person (i) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 (“EO13224”); (ii) whose name appears on the United States Treasury Department’s Office of

19

Deed Book 15625 Pg 3294

Foreign Assets Control ("*OFAC*") most current list of "*Specifically Designated National and Blocked Persons*") (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, http:www.treas.gov/ofac/t11sdn.pdf); (iii) who commits, threatened to commit or supports "terrorism", as that term is defined in EO 13224, or (iv) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subpart {i} – {iv} above are herein referred to as "*Prohibited Person*").  Grantor covenants and agrees that neither Grantor, nor any Obligor nor any of their respective affiliated entities will (i) conduct any business, nor engage in any transaction or dealing, with any "*Prohibited Person*", including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224, Grantor further covenants and agrees to deliver (from time to time) to Lender any such certification or other evidence as may be requested by Lender in its sole and absolute discretion, confirming that (i) neither Grantor or nor any Obligator is a Prohibited Person and (ii) neither Grantor nor any Obligator has engaged in any business, transaction or dealings with a Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person.

4.06    Attorneys' Fees.  Whenever in any of the Loan Documents Grantor is obligated to pay the legal fees of Grantee's counsel, such fees shall be based upon  reasonable attorneys' fees of fifteen percent (15%) of the outstanding principal and interest.

4.07    First Security Deed.  This Deed is subject and subordinate to that certain Deed to Secure Debt and Security Agreement (hereinafter referred to as the "First Security Deed") dated December 29, 2006, recorded in Deed Book 14454, Page 2238, Records of Cobb County, Georgia, from Borrower to **Mortgage Electronic Registration Systems, Inc.,** solely as nominee for **First National Bank of Arizona** (hereinafter referred to as "Prior Lender") to secure that certain Promissory Note dated December 29, 2006 from Borrower to Prior Lender in the principal face amount of $150,000.00. Borrower hereby expressly agrees that any default under the First Security Deed shall constitute and be deemed to be a Default under this Instrument.  Lender shall have the right, but not the obligation, to pay any sums or to take any action which Lender deems necessary or advisable to cure any alleged default under the First Security Deed, and such payment or such action is hereby authorized by Borrower, and any sum shall be secured herby and shall be immediately due and payable by Borrower to Lender. Borrower hereby transfers and assigns to Lender any excess proceeds arising from any foreclosure or sale power pursuant to the First Security Deed or any instrument evidencing the indebtedness secured thereby, and Borrower hereby authorizes and directs the holder or holders of the First Security Deed to pay such excess proceeds directly to lender.  Borrower agrees to deliver immediately to Lender copies of any notices, certificates, requests, demands or other instruments furnished or delivered to or by Borrower under or in any way relating to the First Security Deed.  Borrower hereby agrees not to seek not to obtain additional advances from the holder or holders of the First Security Deed and not to execute or consent to any modification or extension of the First Security Deed without the prior written approval of Lender. Any violation of the foregoing agreements shall constitute a Default hereunder.

20

Deed Book 15625 Pg 3295

IN WITNESS WHEREOF, Grantor has executed this Deed to Secure Debt and Security Agreement under seal as of the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

_____ (SEAL)
KELVIN A. MCDUFFIE

_____
Notary Public
My Commission Expires:  11-16-21

[NOTARY SEAL]

21

Deed Book 15625 Pg 3296

## EXHIBIT "A"

### LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 272, 17TH DISTRICT, 2ND SECTION, COBB COUNTY, GEORGIA BEING LOT 39, CHATEAU WALK - UNIT III AND UNIT IV AS PER PLAT RECORDED IN PLAT BOOK 147, PAGE 84, COBB COUNTY, GEORGIA RECORDS WHICH PLAT IS HEREBY REFERRED TO AND MADE A PART OF THIS DESCRIPTION AND BEING KNOWN AS 6016 BORDEAU WALK ACCORDING TO THE PRESENT SYSTEM OF NUMBERING RESIDENCES IN COBB COUNTY, GEORGIA.

Deed Book 15625 Pg 3297
Rebecca Keaton
Clerk of Superior Court Cobb Cty. Ga.

## EXHIBIT "B"

## PERMITTED ENCUMBRANCES

1. All taxes for the year 2019, a lien not yet due and payable.
2. All matters shown on that certain plat recorded in Plat Book 147, Page 84, COBB County, GA Records.
3. Building line of 20 feet as shown on the recorded plat.
4. Recorded plat shows a 100-year Retention Pool along the rear portion of captioned property.
5. Security Deed from Kelvin A. McDuffie to Mortgage Electronic Registration Systems, Inc., solely as nominee for First National Bank of Arizona, dated 12/29/2006, filed for record on 12/20/2007, and recorded in Deed Book 14454, Page 2238, COBB County, GA Records, as last transferred to HSBC Bank USA by assignment recorded in Deed Book 15077, Page 2808, COBB County, GA Records, conveying captioned property to secure $150,000.00.
6. Restrictions appearing of record in Deed Book 5544, Page 268, COBB County, GA Records, includes mandatory membership in a homeowners association with lien supported assessments (PUD).
7. The exact location of boundary lines, unrecorded easements, possible encroachments and other fact or conditions which would be disclosed by an accurate survey and inspection of the property; and rights, if any, of persons who may be in possession under claims not appearing of record.

Exhibit 06

# FIRST HORIZON™
**P.O. BOX 84**
**MEMPHIS, TN  38101**

| SMALL BUSINESS CHECKING |
| --- |

| CUSTOMER INFORMATION | |
| --- | --- |
| **ACCOUNT NUMBER** | ████9234 |
| **STATEMENT DATE** | 08/31/23 |

**Return Service Requested**

████████████████████003 E

BINANAT CAPITAL LLC
PO BOX 1909
PONTE VEDRA BEACH FL 32004-1909

| CUSTOMER SERVICE INFORMATION |
| --- |
| 📱 **Customer Service: 1-888-382-4968** |
| 💻 **Visit Us Online:  www.firsthorizon.com** |
| f **Follow Us On Facebook!** |
| t **Follow Us On Twitter!** |

| ACCOUNT SUMMARY | DATE | BALANCE OF YOUR FUNDS |
| --- | --- | --- |
| PREVIOUS BALANCE | 07/31/23 | $1,011.06 |
| 1 DEPOSIT TOTALING | | $41,641.67 |
| 1 WITHDRAWAL TOTALING | | $15.00 |
| NEW BALANCE | 08/31/23 | $42,637.73 |

## CHECKING ACCOUNT TRANSACTIONS

**FOR THE PERIOD FROM 08/01/23 THROUGH 08/31/23**

| ACCOUNT HISTORY | | | | |
| --- | --- | --- | --- | --- |
| **DATE** | **DESCRIPTION** | **DEPOSIT** | **WITHDRAWAL** | **CARD #** |
| 08/04 | WIRE IN █████7329 CAMPBELL &AMP;AMP; | $41,641.67 | | |
| 08/04 | WIRE TRANSFER FEE | | $15.00 | |

| CHECKING ACCOUNT MONTHLY SUMMARY | |
| --- | --- |
| AVERAGE LEDGER BALANCE: | $38,609.34 |
| DEPOSITS: | 1 |
| ITEMS DEPOSITED: | 0 |
| WITHDRAWALS: | 1 |
| TRANSACTIONS COUNTED TOWARD LIMIT: | 2 |
| TRANSACTIONS IN EXCESS OF 00000 @ $0.00 each | $0.00 |
| | |
| CURRENCY DEPOSITED | $0.00 |
| CURRENCY DEPOSITED IN EXCESS OF $0.00 (EACH $0.00 @ $0.00 ) | $0.00 |

| DAILY BALANCE SUMMARY | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **DATE** | **BALANCE** | **DATE** | **BALANCE** | **DATE** | **BALANCE** | **DATE** | **BALANCE** |
| 08/04 | $42,637.73 | | | | | | |

Member FDIC

Exhibit 06

# EASY CHECKBOOK BALANCING

| CHECK NUMBER | CHECK AMOUNT | CHECK NUMBER | CHECK AMOUNT | CHECK NUMBER | CHECK AMOUNT | CHECK NUMBER | CHECK AMOUNT | CHECK NUMBER | CHECK AMOUNT |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| **TOTAL OUTSTANDING CHECKS** | | | | | | | | | |

**STEP 1** Update your check register by entering all deposits and withdrawals which appear on this statement, but have not yet been entered into your check register. Be sure to include any service charges, finance charges, or interest credited to your checking account shown on the front of this statement.

**STEP 2** Mark off ( ✓ ) all deposits and withdrawals appearing on this statement in your check register. List any outstanding checks and withdrawals in the space provided above.

**STEP 3** Enter your check register balance. $ _____

**STEP 4** Adjust the balance reported on this statement to match your records.

a. BALANCE OF YOUR FUNDS reported on this statement.*  $ _____

b. ADD the total of any deposits appearing in your check register but not shown on this statement.  + _____

c. SUBTOTAL  $ _____

d. SUBTRACT the total of any outstanding checks or withdrawals posted in your check register but not shown on this statement.  - _____

e. The result is your current balance and should equal the amount in your check register.*  $ _____

* HINTS FOR CUSTOMERS WITH FIRST BANKING RESERVE. If this statement shows that your First Banking Reserve line is in use, you may find it helpful to enter your AVAILABLE RESERVE as shown on the front of this statement instead of the BALANCE OF YOUR FUNDS in step 4a. The result you obtain in step 4a will then be your current Available Reserve. You can then subtract this amount from your APPROVED RESERVE to obtain the current amount of First Banking Reserve in Use which should equal the amount in your check register.

## FIRST BANKING RESERVE NOTICE

1. When your First Banking Reserve is in use, Payments (Deposits) and other credits will be applied in the following order (1) to any negative balance, (2) to unpaid INTEREST CHARGE from a previous cycle, (3) to your "First Banking Reserve in Use," (4) to increase the "Balance of Your Funds."

2. The INTEREST CHARGE is computed by multiplying a Monthly Periodic Rate by the "Average Daily First Banking Reserve in Use Subject to INTEREST CHARGE." The Monthly Periodic Rate and ANNUAL PERCENTAGE RATE are subject to change. Your ANNUAL PERCENTAGE RATE for the cycle will be determined by multiplying your Monthly Periodic Rate by 12. If an INTEREST CHARGE is imposed on First Banking Reserve, an increase in your periodic rate and corresponding ANNUAL PERCENTAGE RATE

will result in an increase in that INTEREST CHARGE, and if your new balance exceeds $50 it will result in an increase in your minimum payment.

3. The "Average Daily First Banking Reserve in Use Subject to INTEREST CHARGE" for the cycle is calculated by adding the amount of "Reserve In Use" at the close of each day in the cycle, less any unpaid INTEREST CHARGE from a previous cycle and dividing this result by the number of days in the cycle. Any disputed amounts being investigated pursuant to the provisions of Paragraph N of Section II of the Overdraft Services Agreement are excluded in calculating the "Average Daily First Banking Reserve in Use Subject to INTEREST CHARGE."

## BILLING RIGHTS SUMMARY

IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR FIRST BANKING RESERVE BILL

If you think your First Banking Reserve Bill is wrong, or if you need more information about a transaction on your bill, write us at the address shown on your bill as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter give us the following information:
• Your name and account number • The dollar amount of suspected error • Describe the error and explain if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

## SAVINGS TRANSACTION RECORD

### INSTRUCTIONS

1. The space at the right is provided for you to enter all deposits and withdrawals made during the next interest period.
2. Keep all deposits and withdrawal receipts so you may compare them with the next statement.
3. A statement covering the next interest period will be mailed to you at the end of that period.
4. **PLEASE NOTIFY BANK PROMPTLY OF ANY CHANGE OF ADDRESS.**

PLEASE USE THIS FORM TO RECORD TRANSACTIONS FOR NEXT PERIOD

| BALANCE SHOWN ON STATEMENT ⟶ | | | |
|---|---|---|---|
| DATE | WITHDRAWALS | DEPOSITS | BALANCE |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Exhibit 06

**FIRST HORIZON**
P.O. BOX 84
MEMPHIS, TN  38101

**SMALL BUSINESS CHECKING**

| CUSTOMER INFORMATION | |
|---|---|
| ACCOUNT NUMBER | **********9234 |
| STATEMENT DATE | 08/31/23 |

BINANAT CAPITAL LLC

| INQUIRY INFORMATION |
|---|
| *ALL INQUIRIES FOR BALANCES, GENERAL INFORMATION, ACCOUNT ERRORS, ACCOUNT ACTIVITY, AUTOMATED TELLER MACHINE ACTIVITY AND DEBIT CARD TRANSACTIONS SHOULD BE DIRECTED TO 1-888-382-4968. <br> *TO REPORT A LOST/STOLEN DEBIT CARD: CALL 1-888-382-4968 IMMEDIATELY AND FOLLOW THE VOICE PROMPTS. <br> *DIRECT INQUIRIES CONCERNING PREAUTHORIZED ELECTRONIC FUNDS TRANSFER TO 1-888-382-4968. <br> *YOU MAY MAIL INQUIRIES CONCERNING AUTOMATED TELLER MACHINE ACTIVITY, DEBIT CARD TRANSACTIONS, AND PREAUTHORIZED ELECTRONIC FUNDS TRANSFERS TO: <br> FIRST HORIZON BANK <br> P.O. BOX 84 <br> MEMPHIS, TN  38101 |

Member
FDIC

BOOK **4162** PAGE **76**

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA

2017 MAY -3 P 1:04

BY_____
MARCIA L. NORRIS, CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

**NOTE TO TAX COMMISSIONER: THIS DEED SECURES A NOTE IN THE AMOUNT OF $155,000.00 PAYABLE ON AUGUST 31, 2017, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS INDENTURE (hereinafter sometimes referred to as the "*Security Deed*" or "**Deed to Secure Debt and Security Agreement**"), made as of the 23rd day of February, 2017, by and between **CRESCENT CONSTRUCTION COMPANY, INC.,** (hereinafter called "*Grantor*"), with an address of 42589 Voormeade Terrace, Chantilly, Virginia 20152, and **BINANAT CAPITAL, LLC,** a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

W I T N E S S E T H:

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "*Property*"):

(a)    All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "*Land*");

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

BOOK **4 1 6 2** PAGE ... **2 0 8**

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA

2017 MAY -3  P 1: 05

BY
MARCIA L. NORRIS, CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

**NOTE TO TAX COMMISSIONER: THIS DEED SECURES A NOTE IN THE AMOUNT OF $155,000.00 PAYABLE ON AUGUST 31, 2017, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

### DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS INDENTURE (hereinafter sometimes referred to as the "*Security Deed*" or "**Deed to Secure Debt and Security Agreement**"), made as of the 23rd day of February, 2017, by and between **CRESCENT CONSTRUCTION COMPANY, INC.,** (hereinafter called "*Grantor*"), with an address of 42589 Voormeade Terrace, Chantilly, Virginia 20152, and **BINANAT CAPITAL, LLC,** a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

W I T N E S S E T H :

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "*Property*"):

(a)    All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "*Land*");

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

BOOK **4162** PAGE **186**

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA

2017 MAY -3 P 1: 04

BY
MARCIA L. NORRIS, CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

**NOTE TO TAX COMMISSIONER: THIS DEED SECURES A NOTE IN THE AMOUNT OF $162,500.00 PAYABLE ON AUGUST 31, 2017, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

### DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS INDENTURE (hereinafter sometimes referred to as the "*Security Deed*" or "**Deed to Secure Debt and Security Agreement**"), made as of the 23rd day of February, 2017, by and between **CRESCENT CONSTRUCTION COMPANY, INC.**, (hereinafter called "*Grantor*"), with an address of 42589 Voormeade Terrace, Chantilly, Virginia 20152, and **BINANAT CAPITAL, LLC**, a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

WITNESSETH:

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "*Property*"):

(a)    All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "*Land*");

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

BOOK **4162** PAGE **164**

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA

2017 MAY -3 P 1: 04

BY
MARCIA L. NORRIS. CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

<u>NOTE TO TAX COMMISSIONER</u>**: THIS DEED SECURES A NOTE IN THE AMOUNT OF $156,000.00 PAYABLE ON AUGUST 31, 2017, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

<u>**DEED TO SECURE DEBT AND SECURITY AGREEMENT**</u>

THIS INDENTURE (hereinafter sometimes referred to as the "***Security Deed***" or "**Deed to Secure Debt and Security Agreement**"), made as of the 23rd day of February, 2017, by and between **CRESCENT CONSTRUCTION COMPANY, INC.,** (hereinafter called "*Grantor*"), with an address of 42589 Voormeade Terrace, Chantilly, Virginia 20152, and **BINANAT CAPITAL, LLC,** a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

W I T N E S S E T H :

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "***Property***"):

(a)    All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "***Land***");

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

BOOK **4162** PAGE **142**

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA

2017 MAY -3 P 1: 04

BY_____
MARCIA L. NORRIS, CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

**NOTE TO TAX COMMISSIONER: THIS DEED SECURES A NOTE IN THE AMOUNT OF $155,000.00 PAYABLE ON AUGUST 31, 2017, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

**DEED TO SECURE DEBT AND SECURITY AGREEMENT**

THIS INDENTURE (hereinafter sometimes referred to as the "*Security Deed*" or "**Deed to Secure Debt and Security Agreement**"), made as of the 23rd day of February, 2017, by and between **CRESCENT CONSTRUCTION COMPANY, INC.,** (hereinafter called "*Grantor*"), with an address of 42589 Voormeade Terrace, Chantilly, Virginia 20152, and **BINANAT CAPITAL, LLC,** a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

W I T N E S S E T H :

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "*Property*"):

(a)      All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "*Land*");

(b)      All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

BOOK **4162** PAGE **120**

FILED & RECORDED
CLERK. SUPERIOR COURT
SPALDING COUNTY, GA

2017 MAY -3 P 1: 04

BY
MARCIA L. NORRIS. CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

**NOTE TO TAX COMMISSIONER: THIS DEED SECURES A NOTE IN THE AMOUNT OF $155,000.00 PAYABLE ON AUGUST 31, 2017, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

## DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS INDENTURE (hereinafter sometimes referred to as the "*Security Deed*" or "**Deed to Secure Debt and Security Agreement**"), made as of the 23rd day of February, 2017, by and between **CRESCENT CONSTRUCTION COMPANY, INC.,** (hereinafter called "*Grantor*"), with an address of 42589 Voormeade Terrace, Chantilly, Virginia 20152, and **BINANAT CAPITAL, LLC,** a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

W I T N E S S E T H :

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "*Property*"):

(a)    All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "*Land*");

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

eFiled & eRecorded
DATE: 2/5/2021
TIME: 4:13 PM
DEED BOOK: 04696
PAGE: 00076 - 00079
RECORDING FEES: $25.00
TRANSFER TAX: $0.00
PARTICIPANT ID: 2209073924
CLERK: Debbie L. Brooks
Spalding County, GA
PT61: 126-2021-000424

After recording return to:                                     Please Cross Reference:
Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE, Suite 850                  Deed to Secure Debt & Security Agreement
Atlanta, Georgia 30342                                        at Deed Book 4162 Page 76,
                                                             Deed Book 4162, Page 208,
                                                             Deed Book 4162, Page 186,
                                                             Deed Book 4162, Page 164,
                                                             Deed Book 4162, Page 142,
                                                             Deed Book 4162, Page 120,
                                                           Spalding County, Georgia Records

Tax Parcel ID:  229 03009; 229 03010; 229 03011;
229 03012; 229 03013; 229 03014

STATE OF GEORGIA:
COUNTY OF FULTON:

## DEED UNDER POWER OF SALE

THIS INDENTURE, made and entered into as of the 2nd day of February 2021, by and between CRESCENT CONSTRUCTION COMPANY, INC., a Georgia corporation (hereinafter referred to as "Borrower"), acting through BINANAT CAPITAL, LLC, a Georgia limited liability company, as Borrower's duly appointed agent and attorney-in-fact (hereinafter referred to as "Lender"), as party of the first part, and BINANAT CAPITAL, LLC, a Georgia limited liability company (hereinafter referred to as "Purchaser") as party of the second part;

## WITNESSETH:

WHEREAS, Borrower executed and delivered to Lender those certain Deeds to Secure Debt and Security Agreements being dated February 23, 2017, filed and recorded May 3, 2017 in Deed Book 4162, Page 76 for Lot 9; Deed Book 4162, Page 208 for Lot 10; Deed Book 4162, Page 186 for Lot 11; Deed Book 4162, Page 164 for Lot 12; Deed Book 4162, Page 142 for Lot 13; and Deed Book 4162, Page 120 for Lot 14, records of Spalding County Superior Court Clerk (collectively, the "Security Deeds"), to secure a Promissory Notes in the original principal amounts of $155,000.00 for Lot 9; $155,000.00 for Lot 10; $162,500.00 for Lot 11; $156,000.00 for Lot 12; $155,000.00 for Lot 13; and $155,000.00 for Lot 14 (collectively, the "Notes"), together with interest from the date thereof at the rate stated in said Notes on the unpaid balance until paid, there will be sold by the undersigned at public outcry to the highest bidder for cash before the court house door at Spalding County, Georgia, within the legal hours of sale on Tuesday, February 2, 2020, the property described on Exhibit A (the "Property"); and

1

eFiled & eRecorded
DATE: 2/5/2021
TIME: 4:13 PM
DEED BOOK: 04696
PAGE: 00077

**WHEREAS**, default under the Note occurred and by reason of such default Lender elected, pursuant to the terms of the Security Deed and the Note, to declare the entire principal and interest immediately due and payable; and

**WHEREAS**, the entire indebtedness still being in default, Lender, on behalf of Borrower, and according to the terms of the Security Deed, did advertise said property for sale once a week for four weeks in a newspaper in Spaulding County, Georgia, where the Sheriff carried his advertisement, namely, *The Griffin Daily News*, said dates of publication being January 8, January 15, January 22 and January 29, 2021 and the advertisements in all respects having complied with the requirements of the power of sale in the aforesaid Security Deed and the laws of the State of Georgia governing such sales; and

**WHEREAS**, notice of the Borrower's right to cure said default was given to Borrower, with Borrower failing to cure said default, and notice of the initiation of proceedings to exercise the power of sale provided for in the Security Deed was duly given to Borrower by Lender no later than thirty (30) days prior to the date of foreclosure sale, in writing, and sent by certified mail, return receipt requested, consisting of a copy of the published legal advertisement of the sale and mailed as aforesaid, all in accordance with O.C.G.A. § 44-14-162.2; and

**WHEREAS**, the party of the second part on even date herewith acquired the after-described property by buying the property at a foreclosure sale conducted pursuant to power of sale in that certain Security Deed; and

**WHEREAS**, Lender, as attorney-in-fact for Borrower, did expose said property for sale at public outcry to the highest bidder for cash on Tuesday, February 2, 2021, within the legal hours of sale at the usual place for conducting Sheriff's sales in Spaulding County before the Courthouse door in Griffin, Georgia, in said county, at which said party of the second part was the highest bidder at and for the sum of ONE MILLION, TWO HUNDRED TWO THOUSAND SEVEN HUNDRED and 00/100 Dollars ($1,202,700.00) cash, and said property was then and there knocked off and sold for said sum.

**NOW THEREFORE**, for and in consideration of the foregoing premises and said sum of money and by virtue of the exercise of the power of sale contained in the Security Deed, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs and assigns the property described on **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property").

**TOGETHER WITH**, all and singular the rights, members and appurtenances thereto appertaining; also, all the estate of Borrower's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

**TO HAVE AND TO HOLD** the said Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of said party of the second part, its representatives, heirs, successors, successors-in-title and assigns, IN FEE SIMPLE forever, in as full and ample a manner as Borrower or Borrower's representatives, heirs, successors or assigns did hold and enjoy the same.

**[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]**

2

eFiled & eRecorded
DATE: 2/5/2021
TIME: 4:13 PM
DEED BOOK: 04696
PAGE: 00078

**IN WITNESS WHEREOF**, Lender, acting as attorney-in-fact for Borrower has executed this instrument under seal and delivered same as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
Notary Public
My commission expires

*(NOTARY SEAL)*

**BINANAT CAPITAL, LLC**, a Georgia limited liability company, as Attorney-in-Fact for **CRESCENT CONSTRUCTION COMPANY, INC.**, a Georgia corporation

By: _____ (SEAL)
     Thomas W. Cox, as Attorney for BinaNat
     Capital, LLC

eFiled & eRecorded
DATE: 2/5/2021
TIME: 4:13 PM
DEED BOOK: 04696
PAGE: 00079

## EXHIBIT "A"

### Legal Description

**Lot 9**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 9, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 10**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 10, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 11**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 11, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 12**

All that tract or parcel of land lying and being in Land Lot 203 and Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 12, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 13**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 13, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 14**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 14, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

eFiled & eRecorded
DATE: 2/16/2021
TIME: 2:36 PM
DEED BOOK: 04699
PAGE: 00251 – 00254
RECORDING FEES: $25.00
TRANSFER TAX: $0.00
PARTICIPANT ID: 2209073924
CLERK: Debbie L. Brooks
Spalding County, GA
PT61: 126-2021-500

Tax Parcel ID:    229 03009; 229 03010; 229 03011;
229 03012; 229 03013; 229 03014

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

STATE OF GEORGIA
COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 16th day of February, 2021, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

## W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as Lots 9-14 Hunts Mill Subdivision, and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"), SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

eFiled & eRecorded
DATE: 2/16/2021
TIME: 2:36 PM
DEED BOOK: 04699
PAGE: 00252

This is the same property conveyed to Grantor by Deed Under Power of Sale dated February 2, 2021 and recorded February 5, 2021 in the deed records of Spalding County Superior Court in Deed Book 4696 at Pages 76-79.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

Exhibit 09

eFiled & eRecorded
DATE: 2/16/2021
TIME: 2:36 PM
DEED BOOK: 04699
PAGE: 00253

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this 16th day of   BINANAT CAPITAL, LLC,
February, 2021, in the presence of:              a Georgia limited liability company

_____      By: _____ (SEAL)
Unofficial Witness                        Robert Storm, its President

_____
Notary Public, State of Georgia at Large

My commission expires:

*MENDENFREEMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

Exhibit 09

eFiled & eRecorded
DATE: 2/16/2021
TIME: 2:36 PM
DEED BOOK: 04699
PAGE: 00254

## EXHIBIT "A"

**Lot 9**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding,  County, Georgia, being Lot 9, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 10**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding,  County, Georgia, being Lot 10, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 11**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding,  County, Georgia, being Lot 11, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 12**

All that tract or parcel of land lying and being in Land Lot 203 and Land Lot 204 of the 2nd District, Spalding,  County, Georgia, being Lot 12, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 13**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding,  County, Georgia, being Lot 13, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

**Lot 14**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding,  County, Georgia, being Lot 14, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

BOOK **4294** PAGE **198**
FILED & RECORDED CLERK
SUPERIOR/JUVENILE CT.
PIKE COUNTY GA 30295

2018 JUN -5 AM 10: 34

BY: _____
CAROLYN WILLIAMS, CLERK

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA.

2018 JUN 13 A 11: 52

BY: _____
DEBBIE L. BROOKS, CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

<u>NOTE TO TAX COMMISSIONER</u>: THIS DEED SECURES A NOTE IN THE AMOUNT OF $181,850.00 PAYABLE ON NOVEMBER 30, 2018, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.

<u>**DEED TO SECURE DEBT AND SECURITY AGREEMENT**</u>

THIS INDENTURE (hereinafter sometimes referred to as the "*Security Deed*" or "*Deed to Secure Debt and Security Agreement*"), made as of the 24th day of May, 2018, by and between **ARINAT HOLDINGS, LLC**, a Georgia limited liability company (hereinafter called "*Grantor*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, Florida 32082, and **BINANAT CAPITAL, LLC**, a Georgia limited liability company (hereinafter called "*Grantee*"), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

W I T N E S S E T H :

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the "*Property*"):

(a)    All that certain tract or parcel of land more particularly described in **Exhibit "A"** attached hereto and by this reference made a part hereof (hereinafter referred to as the "*Land*");

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

BOOK **4294** PAGE **199**

and appurtenances, window screens, awnings and storm sashes owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, building supplies and materials, books and records, chattels, inventory, accounts, consumer goods, general intangibles and personal property of every kind and nature whatsoever owned by Grantor and now or hereafter located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land and the improvements located from time to time thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions or proceeds from a permitted sale of any of the foregoing, all tradenames, trademarks, servicemarks, logos, and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land and the improvements located thereon or any part thereof and are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Security Deed. The location of the above-described collateral is also the location of the Land;

(c)    All building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of, or in connection with, construction of the buildings and improvements upon the Land and which are now or hereafter owned by Grantor;

(d)    All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof or appurtenant to the title to the Land, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor;

(e)    All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor in and to the same; reserving only the right to Grantor to collect the same so long as an Event of Default has not occurred hereunder;

(f)    All permits, licenses, franchises, certificates, development rights, commitments and rights for utilities, and other rights and privileges obtained in connection with the Land and Improvements;

(g)    All oil, gas and other hydrocarbons and other minerals produced from or allocated to the Land and all products processed or obtained therefrom, and the proceeds thereof;

(h)    All site plans, drawings, plans, specifications, and studies prepared by all architects, all reports, surveys, and studies made by all engineers, and all other plans, soil test, reports, specifications, engineering plans and reports, and any other architectural or engineering data used or useful in connection with the construction of the Improvements (hereinafter collectively referred to as the "***Plans and Specifications***");

(i)    All building permits, service agreements, or other such permits and/or approvals required to construct the Improvements in accordance with the Plans and Specifications, including without limitation permits, approvals, licenses, or authorizations issued by any governmental agency or any other

2

BOOK **4294** PAGE  **200**

person in connection with the construction, operation, or maintenance of the Land, the Improvements, the Contracts, or the Plans and Specifications, including, without limitation, all of Borrower's rights and interests under all zoning variances, use permits, plat approvals, building permits, development permits, sewer-tap permits, and other utility permits or governmental approvals issued in connection with the Land or Improvements;

(j)    The numerous agreements, instruments, cross easements, reciprocal easements contracts, declarations of easements and restrictive covenants and all right, title, interest, privileges and obligations as "*Declarant*" thereunder, all declarant rights and rights of control for any home owners association, community association, or otherwise, development agreements, or otherwise incident to the Land and Improvements, whether now existing or hereafter created and as approved by Lender in its sole discretion (collectively the "*Development Documents*"); and

(k)    All products and/or proceeds of any of the foregoing, including without limitation, insurance proceeds.

TOGETHER WITH all and singular the rights, tenements, hereditaments, members and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the Property hereinabove mentioned or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor, including but not limited to, all rents, profits, issues and revenues of the Property from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving only the right to Grantor to collect the same for its own account so long as Grantor is not in default hereunder.

TO HAVE AND TO HOLD the property and all parts, rights, members and appurtenances thereof unto Grantee, its respective successors and assigns, to its or their own use IN FEE SIMPLE forever.

AND Grantor covenants that Grantor is lawfully seized and possessed of the Property and has good right to convey the same as aforesaid, that the Property and every part thereof are unencumbered except for those matters (hereinafter referred to as the "*Permitted Encumbrances*") expressly set forth in **Exhibit "B"** attached hereto and by this reference made a part hereof, and that Grantor does warrant and will forever defend the title to the Property and every part thereof against the claims of all persons and entities whomsoever, except as to the Permitted Encumbrances.

This Security Deed is intended (i) to constitute a security agreement for purposes of the Uniform Commercial Code of Georgia and (ii) to operate and is to be construed as a deed passing title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the "*Secured Indebtedness*"):

(a)    The debt evidenced by that certain Promissory Note dated of even date herewith, made by **ARINAT HOLDINGS, LLC** ("*Maker*"), payable to the order of Grantee, in the principal face amount of  **One Hundred Eighty-One Thousand Eight Hundred Fifty and No/100 Dollars ($181,850.00)**, together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced thereby, or any replacement note or notes that may be substituted for said Promissory Note after the date hereof (collectively hereinafter referred to as the "*Note*", with interest on the outstanding principal at the rates provided for in the Note, with the final payment being due not later than November 30, 2018; and

(b)    Any and all additional advances made by Grantee to protect or preserve the Property or the security interest created hereby in the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's or Maker's obligations hereunder or for any

3

BOOK 4294 PAGE 201

other purpose provided herein (whether or not the original Grantor remains the owner of the Property at the time of such advances); and

(c)     Any and all costs, expenses, charges, liabilities, commissions and attorneys' fees now or hereafter chargeable to or incurred by, or disbursed by, Grantee as provided for herein, or by applicable law; and

(d)     Any and all other indebtedness now or hereafter owing by Grantor or Maker to Grantee under the Loan Documents, as hereinbelow defined.

The Note, this Security Deed, and all documents, instruments, deeds, mortgages and agreements now or hereafter evidencing, securing or otherwise relating to the Note, this Security Deed, or the Secured Indebtedness, together with any and all renewals, modifications, consolidations and extensions thereof, are collectively hereinafter referred to as the "*Loan Documents*."

The parties hereto further expressly agree that should all monies advanced to the Grantor herein pursuant to the note be totally repaid and the balance owing to the Grantee be reduced to zero at any time or from time to time, this Deed to Secure Debt shall not become null and void by operation of law or otherwise but shall remain in full force and effect and shall retain its priority position of record relative to any and all advances from Grantee to Grantor.  Grantor and Grantee herein intend by this conveyance to establish a perpetual or indefinite security interest in the real property conveyed herein, with this statement being made pursuant to the provision of O.C.G.A. § 44-14-80(a)(2).

PROVIDED ALWAYS, that should the Secured Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, then this Security Deed shall be canceled and surrendered, but otherwise shall remain in full force and effect.

AND GRANTOR HEREBY further covenants and agrees with Grantee as follows:

### ARTICLE 1

1.01    <u>Payment of Indebtedness and Performance of Obligations</u>.  Grantor will pay the Secured Indebtedness according to the tenor thereof promptly as the same shall become due, and shall perform every obligation of Grantor contained in this Security Deed, and in each and every instrument now or hereafter evidencing or securing the Secured Indebtedness, and in other Loan Documents.

1.02    <u>Monthly Deposits</u>.  To secure further the payment of the taxes and assessments referred to in Section 1.03 below, and the payment of premiums on the insurance policies referred to in Section 1.04 below, Grantee, at its option, shall have the right to require Grantor to deposit with Grantee on the first day of each and every month a sum which, in the reasonable estimation of Grantee, shall be equal to one-twelfth of the annual taxes and assessments and one-twelfth of such annual insurance premiums; said deposits to be held by Grantee, free of interest, and free of any liens or claims on the part of creditors of Grantor and as part of the security of Grantee, and to be used by Grantee to pay current taxes, assessments and insurance premiums on the Property as the same accrue and are payable.  Said deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Grantee.  If said deposits are insufficient to pay the taxes, assessments and insurance premiums in full as the same become payable, Grantor shall deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay such taxes, assessments and insurance premiums in full.  Upon any Event of Default hereunder or under the Note, Grantee may, at its option, apply any money in the fund resulting from said deposits to the payment of the Secured Indebtedness in such manner as Grantee may elect.

4

BOOK **4294** PAGE **202**

1.03    Taxes, Liens and Other Charges.

(a)    In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to affect adversely Grantee, Grantor shall promptly pay any such tax relating to this Security Deed, the Property or the Note; if Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment, then the entire balance of the principal sum secured by this indenture and all interest accrued thereon shall, thirty (30) days after written notice, become due and payable at the option of Grantee. Nothing herein shall impose upon Grantor the obligation to pay any state or federal income taxes, corporate franchise taxes or net worth taxes assessed or levied against Grantee.

(b)    Grantor shall pay (to the extent the same are not paid from escrowed funds provided for in Section 1.02 hereof), before the same become delinquent, all taxes, liens, assessments and charges of every character already levied or assessed or that may hereafter be levied or assessed upon or against the Property and all utility charges for the Property, whether public or private; and upon demand shall furnish Grantee receipted bills evidencing such payment.

(c)    Grantor shall not suffer any mechanic's, materialmen's, laborer's, statutory or other lien to remain outstanding upon any part of the Property.

(d)    Notwithstanding the provisions of Subsection 1.03(a), 1.03(b) or 1.03(c) hereinabove to the contrary, Grantor may contest the validity and/or amount of any taxes, assessments or other charges referred to in said subsections at Grantor's sole cost and expense and shall not be required to pay or discharge any obligation imposed upon Grantor in any of said subsections so long as (i) Grantor shall in good faith contest the same by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon and the sale, levy or forfeiture of or upon all or any part of the Property to satisfy the same, and (ii) at Grantee's request, Grantor shall deposit in escrow with a title insurance company acceptable to Grantee, or provide other security reasonably satisfactory to Grantee, an amount equal to the amount being contested plus a reasonable additional sum to cover possible costs, interest and penalties.

1.04    Insurance.    Grantor shall keep or cause others to keep all buildings and improvements, whether now standing on the Property or hereafter erected, continuously insured against loss or damage by fire, by the perils covered by extended coverage insurance, by builder's risk insurance, by loss of rents or business interruption insurance and by malicious mischief and against such other hazards as Grantee, in its reasonable discretion, shall from time to time require, for the benefit of Grantee; all such insurance at all times shall be in an insurance company or companies in the amount of the full replacement cost of each such insured item and with terms acceptable to Grantee, with loss, if any, payable to Grantee as its interest may appear, pursuant to a non-contributory mortgagee clause which shall be satisfactory to Grantee; and forthwith upon the issuance of such policies Grantor shall deliver to Grantee receipts for the premiums paid thereon. In the event of the foreclosure of this Deed or any other transfer of title to the Property in extinguishment or partial extinguishment of the Secured Indebtedness, all right, title and interest of Grantor in and to all insurance policies then in force shall pass to the purchaser or to Grantee, as the case may be, and Grantee is hereby irrevocably appointed by Grantor as attorney-in-fact for Grantor to assign any such policy to said purchaser or to Grantee, as the case may be, without accounting to Grantor for any unearned premiums thereon. At least thirty (30) days prior to the expiration date of each policy of insurance maintained pursuant to this Section 1.04, a renewal or replacement thereof satisfactory to Grantee shall be delivered to Grantee. Provided no Event of Default, as defined in Article 2 of this Security Deed, shall have occurred and be continuing hereunder, Grantor

5

BOOK **4294** PAGE **203**

shall be authorized and empowered to adjust or compromise any loss under any insurance policies on the Property, subject to Grantee's approval of the terms of any adjustment or compromise, such approval not to be unreasonably withheld. In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt, the Note or any Loan Document and Security Agreement, then Grantee is hereby authorized and empowered, at its option, to adjust or compromise any such loss under any insurance policies on the Property. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee, instead of to Grantor or to Grantor and Grantee jointly. In the event any insurance company fails to disburse directly and solely to Grantee but disburses to Grantor or to Grantor and Grantee jointly, Grantor agrees to immediately endorse and transfer such proceeds to Grantee. In case of loss under any such policy of insurance, Grantee may, at its option, make all or any portion of the net proceeds available to Grantor for the purpose of restoration or repair of the Property or may apply the net proceeds or any portion thereof to the payment of the indebtedness hereby secured, whether due or not.

    1.05    <u>Care of the Property</u>.

        (a)    Grantor shall keep the improvements now or hereafter erected on the Property in good condition and repair, shall not commit or suffer any waste and shall not do or suffer to be done anything (other than construction, ownership, operation, maintenance and repair or renovation of improvements) which shall increase the risk of fire or other hazard to the Property or any part thereof.

        (b)    Grantor shall not remove or demolish nor alter the design or structural character of any building (now or hereafter erected) or other part of the Property without the prior written consent of Grantee.

        (c)    If the Property or any part thereof is damaged by fire or any other cause, Grantor shall give prompt written notice of the same to Grantee.

        (d)    Grantee or its representative is hereby authorized upon notice reasonable under the circumstances to enter upon and inspect the Property at any time during normal business hours, subject to the rights of tenants therein.

        (e)    Grantor shall promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Property or any part thereof. If Grantor receives notice from any federal, state or other governmental entity that the Property fails to comply with any applicable law, ordinance, rule, order or regulation, Grantor will promptly furnish a copy of such notice to Grantee.

        (f)    If all or any part of the Property shall be damaged by fire or other casualty, Grantor shall, upon request of Grantee, promptly restore or cause to be restored the Property, or any portion thereof specified by Grantee, to the equivalent of its condition immediately prior to such damage, and if a part of the Property shall be damaged through condemnation (which damage does not result in acceleration of the indebtedness secured hereby by Grantee, as provided in Section 1.12 below), Grantor shall, upon request of Grantee, promptly restore, repair or alter the remaining part of the Property in a manner reasonably satisfactory to Grantee. In the event Grantor is required pursuant to the provisions contained herein to restore, repair or alter the Property after fire, other casualty or condemnation, Grantee agrees that it shall make any net insurance proceeds or condemnation proceeds available to Grantor, pursuant to procedures satisfactory to Grantee, for the purpose of paying the cost of such restoration, repair or alteration.

    1.06    <u>Further Assurances</u>. At any time, and from time to time, upon request by Grantee, Grantor shall make, execute and deliver or cause to be made, executed and delivered, to Grantee, any and all other further instruments, certificates and other documents as may be reasonably necessary in order to

6

BOOK 4294 PAGE 204

effectuate, complete or perfect or to continue and preserve the obligations of Grantor under the Note and the security interest of this Deed to Secure Debt and Security Agreement. Upon any failure of Grantor so to do, Grantee may make, execute and record any and all such instruments, certificates and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as the agent and attorney-in-fact of Grantor so to do. The conveyance of this Deed to Secure Debt and Security Agreement and the security interest created hereby will automatically attach, without further act, to all after-acquired land or other property attached to and/or used in the operation of the Property or any part thereof, except to the extent expressly released by Grantee.

1.07    Leases Affecting the Property.    Grantor shall perform all material covenants to be performed by the landlord under any and all leases now or hereafter on the Property or any part thereof and shall not, without the written consent of Grantee, cancel, surrender or modify any such lease. Grantor shall furnish Grantee signed copies of all leases on the Property or any part thereof promptly after their execution. Grantor shall, by written instrument in form and substance satisfactory to Grantee, assign to Grantee Grantor's interest in each and every lease hereafter entered into by Grantor with respect to all or any part of the Property. The terms "lease" and "leases" as used in this Section 1.07 shall include all tenancies.

1.08    Expenses.    Grantor shall pay or reimburse Grantee for all fees, costs and expenses incurred by Grantee with respect to any and all transactions contemplated herein including, without limiting the generality of the foregoing, all title and conveyancing charges, recording and filing fees, mortgage taxes, intangible personal property taxes, escrow fees, revenue and tax stamp expenses, insurance premiums (including title insurance premiums), brokerage commissions, finder's fees, court costs, surveyors', photographers', appraisers', architects', engineers', accountants' and attorneys' fees and disbursements, and will reimburse to Grantee all of the foregoing expenses paid by Grantee which have been or may be incurred by Grantee with respect to any or all of the transactions contemplated herein. In addition to the foregoing, if any action or proceeding be commenced (including but not limited to any action to foreclose this Security Deed or to collect the Secured Indebtedness), to which action or proceeding Grantee is made a party, or in which it becomes necessary to defend or uphold the lien of this Security Deed, or in which Grantee is served with any legal process, discovery notice or subpoena relating to Grantee's lending to Grantor or accepting a guaranty from a guarantor of the Secured Indebtedness, Grantor will reimburse to Grantee all of the foregoing expenses (including, without limitation, the cost of any environmental audit) which have been or may be incurred by Grantee with respect to the foregoing. All sums paid by Grantee for the expense of any litigation to prosecute or defend the rights and lien created by this Security Deed or to appear or to take action in response to any such legal process, discovery notice or subpoena (including attorneys' fees and disbursements) shall be paid by Grantor, upon demand by Grantee, and any such sum shall be a lien on the Property, prior to any right, or title to, interest in or claim upon the Property attaching or accruing subsequent to the lien of this Security Deed, and shall be deemed to be secured by this Security Deed. In any action or proceeding to foreclose this Security Deed, or to recover or collect the Secured Indebtedness, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

1.09    Estoppel Affidavits.    Grantor shall, upon ten (10) days prior written notice, furnish Grantee a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not, to the best knowledge of Grantor, any off-sets or defenses exist against such principal and interest, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

1.10    Subrogation.    Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Secured Indebtedness secured hereby,

7

BOOK **4294** PAGE **205**

notwithstanding that any instrument providing public notice of same shall be satisfied and canceled of record.

1.11    <u>Performance by Grantee of Defaults by Grantor.</u>  If Grantor shall fail to pay any tax, lien, assessment or charge levied or assessed against the Property, any utility charge, whether public or private, required to be paid hereunder or any insurance premium required to be paid in connection with the procurement of insurance coverage and the delivery of the insurance policies required hereunder, or if Grantor shall fail to perform or observe any covenant, term or condition of any leases affecting all or any part of the Property or any other covenant, condition or term of this Deed to Secure Debt and Security Agreement, then Grantee, at its option, after the giving of any notice and expiration of any cure period provided for herein, may perform or observe the same, and all payments made or costs incurred by Grantee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate of interest under the Note. Notwithstanding the foregoing, with respect to any payments permitted hereunder other than insurance premiums, Grantee shall not make any such payments without first giving Grantor ten (10) calendar days prior written notice of its intention to do so; provided, however, that if Grantee in its good faith judgment determines that its failure so to make any of the payments permitted hereunder prior to the end of such ten (10) calendar day period would adversely affect either the Property or its security interest therein, then in such event Grantee shall have the right to make such payment prior to the end of such ten (10) calendar day period, and any such payment shall be covered by the terms of this Section 1.11.  Grantee shall be the sole judge of the legality, validity and priority of any such tax, lien, assessment, charge, claim, premium and obligation, of the necessity for any such actions, and of the amount necessary to be paid in satisfaction thereof.  Grantee is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof (subject to rights of tenants thereof) upon notice reasonable in the circumstances for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby becoming liable to Grantor or any other person in possession holding under Grantor except to the extent of the gross negligence or willful misconduct of Grantee or its agents and employees.

1.12    <u>Condemnation.</u>  If all or any material part of the Property shall be damaged or taken through condemnation (which term when used in this Deed to Secure Debt and Security Agreement shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), the entire indebtedness secured hereby shall, at the option of Grantee, become immediately due and payable.  Grantee shall be entitled to all compensation, awards and other payments or relief arising from any such condemnation.  If the condemnation shall result in a taking of less than a material portion of the Property, then Grantee, after deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, shall make the net proceeds available to Grantor for the repair and/or restoration of the Property.  Provided no Event of Default shall have occurred and be continuing hereunder, then Grantor shall be authorized, at its option, to commence, appear in and prosecute through counsel selected by Grantor and reasonably acceptable to Grantee, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith, subject to Grantee's approval of the terms of any such settlement or compromise. In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt and Security Agreement or any of the other Loan Documents, then Grantor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Property or any part thereof, will promptly notify Grantee, and Grantee is hereby authorized and empowered, at its option, to commence, appear in, and prosecute any such action or proceeding and to settle or compromise any claim in connection therewith.  All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Grantor to Grantee, who after deducting therefrom all its expenses, including attorney's fees, may release any monies so received by it without affecting the security interest of this Deed to Secure Debt and Security Agreement.  Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as

8

BOOK **4294** PAGE **206**

Grantee may reasonably require. If, prior to the receipt by Grantee of such award or proceeds, the Property shall have been sold on foreclosure of this Security Deed, or by deed in lieu thereof, or under the power of sale herein granted, Grantee shall have the right to receive such award or proceeds to the extent of any unpaid Secured Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Security Deed or the Note shall have been sought or recovered, and to the extent of counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or proceeds. As used herein, a "material" portion of the Property shall mean any portion of the Property such that the condemnation thereof will in the reasonable judgment of Grantee substantially adversely affect the construction or operation of the project contemplated by the Loan Documents for its intended purposes or the rental income therefrom.

    1.13    <u>Security Agreement.</u>

        (a)    With respect to the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, articles of personal property, chattels, chattel paper, documents, inventory, accounts, farm products, consumer goods and general intangibles of Grantor referred to or described in this Deed to Secure Debt and Security Agreement, or in any way connected with the use and enjoyment of the Property, this Deed to Secure Debt and Security Agreement is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Property, in compliance with the provision of the Georgia Uniform Commercial Code. Upon request by Grantee, at any time and from time to time, a financing statement or statements reciting this Deed to Secure Debt and Security Agreement to be a security agreement affecting all of such property shall be executed by Grantor and Grantee and appropriately filed. The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Deed to Secure Debt and Security Agreement shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Grantee's sole election. Grantor and Grantee agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Grantor and Grantee that everything used in connection with the production of income from the Property or adapted for use therein or which is described or reflected in this Deed to Secure Debt and Security Agreement, is, and at all times and for all purposes and in all proceedings, both legal or equitable, shall be, regarded as part of the real estate conveyed hereby regardless of whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Deed to Secure Debt and Security Agreement, or (iii) any such item is referred to or reflected in any such financing statement or statements so filed at any time. Similarly, the mention in any such financing statement or statements of the rights in and to (i) the proceeds of any fire and/or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) Grantee's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Grantee as determined by this Deed to Secure Debt and Security Agreement or affect the priority of Grantee's security interest granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Grantee in the event any court shall at any time hold with respect to the foregoing clauses (i), (ii) or (iii) of this sentence, that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the appropriate Uniform Commercial Code records.

        (b)    Grantor warrants that the location of the collateral is or will be upon the Land (excepting materials intended to be located thereon and stored temporarily off-site). Grantor covenants and agrees with Grantee that Grantor will furnish Grantee with notice of any change in the principal place of business of Grantor within thirty (30) calendar days of the effective date of any change and Grantor

9

will promptly execute any financing statements or other instruments deemed necessary by Grantee to prevent any filed financing statement from becoming misleading or losing its status.

1.14    Construction Materials.   In addition to the interests in and to the Property granted, bargained, sold and conveyed by Grantor to Grantee as set forth hereinabove, Grantor has also granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto Grantee all building materials, equipment and appliances, including without limiting the generality of the foregoing, bricks, mortar, lumber and other items and equipment, which are acquired by Grantor to be placed upon or used in connection with the Property, whether or not such materials are located upon or attached to the Property, and all guaranties and warranties of workmanship or quality relating to said building materials, equipment and appliances, or other personal property and improvements and the construction and installation thereof, and all contract rights, business names and other intangibles of Grantor relating to the construction, equipment and operation of the Property; and all of the items and types of items identified in this Section 1.14 shall also be included within the meaning of the term "*Property*" as used in this instrument.

1.15    Conveyance of the Property.   Grantor hereby acknowledges and confirms that the identity and expertise of Grantor are material circumstances upon which Grantee has relied in connection with the sums advanced herein, and any change in such identity or expertise could materially impair or jeopardize the security afforded to Grantee by this Deed to Secure Debt and Security Agreement for the payment of the principal amount of the Secured Indebtedness.  Accordingly:

(a)    Grantor shall not, without the prior written consent of Grantee, which may be exercised arbitrarily and withheld for any reason or no reason, voluntarily or by operation of law, sell, transfer, lease to one entity in its entirety, convey or assign all or any part of the legal or equitable title to the Property, or any part of, or interest in, the Property.  For purposes hereof, the change or transfer or encumbrance of the legal or equitable ownership of any interest in Grantor, or the change or transfer of any direct or indirect interest in Grantor shall constitute a transfer of the Property.

(b)    Grantor shall not, without the prior written consent of Grantee, voluntarily or by operation of law, mortgage, encumber, transfer, convey or assign the Property, or any part of, or interest in, the Property, as security for an indebtedness other than for the Secured Indebtedness.

Notwithstanding anything provided to the contrary in Section 2.01 hereinbelow, in the event Grantor breaches any term of this Section 1.15, such breach shall entitle Grantee immediately to exercise all rights and remedies provided herein, and Grantor shall not be entitled to any cure period in connection therewith.

1.16    Litigation.   Grantor shall promptly give notice in writing to Grantee of any litigation commenced or threatened affecting the Property.

1.17    Hazardous Materials.   To the best of Grantor's knowledge, the Property (including the land, surface water, ground water and all improvements) is free of the following:

(a)    any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder;

(b)    any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and regulations promulgated thereunder;

(c)    any substance the presence of which on the Property is prohibited by any law similar to those set forth in this Section 1.17;

10

BOOK **4294** PAGE **208**

(d)    any asbestos fire proofing or insulation or other form of building materials or substances which may, if not properly handled, pose a threat to the health of building users and occupants;

(e)    contamination resulting from any oil or petroleum products and their by-products;

(f)    any polychlorinated biphenyls ("*PCBs*"); and

(g)    contamination resulting from any materials which, under federal, state or local law, statute, ordinance or regulations, or court or administrative order or decree, or private agreement (hereinafter referred to collectively as "*Environmental Requirements*") require special handling in collection, storage, treatment or disposal because of toxic, flammable, explosive, corrosive, reactive, or radioactive properties or because of properties that may be hazardous or harmful to the environment or human health [items (a)-(g) are hereinafter referred to collectively as "*Hazardous Materials*"].

Grantor hereby warrants and represents to Grantee that with regard to the Property and all activities on the Property, Grantor has not received any verbal or written notice of, and is unaware of, any violation or any action, judicial or administrative, relating to the violation, of any of the Environmental Requirements. Further, Grantor warrants and represents to Grantee that it has not actually received, and is unaware of, any notice under any of the Environmental Requirements relating to the existence of any contamination or Hazardous Materials on the Property. Further, Grantor warrants and represents to Grantee that it has not spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, and that to the best of Grantor's knowledge, no other person has spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements. Grantor shall not hereafter (i) cause or suffer to occur a release, spillage, leak, uncontrolled loss, seepage or filtration of any Hazardous Materials at, upon or within the Property or any contiguous real estate in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, (ii) engage in any activity, or permit any tenant or occupant of the Property to engage in any activity, that could lead to the imposition of liability on such tenant or occupant or on Grantor or the creation of a lien on the Property, under the Environmental Requirements, except for activities involving chemicals, substances and materials routinely used in the construction of improvements such as the improvements to be constructed on the Land or used in the day-to-day operation, cleaning, maintenance and landscaping of properties such as the Property, including chemicals, substances and materials sold by tenants of the Property in the ordinary course of their business, provided that at all times Grantor shall cause any such chemicals, substances and materials to be used, stored, handled and disposed of in compliance with all applicable Environmental Requirements. If Grantor shall fail to take or cause to be taken any and all actions as may be necessary to comply with all Environmental Requirements, Grantee may make advances or payments towards performance or satisfaction of the same, but shall be under no obligation to do so; and any sums so advanced or paid, including, without limitation, all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation, attorneys' fees, fines or other penalty payments, shall be reimbursed by Grantor to Grantee in accordance with the provisions of Section 1.11 hereinabove. Grantor shall and does hereby agree to indemnify and hold Grantee harmless from and against any and all loss, expense and charge whatsoever, including, without limitation, all court costs and attorneys' fees, arising out of or in connection with any matter or thing relating to Environmental Requirements or Hazardous Materials and arising out of events or circumstances occurring or existing prior to or during the period of Grantor's ownership of the Property, except to the extent directly caused by the gross negligence or willful misconduct of Grantee or its agents,

11

including, without limitation, if Grantee is made a party to any action or suit brought under any of the Environmental Requirements. It is expressly agreed by Grantor that this covenant of indemnification shall survive any payment and satisfaction of the indebtedness evidenced by the Note and secured hereby and the release and satisfaction of this Deed to Secure Debt and Security Agreement and the Loan Documents, and shall continue so long as the risk or potential of any such expense, damage, loss or liability of Grantee exists. Without limiting the generality of the foregoing, the foregoing covenant of indemnification shall inure to the benefit of Grantee, in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property; provided, however, that the foregoing covenant of indemnification shall not extend to any expense, damage or loss arising directly from the acts of Grantee in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property.

1.18    Americans with Disabilities Act. Grantor, at its sole cost and expense, shall promptly and at all times and from time to time comply with all requirements of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., the regulations promulgated in connection therewith, 28 CFR Part 36, and the applicable ADA Accessibility Guidelines. Grantor hereby indemnifies and holds harmless Grantee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges and expenses, of any nature whatsoever suffered or incurred by Grantee, whether as grantee of this Deed to Secure Debt, as mortgagee in possession, or as successor-in-interest to Grantor by foreclosure deed or deed in lieu of foreclosure, in connection with the foregoing provision.

1.19    Liability for Use of Loan Proceeds. Lender will not in any way be liable or responsible by reason of this Deed to Secure Debt, or otherwise, for the payment of any claims growing out of the construction, installation, or operation of any contemplated improvements on the Property of Borrower, or arising from or in connection with any other use of the loan proceeds by Borrower.

ARTICLE 2

2.01    Default. The occurrence of any one or more of the following events shall constitute an "**Event of Default**" by Grantor hereunder:

(a)    Maker or Grantor shall fail to pay in full when due and payable any installment of principal, interest or escrow deposits, as required by the Note, this Deed to Secure Debt and Security Agreement (a "**Monetary Default**"), or otherwise; or

(b)    Grantor fails duly to observe any covenant, condition or agreement of this Deed to Secure Debt and Security Agreement or of any other instrument evidencing or securing the Secured Indebtedness (a "**Non-Monetary Default**"); or

(c)    There shall have occurred a "**Default**" or an "**Event of Default**" under and as defined in any of the other Loan Documents; or

(d)    Any warranties or representations made or agreed to be made in this Deed to Secure Debt and Security Agreement or in any other instrument evidencing or securing the Secured Indebtedness shall be breached by Grantor or Maker or shall prove to be false or materially misleading; or

(e)    Any lien or claim of lien for labor, material, taxes, or otherwise shall be filed against the Property and not be removed, bonded, or contested in accordance with the terms of Subsection 1.03(d) above within thirty (30) calendar days after the date of Grantor's receipt of actual notice of such filing; or

(f)    A levy shall be made under any process on, or a receiver be appointed for, the Property or any other property of Grantor or Maker and such levy not be removed or receiver dismissed within thirty (30) calendar days of date of process or appointment; or

12

BOOK 4 2 9 4 PAGE  2 1 0

(g)    Grantor, Maker or any current or future guarantor of the Secured Indebtedness (hereinafter called a "*Guarantor*") shall file a voluntary petition in bankruptcy, or any other petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other similar relief for debtors; or

(h)    Grantor, Maker or any Guarantor shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Grantor or of any Guarantor or of all or any part of the Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof; or

(i)    Grantor, Maker or any Guarantor shall make any general assignment for the benefit of creditors; or

(j)    Grantor, Maker or any Guarantor shall commence or have instituted against it the process of dissolution, liquidation, or both dissolution and liquidation; or

(k)    (i) There shall be filed a petition against Grantor, Maker or any Guarantor, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or (ii) there shall be filed a petition seeking the appointment of any trustee, receiver or liquidator of Grantor, Maker, or of any Guarantor, or of all or any substantial part of the Property, or of any or all of the income, rents, issues, profits or revenues thereof; or

(l)    There shall occur a breach of the covenants and provisions of Sections 1.15 or 1.17 hereof; or

(m)    Grantor shall, without the prior written consent of Grantee, voluntarily or by operation of law, transfer, convey or assign the Property, or any part of, or interest in, the Property as security for an indebtedness other than for the indebtedness secured hereby; or

(n)    Grantor and/or Guarantors shall, without the prior written consent of Grantee, sell or otherwise dispose of all or substantially all of its respective assets.

Any periods of grace, cure or notice provided for the benefit of Grantor in this Security Deed and in the other Loan Documents shall run concurrently and not consecutively.

2.02    <u>Acceleration of Maturity</u>.  If an Event of Default shall have occurred hereunder, then the whole unpaid principal sum of the Secured Indebtedness and all interest and other charges accrued and accruing under the Note, this Security Deed and the other Loan Documents shall, at the option of Grantee, become due and payable without notice or demand by Grantee, except as set forth herein, time being of the essence of this Deed to Secure Debt and Security Agreement and of the Secured Indebtedness, and thereafter such Event of Default may be cured only by the payment of such entire principal balance and all other sums due and payable hereunder and thereunder; and no omission on the part of Grantee to exercise such option when entitled so to do shall be considered as a waiver of such right.

2.03    <u>Right to Enter and Take Possession</u>.

(a)    If any Event of Default shall have occurred and be continuing, Grantor, upon demand of Grantee, shall forthwith surrender to Grantee the actual possession of the Property and, to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of the Property and may exclude Grantor and Grantor's agents and employees wholly therefrom.

13

BOOK 4294 PAGE 211

(b)    If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Grantee, and Grantor hereby specifically consents to the entry of such judgment or decree.  Grantor shall pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including compensation to Grantee, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

(c)    Upon every such entering and taking of possession, Grantee may hold, store, use, operate, manage, control, and maintain the Property and conduct the business thereof, and, from time to time, (i) make all necessary and proper repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor, in its name or otherwise, with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Grantee; all as Grantee may from time to time determine to be to its best advantage; and Grantee may collect and receive all of the income, rents, profits, issues and revenues of the Property, including those past due as well as those accruing thereafter and, after deducting (aa) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases, and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other charges as Grantee may determine to pay, (ee) other proper charges upon the Property or any part thereof and (ff) the compensation and expenses of attorneys and agents of Grantee, shall apply the remainder of the money so received by Grantee to the payment of the Secured Indebtedness. Notwithstanding anything provided herein to the contrary, Grantee shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as a result of any exercise by Grantee of its rights under this Deed to Secure Debt and Security Agreement, and Grantee shall be liable to account only for the rents, income, issues and profits actually received by Grantee.

(d)    For the purpose of carrying out the provisions of this Section 2.03, Grantor hereby constitutes and appoints Grantee the true and lawful agent and attorney in fact of Grantor to do and perform, from time to time, any and all actions necessary and incidental to such purpose and does, by these presents, ratify and confirm any and all actions of said attorney in fact in the Property.

(e)    In the event any such Event of Default by Grantor hereunder is cured and satisfied to the satisfaction of Grantee prior to any action taken to enforce the Security Deed pursuant to Section 2.05 below such that Grantee returns possession of the Property to Grantor, the right of Grantee to take possession from time to time pursuant to this Section 2.03 shall exist upon the occurrence of any subsequent Event of Default hereunder.

(f)    In the event that Grantor and Grantee have entered into a separate Assignment of Rents, or similarly styled agreement, the terms of such agreement shall control in case any terms or provisions thereof may contradict with this Section 2.03.

2.04    Receiver.  If an Event of Default shall have occurred hereunder, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the occupancy or value of any security for the Secured Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof.  The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia.  Grantor shall pay unto Grantee upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Section 2.04 and any such amounts paid by

14

BOOK 4294 PAGE 212

Grantor shall be added to the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

2.05    Enforcement.

(a)    If the Secured Indebtedness is not paid in full when the same shall become due, whether by acceleration or otherwise, Grantee, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the Secured Indebtedness and all expenses of the sale and of all proceedings in connection therewith, including attorney's fees actually incurred after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title, and to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative of the other remedies provided hereby or by law for collection of the Secured Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Secured Indebtedness. In the event of any sale under this Security Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its sole discretion may elect, and if Grantee so elects, Grantee may sell the personal property covered by this Security Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Property is sold or the Secured Indebtedness is paid in full. If the Secured Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Grantee may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Grantee may determine.

(b)    If an Event of Default shall have occurred, Grantee may, in addition to and not in abrogation of the rights covered under subsection (a) of this Section 2.05, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Security Deed or any other right, and (ii) to pursue any other remedy available to it, all as Grantee shall determine most effectual for such purposes.

2.06    Application of Proceeds of Sale. In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied first to the payment of expenses of such sale and of all proceedings in connection therewith, including attorney's fees actually incurred, to insurance premiums, liens, assessments, taxes and charges, including utility charges advanced by Grantee, to all other advances made by Grantee pursuant to this Security Deed, then to the accrued interest on the principal indebtedness secured hereby, then to payment of the outstanding principal balance of the Secured Indebtedness; and the remainder, if any, shall be paid to Grantor, or to the person or entity lawfully entitled thereto.

15

2.07   <u>Purchase by Grantee</u>.   Upon any foreclosure sale or sale of all or any portion of the Property under the power herein granted, Grantee may bid for and purchase the Property and shall be entitled to apply all or any part of the Secured Indebtedness as a credit to the purchase price.

2.08   <u>Grantor as Tenant Holding Over</u>.   In the event of any such sale under the power herein granted, Grantor (if Grantor shall remain in possession) shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.09   Intentionally left blank.

2.10   <u>Discontinuance of Proceedings and Restoration of the Parties</u>.   In case Grantee shall have proceeded to enforce any right or remedy under this Deed to Secure Debt and Security Agreement by receiver, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken.

2.11   <u>Remedies Cumulative</u>.   No right, power or remedy conferred upon or reserved to Grantee by this Deed to Secure Debt and Security Agreement is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.12   <u>Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws</u>.   Grantor agrees, to the full extent permitted by law, that in case of an Event of Default hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, exemption, homestead or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed to Secure Debt and Security Agreement, or the absolute sale of the Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof.

2.13   <u>Leases</u>.   The failure of Grantee to make any tenants of the Property parties to any foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be, by Grantor a defense to any proceedings instituted by Grantee to collect the sums secured hereby.

2.14   <u>Waiver</u>.

(a)   No delay or omission of Grantee or of any holder of this Deed to Secure Debt and Security Agreement to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default, or acquiescence therein; and every right, power and remedy given by this Deed to Secure Debt and Security Agreement to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee.   Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default hereunder, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Event of Default by Grantor.   This Deed to Secure Debt and Security Agreement shall remain in full force and effect during any postponement or extension of the time of payment of the Secured Indebtedness or any part thereof.

16

BOOK **4294** PAGE **214**

(b)     If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from this Deed to Secure Debt and Security Agreement or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed to Secure Debt and Security Agreement; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed to Secure Debt and Security Agreement or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Event of Default then made or of any subsequent Event of Default; nor, except as otherwise expressly provided in an instrument or instruments executed by Grantee, shall the conveyance and lien of this Deed to Secure Debt and Security Agreement be altered thereby.  In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the Secured Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

(c)     GRANTOR DOES HEREBY EXPRESSLY WAIVE ANY AND ALL BENEFITS GRANTOR MAY HAVE UNDER O.C.G.A. §44-14-85 TO CLAIM OR ASSERT THAT THE SECURED INDEBTEDNESS HAS BEEN REINSTATED IN ACCORDANCE WITH ITS TERMS FOLLOWING THE WITHDRAWAL OF ANY FORECLOSURE PROCEEDING BY LENDER, AND ACKNOWLEDGES AND AGREES THAT REINSTATEMENT SHALL OCCUR ONLY UPON WRITTEN AGREEMENT OF LENDER.

2.15     Suits to Protect the Property.  Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Deed to Secure Debt and Security Agreement, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Grantee; provided, however, Grantee shall not institute or maintain any such suits or proceedings against parties other than Grantor unless and until Grantee shall have first made upon Grantor such request so to do as shall then be reasonable under the circumstances, and Grantor shall have thereupon failed either to institute and maintain such suit or to otherwise cure or correct any such matters or circumstances.

2.16     Grantee May File Proofs of Claim.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount due and payable by Grantor under this Deed to Secure Debt and Security Agreement at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

2.17     WAIVER OF GRANTOR'S RIGHTS.  BY EXECUTION OF THIS SECURITY DEED, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF GRANTEE TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND

17

BOOK **4294** PAGE **215**

THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NON-JUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS OF THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; AND (C) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY DEED IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

ARTICLE 3

3.01    <u>Successors and Assigns Included in Parties</u>.  Whenever in this Deed to Secure Debt and Security Agreement one of the parties hereto is named or referred to, the legal representatives, successors and permitted assigns of such parties shall be included and all covenants and agreements contained in this indenture by or on behalf of Grantor and by or on behalf of Grantee shall bind and inure to the benefit of their respective heirs, executors, legal representatives, successors and permitted assigns, whether so expressed or not.

3.02    <u>Headings</u>.  The headings of the sections, paragraphs and subdivisions of this Deed to Secure Debt and Security Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

3.03    <u>Invalid Provisions to Affect No Others</u>.  If fulfillment of any provision hereof or any transaction related hereto or to the Note, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then <u>ipso facto</u>, the obligation to be fulfilled shall be reduced to the limit of such validity; in no event and under no circumstances whatsoever shall Grantor be charged more than the highest lawful rate of interest permitted under applicable law; if any clause or provision herein contained operates or would prospectively operate to invalidate or impair the enforceability of this Deed to Secure Debt and Security Agreement in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Deed to Secure Debt and Security Agreement shall remain operative and in full force and effect, and shall be enforced to the greatest extent permitted by law.

3.04    <u>Number and Gender</u>.  Whenever the singular or plural number, masculine or feminine or neuter gender is used herein, it shall equally include the other.

3.05    <u>Notices</u>.  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Deed to Secure Debt and Security Agreement shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, by recognized overnight courier service, or, if mailed, sent by certified United States Mail, postage prepaid, return receipt requested, to the other party at the address of such other party set forth below or at such other address within the continental United States of America as such other party may designate by notice

18

BOOK 4294 PAGE 216

given in accordance herewith; provided further that no notice of change of address shall be effective until the date of receipt thereof. The effective date of such notice shall be the sooner to occur of the date of actual receipt, regardless of the method of delivery, or the date which is three (3) business days after the date on which the notice is postmarked by the United States Postal Service. Delivery to a party or to any officer, partner, agent or employee of such party at the designated address shall constitute effective delivery for purposes hereof. Rejection or other refusal to claim or accept or inability to deliver because of changed address of which no notice was given as prescribed herein shall not affect the effective date of any such notice, election or demand sent as aforesaid. Any such notice, demand, or request shall be addressed as follows:

|  |  |
|---|---|
| If to Grantee: | BinaNat Capital, LLC<br>2204 Sawgrass Village Drive<br>Ponte Vedra Beach, FL 32082<br>Attn: Robert Storm, President |
| with a copy to: | Menden Freiman, LLP<br>5565 Glenridge Connector NE, Suite 850<br>Atlanta, Georgia 30342<br>Attn:   Nathan T. Johns, Esq. |
| If to Grantor: | ARINAT HOLDINGS, LLC<br>2204 Sawgrass Village Drive<br>Ponte Vedra Beach, Florida 32082<br>Attn:   Robert Storm |

### ARTICLE 4

4.01    Governing Law, Consent to Jurisdiction.    This Deed to Secure Debt and Security Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Georgia, without reference to the application of the choice of law principles. Grantor hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Deed to Secure Debt and Security Agreement may be instituted in the Superior Court of any County in the State of Georgia, or in any United States District Court in Georgia, or in such other appropriate court and venue as Grantee may choose in its sole discretion. Grantor consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which Grantor may now or hereafter have in any such legal action or proceedings.

4.02    Time of Essence.    Time is of the essence in the performance of all obligations hereunder.

4.03    Assignment.    This Deed to Secure Debt and Security Agreement is assignable by Grantee and any assignment hereof by Grantee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Grantee.

4.04    Replacement of Note.    Upon receipt of evidence reasonably satisfactory to Grantor of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Grantor or, in the case of any such mutilation, upon surrender of the Note, Grantor shall sign in lieu thereof a new note, dated the date to which interest has been paid on the lost, stolen, destroyed or mutilated Note and otherwise of like tenor, with appropriate variations.

19

BOOK **4294** PAGE **217**

4.05    <u>Patriot Act</u>.  Grantor warrants, represents and covenants that neither Grantor nor any Obligor nor any of its respective affiliated entities is or will be an entity or person (i) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("**EO13224**"); (ii) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "***Specifically Designated National and Blocked Persons***") (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, http:www.treas.gov/ofac/t11sdn.pdf); (iii) who commits, threatened to commit or supports "terrorism", as that term is defined in EO 13224, or (iv) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subpart {i} – {iv} above are herein referred to as "***Prohibited Person***").  Grantor covenants and agrees that neither Grantor, nor any Obligor nor any of their respective affiliated entities will (i) conduct any business, nor engage in any transaction or dealing, with any "***Prohibited Person***", including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224, Grantor further covenants and agrees to deliver (from time to time) to Lender any such certification or other evidence as may be requested by Lender in its sole and absolute discretion, confirming that (i) neither Grantor or nor any Obligor is a Prohibited Person and (ii) neither Grantor nor any Obligor has engaged in any business, transaction or dealings with a Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person.

4.06    <u>Attorneys' Fees</u>.  Whenever in any of the Loan Documents Grantor is obligated to pay the legal fees of Grantee's counsel, such fees shall be based upon  reasonable attorneys' fees of fifteen percent (15%) of the outstanding principal and interest.

IN WITNESS WHEREOF, Grantor has executed this Deed to Secure Debt and Security Agreement under seal as of the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered
in the presence of:

**ARINAT HOLDINGS, LLC,**
a Georgia limited liability company

By: _____(SEAL)

_____
Unofficial Witness

Robert Storm, Manager

_____
Notary Public
My Commission Expires:

[NOTARY SEAL]

20

BOOK 4294 PAGE 218

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 22, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

21

BOOK **4294** PAGE **220**

FILED & RECORDED
CLERK, SUPERIOR COURT
SPALDING COUNTY, GA.

2018 JUN 13 A 11: 52

BY
DEBBIE L. BROOKS, CLERK

**AFTER RECORDING, RETURN TO:**
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

<u>NOTE TO TAX COMMISSIONER</u>: **THIS DEED SECURES A NOTE IN THE AMOUNT OF $181,850.00 PAYABLE ON NOVEMBER 30, 2018, ACCORDINGLY NO INTANGIBLE RECORDING TAX IS DUE.**

<u>**DEED TO SECURE DEBT AND SECURITY AGREEMENT**</u>

THIS INDENTURE (hereinafter sometimes referred to as the *"Security Deed"* or *"Deed to Secure Debt and Security Agreement"*), made as of the 24th day of May, 2018, by and between **ARINAT HOLDINGS, LLC**, a Georgia limited liability company (hereinafter called *"Grantor"*), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, Florida 32082, and **BINANAT CAPITAL, LLC**, a Georgia limited liability company (hereinafter called *"Grantee"*), with an address of 2204 Sawgrass Village Drive, Ponte Vedra Beach, FL 32082;

W I T N E S S E T H:

That for and in consideration of the sum of ONE HUNDRED AND NO/100THS DOLLARS ($100.00) and other good and valuable consideration, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Maker (as defined below) and Grantor hereinafter set forth, Grantor does hereby grant, bargain, sell and convey unto Grantee, its successors and assigns, all of the following described land and interest in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter collectively referred to as the *"Property"*):

(a)    All that certain tract or parcel of land more particularly described in **<u>Exhibit "A"</u>** attached hereto and by this reference made a part hereof (hereinafter referred to as the *"Land"*);

(b)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus

1

BOOK **4294** PAGE **221**

and appurtenances, window screens, awnings and storm sashes owned by Grantor and attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, building supplies and materials, books and records, chattels, inventory, accounts, consumer goods, general intangibles and personal property of every kind and nature whatsoever owned by Grantor and now or hereafter located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land and the improvements located from time to time thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions or proceeds from a permitted sale of any of the foregoing, all tradenames, trademarks, servicemarks, logos, and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land and the improvements located thereon or any part thereof and are now or hereafter acquired by Grantor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Security Deed. The location of the above-described collateral is also the location of the Land;

(c)    All building materials, fixtures, building machinery and building equipment delivered on site to the Land during the course of, or in connection with, construction of the buildings and improvements upon the Land and which are now or hereafter owned by Grantor;

(d)    All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof or appurtenant to the title to the Land, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor;

(e)    All income, rents, issues, profits and revenues of the Property from time to time accruing (including, without limitation, all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Grantor or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Grantor in and to the same; reserving only the right to Grantor to collect the same so long as an Event of Default has not occurred hereunder;

(f)    All permits, licenses, franchises, certificates, development rights, commitments and rights for utilities, and other rights and privileges obtained in connection with the Land and Improvements;

(g)    All oil, gas and other hydrocarbons and other minerals produced from or allocated to the Land and all products processed or obtained therefrom, and the proceeds thereof;

(h)    All site plans, drawings, plans, specifications, and studies prepared by all architects, all reports, surveys, and studies made by all engineers, and all other plans, soil test, reports, specifications, engineering plans and reports, and any other architectural or engineering data used or useful in connection with the construction of the Improvements (hereinafter collectively referred to as the "***Plans and Specifications***");

(i)    All building permits, service agreements, or other such permits and/or approvals required to construct the Improvements in accordance with the Plans and Specifications, including without limitation permits, approvals, licenses, or authorizations issued by any governmental agency or any other

2

BOOK 4294 PAGE 222

person in connection with the construction, operation, or maintenance of the Land, the Improvements, the Contracts, or the Plans and Specifications, including, without limitation, all of Borrower's rights and interests under all zoning variances, use permits, plat approvals, building permits, development permits, sewer-tap permits, and other utility permits or governmental approvals issued in connection with the Land or Improvements;

(j)     The numerous agreements, instruments, cross easements, reciprocal easements contracts, declarations of easements and restrictive covenants and all right, title, interest, privileges and obligations as "*Declarant*" thereunder, all declarant rights and rights of control for any home owners association, community association, or otherwise, development agreements, or otherwise incident to the Land and Improvements, whether now existing or hereafter created and as approved by Lender in its sole discretion (collectively the "*Development Documents*"); and

(k)     All products and/or proceeds of any of the foregoing, including without limitation, insurance proceeds.

TOGETHER WITH all and singular the rights, tenements, hereditaments, members and appurtenances whatsoever, in any way belonging, relating or appertaining to any of the Property hereinabove mentioned or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantor, including but not limited to, all rents, profits, issues and revenues of the Property from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving only the right to Grantor to collect the same for its own account so long as Grantor is not in default hereunder.

TO HAVE AND TO HOLD the property and all parts, rights, members and appurtenances thereof unto Grantee, its respective successors and assigns, to its or their own use IN FEE SIMPLE forever.

AND Grantor covenants that Grantor is lawfully seized and possessed of the Property and has good right to convey the same as aforesaid, that the Property and every part thereof are unencumbered except for those matters (hereinafter referred to as the "*Permitted Encumbrances*") expressly set forth in **Exhibit "B"** attached hereto and by this reference made a part hereof, and that Grantor does warrant and will forever defend the title to the Property and every part thereof against the claims of all persons and entities whomsoever, except as to the Permitted Encumbrances.

This Security Deed is intended (i) to constitute a security agreement for purposes of the Uniform Commercial Code of Georgia and (ii) to operate and is to be construed as a deed passing title to the Property to Grantee and is made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the "*Secured Indebtedness*"):

(a)     The debt evidenced by that certain Promissory Note dated of even date herewith, made by **ARINAT HOLDINGS, LLC** ("*Maker*"), payable to the order of Grantee, in the principal face amount of **One Hundred Eighty-One Thousand Eight Hundred Fifty and No/100 Dollars ($181,850.00)**, together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced thereby, or any replacement note or notes that may be substituted for said Promissory Note after the date hereof (collectively hereinafter referred to as the "*Note*", with interest on the outstanding principal at the rates provided for in the Note, with the final payment being due not later than November 30, 2018; and

(b)     Any and all additional advances made by Grantee to protect or preserve the Property or the security interest created hereby in the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's or Maker's obligations hereunder or for any

3

BOOK **4 2 9 4** PAGE **2 2 3**

other purpose provided herein (whether or not the original Grantor remains the owner of the Property at the time of such advances); and

    (c)    Any and all costs, expenses, charges, liabilities, commissions and attorneys' fees now or hereafter chargeable to or incurred by, or disbursed by, Grantee as provided for herein, or by applicable law; and

    (d)    Any and all other indebtedness now or hereafter owing by Grantor or Maker to Grantee under the Loan Documents, as hereinbelow defined.

The Note, this Security Deed, and all documents, instruments, deeds, mortgages and agreements now or hereafter evidencing, securing or otherwise relating to the Note, this Security Deed, or the Secured Indebtedness, together with any and all renewals, modifications, consolidations and extensions thereof, are collectively hereinafter referred to as the "*Loan Documents*."

The parties hereto further expressly agree that should all monies advanced to the Grantor herein pursuant to the note be totally repaid and the balance owing to the Grantee be reduced to zero at any time or from time to time, this Deed to Secure Debt shall not become null and void by operation of law or otherwise but shall remain in full force and effect and shall retain its priority position of record relative to any and all advances from Grantee to Grantor. Grantor and Grantee herein intend by this conveyance to establish a perpetual or indefinite security interest in the real property conveyed herein, with this statement being made pursuant to the provision of O.C.G.A. § 44-14-80(a)(2).

PROVIDED ALWAYS, that should the Secured Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, then this Security Deed shall be canceled and surrendered, but otherwise shall remain in full force and effect.

AND GRANTOR HEREBY further covenants and agrees with Grantee as follows:

### ARTICLE 1

    1.01    <u>Payment of Indebtedness and Performance of Obligations</u>. Grantor will pay the Secured Indebtedness according to the tenor thereof promptly as the same shall become due, and shall perform every obligation of Grantor contained in this Security Deed, and in each and every instrument now or hereafter evidencing or securing the Secured Indebtedness, and in other Loan Documents.

    1.02    <u>Monthly Deposits</u>. To secure further the payment of the taxes and assessments referred to in Section 1.03 below, and the payment of premiums on the insurance policies referred to in Section 1.04 below, Grantee, at its option, shall have the right to require Grantor to deposit with Grantee on the first day of each and every month a sum which, in the reasonable estimation of Grantee, shall be equal to one-twelfth of the annual taxes and assessments and one-twelfth of such annual insurance premiums; said deposits to be held by Grantee, free of interest, and free of any liens or claims on the part of creditors of Grantor and as part of the security of Grantee, and to be used by Grantee to pay current taxes, assessments and insurance premiums on the Property as the same accrue and are payable. Said deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Grantee. If said deposits are insufficient to pay the taxes, assessments and insurance premiums in full as the same become payable, Grantor shall deposit with Grantee such additional sum or sums as may be required in order for Grantee to pay such taxes, assessments and insurance premiums in full. Upon any Event of Default hereunder or under the Note, Grantee may, at its option, apply any money in the fund resulting from said deposits to the payment of the Secured Indebtedness in such manner as Grantee may elect.

4

BOOK **4294** PAGE **224**

1.03   <u>Taxes, Liens and Other Charges.</u>

(a)   In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of debts secured by deeds to secure debt or the manner of collecting taxes so as to affect adversely Grantee, Grantor shall promptly pay any such tax relating to this Security Deed, the Property or the Note; if Grantor fails to make such prompt payment or if any such state, federal, municipal or other governmental law, order, rule or regulation prohibits Grantor from making such payment or would penalize Grantee if Grantor makes such payment, then the entire balance of the principal sum secured by this indenture and all interest accrued thereon shall, thirty (30) days after written notice, become due and payable at the option of Grantee. Nothing herein shall impose upon Grantor the obligation to pay any state or federal income taxes, corporate franchise taxes or net worth taxes assessed or levied against Grantee.

(b)   Grantor shall pay (to the extent the same are not paid from escrowed funds provided for in Section 1.02 hereof), before the same become delinquent, all taxes, liens, assessments and charges of every character already levied or assessed or that may hereafter be levied or assessed upon or against the Property and all utility charges for the Property, whether public or private; and upon demand shall furnish Grantee receipted bills evidencing such payment.

(c)   Grantor shall not suffer any mechanic's, materialmen's, laborer's, statutory or other lien to remain outstanding upon any part of the Property.

(d)   Notwithstanding the provisions of Subsection 1.03(a), 1.03(b) or 1.03(c) hereinabove to the contrary, Grantor may contest the validity and/or amount of any taxes, assessments or other charges referred to in said subsections at Grantor's sole cost and expense and shall not be required to pay or discharge any obligation imposed upon Grantor in any of said subsections so long as (i) Grantor shall in good faith contest the same by appropriate legal proceedings which shall operate to prevent the collection thereof or other realization thereon and the sale, levy or forfeiture of or upon all or any part of the Property to satisfy the same, and (ii) at Grantee's request, Grantor shall deposit in escrow with a title insurance company acceptable to Grantee, or provide other security reasonably satisfactory to Grantee, an amount equal to the amount being contested plus a reasonable additional sum to cover possible costs, interest and penalties.

1.04   <u>Insurance.</u>   Grantor shall keep or cause others to keep all buildings and improvements, whether now standing on the Property or hereafter erected, continuously insured against loss or damage by fire, by the perils covered by extended coverage insurance, by builder's risk insurance, by loss of rents or business interruption insurance and by malicious mischief and against such other hazards as Grantee, in its reasonable discretion, shall from time to time require, for the benefit of Grantee; all such insurance at all times shall be in an insurance company or companies in the amount of the full replacement cost of each such insured item and with terms acceptable to Grantee, with loss, if any, payable to Grantee as its interest may appear, pursuant to a non-contributory mortgagee clause which shall be satisfactory to Grantee; and forthwith upon the issuance of such policies Grantor shall deliver to Grantee receipts for the premiums paid thereon. In the event of the foreclosure of this Deed or any other transfer of title to the Property in extinguishment or partial extinguishment of the Secured Indebtedness, all right, title and interest of Grantor in and to all insurance policies then in force shall pass to the purchaser or to Grantee, as the case may be, and Grantee is hereby irrevocably appointed by Grantor as attorney-in-fact for Grantor to assign any such policy to said purchaser or to Grantee, as the case may be, without accounting to Grantor for any unearned premiums thereon. At least thirty (30) days prior to the expiration date of each policy of insurance maintained pursuant to this Section 1.04, a renewal or replacement thereof satisfactory to Grantee shall be delivered to Grantee. Provided no Event of Default, as defined in Article 2 of this Security Deed, shall have occurred and be continuing hereunder, Grantor

5

BOOK **4294** PAGE **225**

shall be authorized and empowered to adjust or compromise any loss under any insurance policies on the Property, subject to Grantee's approval of the terms of any adjustment or compromise, such approval not to be unreasonably withheld.  In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt, the Note or any Loan Document and Security Agreement, then Grantee is hereby authorized and empowered, at its option, to adjust or compromise any such loss under any insurance policies on the Property.  Each insurance company is hereby authorized and directed to make payment for all such losses directly to Grantee, instead of to Grantor or to Grantor and Grantee jointly.  In the event any insurance company fails to disburse directly and solely to Grantee but disburses to Grantor or to Grantor and Grantee jointly, Grantor agrees to immediately endorse and transfer such proceeds to Grantee.  In case of loss under any such policy of insurance, Grantee may, at its option, make all or any portion of the net proceeds available to Grantor for the purpose of restoration or repair of the Property or may apply the net proceeds or any portion thereof to the payment of the indebtedness hereby secured, whether due or not.

1.05    Care of the Property.

(a)    Grantor shall keep the improvements now or hereafter erected on the Property in good condition and repair, shall not commit or suffer any waste and shall not do or suffer to be done anything (other than construction, ownership, operation, maintenance and repair or renovation of improvements) which shall increase the risk of fire or other hazard to the Property or any part thereof.

(b)    Grantor shall not remove or demolish nor alter the design or structural character of any building (now or hereafter erected) or other part of the Property without the prior written consent of Grantee.

(c)    If the Property or any part thereof is damaged by fire or any other cause, Grantor shall give prompt written notice of the same to Grantee.

(d)    Grantee or its representative is hereby authorized upon notice reasonable under the circumstances to enter upon and inspect the Property at any time during normal business hours, subject to the rights of tenants therein.

(e)    Grantor shall promptly comply with all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Property or any part thereof.  If Grantor receives notice from any federal, state or other governmental entity that the Property fails to comply with any applicable law, ordinance, rule, order or regulation, Grantor will promptly furnish a copy of such notice to Grantee.

(f)    If all or any part of the Property shall be damaged by fire or other casualty, Grantor shall, upon request of Grantee, promptly restore or cause to be restored the Property, or any portion thereof specified by Grantee, to the equivalent of its condition immediately prior to such damage, and if a part of the Property shall be damaged through condemnation (which damage does not result in acceleration of the indebtedness secured hereby by Grantee, as provided in Section 1.12 below), Grantor shall, upon request of Grantee, promptly restore, repair or alter the remaining part of the Property in a manner reasonably satisfactory to Grantee.  In the event Grantor is required pursuant to the provisions contained herein to restore, repair or alter the Property after fire, other casualty or condemnation, Grantee agrees that it shall make any net insurance proceeds or condemnation proceeds available to Grantor, pursuant to procedures satisfactory to Grantee, for the purpose of paying the cost of such restoration, repair or alteration.

1.06    Further Assurances.  At any time, and from time to time, upon request by Grantee, Grantor shall make, execute and deliver or cause to be made, executed and delivered, to Grantee, any and all other further instruments, certificates and other documents as may be reasonably necessary in order to

6

BOOK 4294 PAGE 226

effectuate, complete or perfect or to continue and preserve the obligations of Grantor under the Note and the security interest of this Deed to Secure Debt and Security Agreement. Upon any failure of Grantor so to do, Grantee may make, execute and record any and all such instruments, certificates and documents for and in the name of Grantor and Grantor hereby irrevocably appoints Grantee as the agent and attorney-in-fact of Grantor so to do. The conveyance of this Deed to Secure Debt and Security Agreement and the security interest created hereby will automatically attach, without further act, to all after-acquired land or other property attached to and/or used in the operation of the Property or any part thereof, except to the extent expressly released by Grantee.

1.07    Leases Affecting the Property. Grantor shall perform all material covenants to be performed by the landlord under any and all leases now or hereafter on the Property or any part thereof and shall not, without the written consent of Grantee, cancel, surrender or modify any such lease. Grantor shall furnish Grantee signed copies of all leases on the Property or any part thereof promptly after their execution. Grantor shall, by written instrument in form and substance satisfactory to Grantee, assign to Grantee Grantor's interest in each and every lease hereafter entered into by Grantor with respect to all or any part of the Property. The terms "lease" and "leases" as used in this Section 1.07 shall include all tenancies.

1.08    Expenses. Grantor shall pay or reimburse Grantee for all fees, costs and expenses incurred by Grantee with respect to any and all transactions contemplated herein including, without limiting the generality of the foregoing, all title and conveyancing charges, recording and filing fees, mortgage taxes, intangible personal property taxes, escrow fees, revenue and tax stamp expenses, insurance premiums (including title insurance premiums), brokerage commissions, finder's fees, court costs, surveyors', photographers', appraisers', architects', engineers', accountants' and attorneys' fees and disbursements, and will reimburse to Grantee all of the foregoing expenses paid by Grantee which have been or may be incurred by Grantee with respect to any or all of the transactions contemplated herein. In addition to the foregoing, if any action or proceeding be commenced (including but not limited to any action to foreclose this Security Deed or to collect the Secured Indebtedness), to which action or proceeding Grantee is made a party, or in which it becomes necessary to defend or uphold the lien of this Security Deed, or in which Grantee is served with any legal process, discovery notice or subpoena relating to Grantee's lending to Grantor or accepting a guaranty from a guarantor of the Secured Indebtedness, Grantor will reimburse to Grantee all of the foregoing expenses (including, without limitation, the cost of any environmental audit) which have been or may be incurred by Grantee with respect to the foregoing. All sums paid by Grantee for the expense of any litigation to prosecute or defend the rights and lien created by this Security Deed or to appear or to take action in response to any such legal process, discovery notice or subpoena (including attorneys' fees and disbursements) shall be paid by Grantor, upon demand by Grantee, and any such sum shall be a lien on the Property, prior to any right, or title to, interest in or claim upon the Property attaching or accruing subsequent to the lien of this Security Deed, and shall be deemed to be secured by this Security Deed. In any action or proceeding to foreclose this Security Deed, or to recover or collect the Secured Indebtedness, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

1.09    Estoppel Affidavits. Grantor shall, upon ten (10) days prior written notice, furnish Grantee a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the indebtedness secured hereby and whether or not, to the best knowledge of Grantor, any off-sets or defenses exist against such principal and interest, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

1.10    Subrogation. Grantee shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Secured Indebtedness secured hereby,

BOOK 4294 PAGE 227

notwithstanding that any instrument providing public notice of same shall be satisfied and canceled of record.

1.11    Performance by Grantee of Defaults by Grantor.  If Grantor shall fail to pay any tax, lien, assessment or charge levied or assessed against the Property, any utility charge, whether public or private, required to be paid hereunder or any insurance premium required to be paid in connection with the procurement of insurance coverage and the delivery of the insurance policies required hereunder, or if Grantor shall fail to perform or observe any covenant, term or condition of any leases affecting all or any part of the Property or any other covenant, condition or term of this Deed to Secure Debt and Security Agreement, then Grantee, at its option, after the giving of any notice and expiration of any cure period provided for herein, may perform or observe the same, and all payments made or costs incurred by Grantee in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Grantor to Grantee with interest thereon at the default rate of interest under the Note. Notwithstanding the foregoing, with respect to any payments permitted hereunder other than insurance premiums, Grantee shall not make any such payments without first giving Grantor ten (10) calendar days prior written notice of its intention to do so; provided, however, that if Grantee in its good faith judgment determines that its failure so to make any of the payments permitted hereunder prior to the end of such ten (10) calendar day period would adversely affect either the Property or its security interest therein, then in such event Grantee shall have the right to make such payment prior to the end of such ten (10) calendar day period, and any such payment shall be covered by the terms of this Section 1.11.  Grantee shall be the sole judge of the legality, validity and priority of any such tax, lien, assessment, charge, claim, premium and obligation, of the necessity for any such actions, and of the amount necessary to be paid in satisfaction thereof.  Grantee is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof (subject to rights of tenants thereof) upon notice reasonable in the circumstances for the purpose of performing or observing any such defaulted covenant, condition or term, without thereby becoming liable to Grantor or any other person in possession holding under Grantor except to the extent of the gross negligence or willful misconduct of Grantee or its agents and employees.

1.12    Condemnation.  If all or any material part of the Property shall be damaged or taken through condemnation (which term when used in this Deed to Secure Debt and Security Agreement shall include any damage or taking by any governmental authority and any transfer by private sale in lieu thereof), the entire indebtedness secured hereby shall, at the option of Grantee, become immediately due and payable.  Grantee shall be entitled to all compensation, awards and other payments or relief arising from any such condemnation.  If the condemnation shall result in a taking of less than a material portion of the Property, then Grantee, after deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including attorney's fees, shall make the net proceeds available to Grantor for the repair and/or restoration of the Property.  Provided no Event of Default shall have occurred and be continuing hereunder, then Grantor shall be authorized, at its option, to commence, appear in and prosecute through counsel selected by Grantor and reasonably acceptable to Grantee, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith, subject to Grantee's approval of the terms of any such settlement or compromise. In the event that an Event of Default shall have occurred and be continuing under this Deed to Secure Debt and Security Agreement or any of the other Loan Documents, then Grantor, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Property or any part thereof, will promptly notify Grantee, and Grantee is hereby authorized and empowered, at its option, to commence, appear in, and prosecute any such action or proceeding and to settle or compromise any claim in connection therewith.  All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Grantor to Grantee, who after deducting therefrom all its expenses, including attorney's fees, may release any monies so received by it without affecting the security interest of this Deed to Secure Debt and Security Agreement.  Grantor agrees to execute such further assignment of any compensation, awards, damages, claims, rights of action and proceeds as

8

BOOK 4 2 9 4 PAGE  2 2 8

Grantee may reasonably require.  If, prior to the receipt by Grantee of such award or proceeds, the Property shall have been sold on foreclosure of this Security Deed, or by deed in lieu thereof, or under the power of sale herein granted, Grantee shall have the right to receive such award or proceeds to the extent of any unpaid Secured Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Security Deed or the Note shall have been sought or recovered, and to the extent of counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or proceeds.  As used herein, a "material" portion of the Property shall mean any portion of the Property such that the condemnation thereof will in the reasonable judgment of Grantee substantially adversely affect the construction or operation of the project contemplated by the Loan Documents for its intended purposes or the rental income therefrom.

1.13    Security Agreement.

(a)    With respect to the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, articles of personal property, chattels, chattel paper, documents, inventory, accounts, farm products, consumer goods and general intangibles of Grantor referred to or described in this Deed to Secure Debt and Security Agreement, or in any way connected with the use and enjoyment of the Property, this Deed to Secure Debt and Security Agreement is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Property, in compliance with the provision of the Georgia Uniform Commercial Code.  Upon request by Grantee, at any time and from time to time, a financing statement or statements reciting this Deed to Secure Debt and Security Agreement to be a security agreement affecting all of such property shall be executed by Grantor and Grantee and appropriately filed.  The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Deed to Secure Debt and Security Agreement shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Grantee's sole election.  Grantor and Grantee agree that the filing of any such financing statement or statements in the records normally having to do with personal property shall not in any way affect the agreement of Grantor and Grantee that everything used in connection with the production of income from the Property or adapted for use therein or which is described or reflected in this Deed to Secure Debt and Security Agreement, is, and at all times and for all purposes and in all proceedings, both legal or equitable, shall be, regarded as part of the real estate conveyed hereby regardless of whether (i) any such item is physically attached to the improvements, (ii) serial numbers are used for the better identification of certain items capable of being thus identified in an exhibit to this Deed to Secure Debt and Security Agreement, or (iii) any such item is referred to or reflected in any such financing statement or statements so filed at any time.  Similarly, the mention in any such financing statement or statements of the rights in and to (i) the proceeds of any fire and/or hazard insurance policy, or (ii) any award in eminent domain proceedings for a taking or for loss of value, or (iii) Grantee's interest as lessor in any present or future lease or rights to income growing out of the use and/or occupancy of the Property, whether pursuant to lease or otherwise, shall not in any way alter any of the rights of Grantee as determined by this Deed to Secure Debt and Security Agreement or affect the priority of Grantee's security interest granted hereby or by any other recorded document, it being understood and agreed that such mention in such financing statement or statements is solely for the protection of Grantee in the event any court shall at any time hold with respect to the foregoing clauses (i), (ii) or (iii) of this sentence, that notice of Grantee's priority of interest, to be effective against a particular class of persons, must be filed in the appropriate Uniform Commercial Code records.

(b)    Grantor warrants that the location of the collateral is or will be upon the Land (excepting materials intended to be located thereon and stored temporarily off-site).  Grantor covenants and agrees with Grantee that Grantor will furnish Grantee with notice of any change in the principal place of business of Grantor within thirty (30) calendar days of the effective date of any change and Grantor

BOOK **4294** PAGE **229**

will promptly execute any financing statements or other instruments deemed necessary by Grantee to prevent any filed financing statement from becoming misleading or losing its status.

1.14    Construction Materials.    In addition to the interests in and to the Property granted, bargained, sold and conveyed by Grantor to Grantee as set forth hereinabove, Grantor has also granted, bargained, sold and mortgaged, and by these presents does grant, bargain, sell and mortgage unto Grantee all building materials, equipment and appliances, including without limiting the generality of the foregoing, bricks, mortar, lumber and other items and equipment, which are acquired by Grantor to be placed upon or used in connection with the Property, whether or not such materials are located upon or attached to the Property, and all guaranties and warranties of workmanship or quality relating to said building materials, equipment and appliances, or other personal property and improvements and the construction and installation thereof, and all contract rights, business names and other intangibles of Grantor relating to the construction, equipment and operation of the Property; and all of the items and types of items identified in this Section 1.14 shall also be included within the meaning of the term *"Property"* as used in this instrument.

1.15    Conveyance of the Property.    Grantor hereby acknowledges and confirms that the identity and expertise of Grantor are material circumstances upon which Grantee has relied in connection with the sums advanced herein, and any change in such identity or expertise could materially impair or jeopardize the security afforded to Grantee by this Deed to Secure Debt and Security Agreement for the payment of the principal amount of the Secured Indebtedness.    Accordingly:

(a)    Grantor shall not, without the prior written consent of Grantee, which may be exercised arbitrarily and withheld for any reason or no reason, voluntarily or by operation of law, sell, transfer, lease to one entity in its entirety, convey or assign all or any part of the legal or equitable title to the Property, or any part of, or interest in, the Property.    For purposes hereof, the change or transfer or encumbrance of the legal or equitable ownership of any interest in Grantor, or the change or transfer of any direct or indirect interest in Grantor shall constitute a transfer of the Property.

(b)    Grantor shall not, without the prior written consent of Grantee, voluntarily or by operation of law, mortgage, encumber, transfer, convey or assign the Property, or any part of, or interest in, the Property, as security for an indebtedness other than for the Secured Indebtedness.

Notwithstanding anything provided to the contrary in Section 2.01 hereinbelow, in the event Grantor breaches any term of this Section 1.15, such breach shall entitle Grantee immediately to exercise all rights and remedies provided herein, and Grantor shall not be entitled to any cure period in connection therewith.

1.16    Litigation.    Grantor shall promptly give notice in writing to Grantee of any litigation commenced or threatened affecting the Property.

1.17    Hazardous Materials.    To the best of Grantor's knowledge, the Property (including the land, surface water, ground water and all improvements) is free of the following:

(a)    any "hazardous waste" as defined by the Resource Conservation and Recovery Act of 1976, as amended from time to time, and regulations promulgated thereunder;

(b)    any "hazardous substance" as defined by the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, and regulations promulgated thereunder;

(c)    any substance the presence of which on the Property is prohibited by any law similar to those set forth in this Section 1.17;

10

BOOK **4 2 9 4** PAGE **2 3 0**

(d)      any asbestos fire proofing or insulation or other form of building materials or substances which may, if not properly handled, pose a threat to the health of building users and occupants;

(e)      contamination resulting from any oil or petroleum products and their by-products;

(f)      any polychlorinated biphenyls ("*PCBs*"); and

(g)      contamination resulting from any materials which, under federal, state or local law, statute, ordinance or regulations, or court or administrative order or decree, or private agreement (hereinafter referred to collectively as "*Environmental Requirements*") require special handling in collection, storage, treatment or disposal because of toxic, flammable, explosive, corrosive, reactive, or radioactive properties or because of properties that may be hazardous or harmful to the environment or human health [items (a)-(g) are hereinafter referred to collectively as "*Hazardous Materials*"].

Grantor hereby warrants and represents to Grantee that with regard to the Property and all activities on the Property, Grantor has not received any verbal or written notice of, and is unaware of, any violation or any action, judicial or administrative, relating to the violation, of any of the Environmental Requirements. Further, Grantor warrants and represents to Grantee that it has not actually received, and is unaware of, any notice under any of the Environmental Requirements relating to the existence of any contamination or Hazardous Materials on the Property. Further, Grantor warrants and represents to Grantee that it has not spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, and that to the best of Grantor's knowledge, no other person has spilled, leaked or in any other manner released any Hazardous Materials on the Property in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements. Grantor shall not hereafter (i) cause or suffer to occur a release, spillage, leak, uncontrolled loss, seepage or filtration of any Hazardous Materials at, upon or within the Property or any contiguous real estate in amounts which would create an imminent and substantial endangerment to health, welfare or the environment or in a manner violating any Environmental Requirements, (ii) engage in any activity, or permit any tenant or occupant of the Property to engage in any activity, that could lead to the imposition of liability on such tenant or occupant or on Grantor or the creation of a lien on the Property, under the Environmental Requirements, except for activities involving chemicals, substances and materials routinely used in the construction of improvements such as the improvements to be constructed on the Land or used in the day-to-day operation, cleaning, maintenance and landscaping of properties such as the Property, including chemicals, substances and materials sold by tenants of the Property in the ordinary course of their business, provided that at all times Grantor shall cause any such chemicals, substances and materials to be used, stored, handled and disposed of in compliance with all applicable Environmental Requirements. If Grantor shall fail to take or cause to be taken any and all actions as may be necessary to comply with all Environmental Requirements, Grantee may make advances or payments towards performance or satisfaction of the same, but shall be under no obligation to do so; and any sums so advanced or paid, including, without limitation, all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation, attorneys' fees, fines or other penalty payments, shall be reimbursed by Grantor to Grantee in accordance with the provisions of Section 1.11 hereinabove. Grantor shall and does hereby agree to indemnify and hold Grantee harmless from and against any and all loss, expense and charge whatsoever, including, without limitation, all court costs and attorneys' fees, arising out of or in connection with any matter or thing relating to Environmental Requirements or Hazardous Materials and arising out of events or circumstances occurring or existing prior to or during the period of Grantor's ownership of the Property, except to the extent directly caused by the gross negligence or willful misconduct of Grantee or its agents,

11

BOOK **4294** PAGE **231**

including, without limitation, if Grantee is made a party to any action or suit brought under any of the Environmental Requirements. It is expressly agreed by Grantor that this covenant of indemnification shall survive any payment and satisfaction of the indebtedness evidenced by the Note and secured hereby and the release and satisfaction of this Deed to Secure Debt and Security Agreement and the Loan Documents, and shall continue so long as the risk or potential of any such expense, damage, loss or liability of Grantee exists. Without limiting the generality of the foregoing, the foregoing covenant of indemnification shall inure to the benefit of Grantee, in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property; provided, however, that the foregoing covenant of indemnification shall not extend to any expense, damage or loss arising directly from the acts of Grantee in the event Grantee becomes the successor-in-interest to Grantor with respect to the Property.

1.18    <u>Americans with Disabilities Act</u>.  Grantor, at its sole cost and expense, shall promptly and at all times and from time to time comply with all requirements of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 <u>et seq.</u>, the regulations promulgated in connection therewith, 28 CFR Part 36, and the applicable ADA Accessibility Guidelines. Grantor hereby indemnifies and holds harmless Grantee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges and expenses, of any nature whatsoever suffered or incurred by Grantee, whether as grantee of this Deed to Secure Debt, as mortgagee in possession, or as successor-in-interest to Grantor by foreclosure deed or deed in lieu of foreclosure, in connection with the foregoing provision.

1.19    <u>Liability for Use of Loan Proceeds</u>.  Lender will not in any way be liable or responsible by reason of this Deed to Secure Debt, or otherwise, for the payment of any claims growing out of the construction, installation, or operation of any contemplated improvements on the Property of Borrower, or arising from or in connection with any other use of the loan proceeds by Borrower.

ARTICLE 2

2.01    <u>Default</u>.  The occurrence of any one or more of the following events shall constitute an *"Event of Default"* by Grantor hereunder:

(a)    Maker or Grantor shall fail to pay in full when due and payable any installment of principal, interest or escrow deposits, as required by the Note, this Deed to Secure Debt and Security Agreement (a *"Monetary Default"*), or otherwise; or

(b)    Grantor fails duly to observe any covenant, condition or agreement of this Deed to Secure Debt and Security Agreement or of any other instrument evidencing or securing the Secured Indebtedness (a *"Non-Monetary Default"*); or

(c)    There shall have occurred a *"Default"* or an *"Event of Default"* under and as defined in any of the other Loan Documents; or

(d)    Any warranties or representations made or agreed to be made in this Deed to Secure Debt and Security Agreement or in any other instrument evidencing or securing the Secured Indebtedness shall be breached by Grantor or Maker or shall prove to be false or materially misleading; or

(e)    Any lien or claim of lien for labor, material, taxes, or otherwise shall be filed against the Property and not be removed, bonded, or contested in accordance with the terms of Subsection 1.03(d) above within thirty (30) calendar days after the date of Grantor's receipt of actual notice of such filing; or

(f)    A levy shall be made under any process on, or a receiver be appointed for, the Property or any other property of Grantor or Maker and such levy not be removed or receiver dismissed within thirty (30) calendar days of date of process or appointment; or

12

BOOK **4294** PAGE  **232**

(g)    Grantor, Maker or any current or future guarantor of the Secured Indebtedness (hereinafter called a *"Guarantor"*) shall file a voluntary petition in bankruptcy, or any other petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other similar relief for debtors; or

(h)    Grantor, Maker or any Guarantor shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Grantor or of any Guarantor or of all or any part of the Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof; or

(i)    Grantor, Maker or any Guarantor shall make any general assignment for the benefit of creditors; or

(j)    Grantor, Maker or any Guarantor shall commence or have instituted against it the process of dissolution, liquidation, or both dissolution and liquidation; or

(k)    (i) There shall be filed a petition against Grantor, Maker or any Guarantor, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or (ii) there shall be filed a petition seeking the appointment of any trustee, receiver or liquidator of Grantor, Maker, or of any Guarantor, or of all or any substantial part of the Property, or of any or all of the income, rents, issues, profits or revenues thereof; or

(l)    There shall occur a breach of the covenants and provisions of Sections 1.15 or 1.17 hereof; or

(m)    Grantor shall, without the prior written consent of Grantee, voluntarily or by operation of law, transfer, convey or assign the Property, or any part of, or interest in, the Property as security for an indebtedness other than for the indebtedness secured hereby; or

(n)    Grantor and/or Guarantors shall, without the prior written consent of Grantee, sell or otherwise dispose of all or substantially all of its respective assets.

Any periods of grace, cure or notice provided for the benefit of Grantor in this Security Deed and in the other Loan Documents shall run concurrently and not consecutively.

2.02    Acceleration of Maturity.  If an Event of Default shall have occurred hereunder, then the whole unpaid principal sum of the Secured Indebtedness and all interest and other charges accrued and accruing under the Note, this Security Deed and the other Loan Documents shall, at the option of Grantee, become due and payable without notice or demand by Grantee, except as set forth herein, time being of the essence of this Deed to Secure Debt and Security Agreement and of the Secured Indebtedness, and thereafter such Event of Default may be cured only by the payment of such entire principal balance and all other sums due and payable hereunder and thereunder; and no omission on the part of Grantee to exercise such option when entitled so to do shall be considered as a waiver of such right.

2.03    Right to Enter and Take Possession.

(a)    If any Event of Default shall have occurred and be continuing, Grantor, upon demand of Grantee, shall forthwith surrender to Grantee the actual possession of the Property and, to the extent permitted by law, Grantee itself, or by such officers or agents as it may appoint, may enter and take possession of the Property and may exclude Grantor and Grantor's agents and employees wholly therefrom.

13

BOOK **4294** PAGE **233**

(b)    If Grantor shall for any reason fail to surrender or deliver the Property or any part thereof after such demand by Grantee, Grantee may obtain a judgment or decree conferring upon Grantee the right to immediate possession or requiring Grantor to deliver immediate possession of the Property to Grantee; and Grantor hereby specifically consents to the entry of such judgment or decree. Grantor shall pay to Grantee, upon demand, all expenses of obtaining such judgment or decree, including compensation to Grantee, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

(c)    Upon every such entering and taking of possession, Grantee may hold, store, use, operate, manage, control, and maintain the Property and conduct the business thereof, and, from time to time, (i) make all necessary and proper repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Property insured; (iii) manage and operate the Property and exercise all the rights and powers of Grantor, in its name or otherwise, with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted Grantee; all as Grantee may from time to time determine to be to its best advantage; and Grantee may collect and receive all of the income, rents, profits, issues and revenues of the Property, including those past due as well as those accruing thereafter and, after deducting (aa) all expenses of taking, holding, managing and operating the Property (including compensation for the services of all persons employed for such purposes); (bb) the cost of all such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases, and acquisitions; (cc) the cost of such insurance; (dd) such taxes, assessments and other charges as Grantee may determine to pay; (ee) other proper charges upon the Property or any part thereof and (ff) the compensation and expenses of attorneys and agents of Grantee, shall apply the remainder of the money so received by Grantee to the payment of the Secured Indebtedness. Notwithstanding anything provided herein to the contrary, Grantee shall not be obligated to discharge or perform the duties of a landlord to any tenant or incur any liability as a result of any exercise by Grantee of its rights under this Deed to Secure Debt and Security Agreement, and Grantee shall be liable to account only for the rents, income, issues and profits actually received by Grantee.

(d)    For the purpose of carrying out the provisions of this Section 2.03, Grantor hereby constitutes and appoints Grantee the true and lawful agent and attorney in fact of Grantor to do and perform, from time to time, any and all actions necessary and incidental to such purpose and does, by these presents, ratify and confirm any and all actions of said attorney in fact in the Property.

(e)    In the event any such Event of Default by Grantor hereunder is cured and satisfied to the satisfaction of Grantee prior to any action taken to enforce the Security Deed pursuant to Section 2.05 below such that Grantee returns possession of the Property to Grantor, the right of Grantee to take possession from time to time pursuant to this Section 2.03 shall exist upon the occurrence of any subsequent Event of Default hereunder.

(f)    In the event that Grantor and Grantee have entered into a separate Assignment of Rents, or similarly styled agreement, the terms of such agreement shall control in case any terms or provisions thereof may contradict with this Section 2.03.

2.04    Receiver.    If an Event of Default shall have occurred hereunder, Grantee, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the occupancy or value of any security for the Secured Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Property and to collect and apply the rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Grantor shall pay unto Grantee upon demand all expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the provisions of this Section 2.04 and any such amounts paid by

BOOK 4294 PAGE 234

Grantor shall be added to the Secured Indebtedness and shall be secured by this Deed to Secure Debt and Security Agreement.

2.05    Enforcement.

(a)    If the Secured Indebtedness is not paid in full when the same shall become due, whether by acceleration or otherwise, Grantee, at its option, may sell the Property or any part of the Property at public sale or sales before the door of the courthouse of the county in which the Property or any part of the Property is situated, to the highest bidder for cash, in order to pay the Secured Indebtedness and all expenses of the sale and of all proceedings in connection therewith, including attorney's fees actually incurred after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county.  At any such public sale, Grantee may execute and deliver to the purchaser a conveyance of the Property or any part of the Property in fee simple, with full warranties of title, and to this end, Grantor hereby constitutes and appoints Grantee the agent and attorney-in-fact of Grantor to make such sale and conveyance, and thereby to divest Grantor of all right, title or equity that Grantor may have in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Grantor.  The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative of the other remedies provided hereby or by law for collection of the Secured Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Secured Indebtedness.  In the event of any sale under this Security Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Property may be sold as an entirety or in separate parcels and in such manner or order as Grantee in its sole discretion may elect, and if Grantee so elects, Grantee may sell the personal property covered by this Security Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust such powers, until the entire Property is sold or the Secured Indebtedness is paid in full.  If the Secured Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of lease or other security instruments, Grantee may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Grantee may determine.

(b)    If an Event of Default shall have occurred, Grantee may, in addition to and not in abrogation of the rights covered under subsection (a) of this Section 2.05, either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term, covenant, condition or agreement of this Security Deed or any other right, and (ii) to pursue any other remedy available to it, all as Grantee shall determine most effectual for such purposes.

2.06    Application of Proceeds of Sale.  In the event of a foreclosure or a sale of all or any portion of the Property under the power herein granted, the proceeds of said sale shall be applied first to the payment of expenses of such sale and of all proceedings in connection therewith, including attorney's fees actually incurred, to insurance premiums, liens, assessments, taxes and charges, including utility charges advanced by Grantee, to all other advances made by Grantee pursuant to this Security Deed, then to the accrued interest on the principal indebtedness secured hereby, then to payment of the outstanding principal balance of the Secured Indebtedness; and the remainder, if any, shall be paid to Grantor, or to the person or entity lawfully entitled thereto.

15

BOOK **4294** PAGE **235**

2.07    Purchase by Grantee.  Upon any foreclosure sale or sale of all or any portion of the Property under the power herein granted, Grantee may bid for and purchase the Property and shall be entitled to apply all or any part of the Secured Indebtedness as a credit to the purchase price.

2.08    Grantor as Tenant Holding Over.  In the event of any such sale under the power herein granted, Grantor (if Grantor shall remain in possession) shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.09    Intentionally left blank.

2.10    Discontinuance of Proceedings and Restoration of the Parties.  In case Grantee shall have proceeded to enforce any right or remedy under this Deed to Secure Debt and Security Agreement by receiver, entry or otherwise, and such proceeding shall have been discontinued or abandoned for any reason or shall have been determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Grantee shall continue as if no such proceeding had been taken.

2.11    Remedies Cumulative.  No right, power or remedy conferred upon or reserved by Grantee by this Deed to Secure Debt and Security Agreement is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be jn addition to any other right, power and remedy given hereunder or now or hereafter existing at law or in equity or by statute.

2.12    Waiver of Appraisement, Valuation, Stay, Extension and Redemption Laws.  Grantor agrees, to the full extent permitted by law, that in case of an Event of Default hereunder, neither Grantor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, extension, exemption, homestead or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed to Secure Debt and Security Agreement, or the absolute sale of the Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchasers thereat, and Grantor, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets comprised in the security intended to be created hereby marshalled upon any foreclosure of the lien hereof.

2.13    Leases.  The failure of Grantee to make any tenants of the Property parties to any foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be, by Grantor a defense to any proceedings instituted by Grantee to collect the sums secured hereby.

2.14    Waiver.

(a)    No delay or omission of Grantee or of any holder of this Deed to Secure Debt and Security Agreement to exercise any right, power or remedy accruing upon any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default, or acquiescence therein; and every right, power and remedy given by this Deed to Secure Debt and Security Agreement to Grantee may be exercised from time to time and as often as may be deemed expedient by Grantee.  Failure on the part of Grantee to complain of any act or failure to act or to declare an Event of Default hereunder, irrespective of how long such failure continues, shall not constitute a waiver by Grantee of its rights hereunder or impair any rights, powers or remedies consequent on any breach or Event of Default by Grantor.  This Deed to Secure Debt and Security Agreement shall remain in full force and effect during any postponement or extension of the time of payment of the Secured Indebtedness or any part thereof.   .

16

BOOK **4294** PAGE **236**

(b)    If Grantee (i) grants forbearance or an extension of time for the payment of any sums secured hereby; (ii) takes other or additional security for the payment of any sums secured hereby; (iii) waives or does not exercise any right granted herein or in the Note; (iv) releases any part of the Property from this Deed to Secure Debt and Security Agreement or otherwise changes any of the terms, covenants, conditions or agreements of the Note or this Deed to Secure Debt and Security Agreement; (v) consents to the filing of any map, plat or replat affecting the Property; (vi) consents to the granting of any easement or other right affecting the Property; or (vii) makes or consents to any agreement subordinating the lien hereof, any such act or omission shall not release, discharge, modify, change or affect the original liability under the Note, this Deed to Secure Debt and Security Agreement or any other obligation of Grantor or any subsequent purchaser of the Property or any part thereof, or any maker, co-signer, endorser, surety or guarantor; nor shall any such act or omission preclude Grantee from exercising any right, power or privilege herein granted or intended to be granted in the event of any Event of Default then made or of any subsequent Event of Default; nor, except as otherwise expressly provided in an instrument or instruments executed by Grantee, shall the conveyance and lien of this Deed to Secure Debt and Security Agreement be altered thereby. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Property, Grantee, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Property or the Secured Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing or discharging any liabilities, obligations or undertakings.

(c)    GRANTOR DOES HEREBY EXPRESSLY WAIVE ANY AND ALL BENEFITS GRANTOR MAY HAVE UNDER O.C.G.A. §44-14-85 TO CLAIM OR ASSERT THAT THE SECURED INDEBTEDNESS HAS BEEN REINSTATED IN ACCORDANCE WITH ITS TERMS FOLLOWING THE WITHDRAWAL OF ANY FORECLOSURE PROCEEDING BY LENDER, AND ACKNOWLEDGES AND AGREES THAT REINSTATEMENT SHALL OCCUR ONLY UPON WRITTEN AGREEMENT OF LENDER.

2.15    <u>Suits to Protect the Property</u>.  Grantee shall have power (a) to institute and maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Property by any acts which may be unlawful or any violation of this Deed to Secure Debt and Security Agreement, (b) to preserve or protect its interest in the Property and in the rents, issues, profits and revenues arising therefrom, and (c) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Grantee; provided, however, Grantee shall not institute or maintain any such suits or proceedings against parties other than Grantor unless and until Grantee shall have first made upon Grantor such request so to do as shall then be reasonable under the circumstances, and Grantor shall have thereupon failed either to institute and maintain such suit or to otherwise cure or correct any such matters or circumstances.

2.16    <u>Grantee May File Proofs of Claim</u>.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Grantor, its creditors or its property, Grantee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Grantee allowed in such proceedings for the entire amount due and payable by Grantor under this Deed to Secure Debt and Security Agreement at the date of the institution of such proceedings and for any additional amount which may become due and payable by Grantor hereunder after such date.

2.17    <u>WAIVER OF GRANTOR'S RIGHTS</u>.  BY EXECUTION OF THIS SECURITY DEED, GRANTOR EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF GRANTEE TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER INDEBTEDNESS AND

BOOK **4 2 9 4** PAGE **237**

THE POWER OF ATTORNEY GIVEN HEREIN TO GRANTEE TO SELL THE PROPERTY BY NON-JUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS OF THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS SECURITY DEED AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALLING, FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; AND (C) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION AND THAT THIS SECURITY DEED IS VALID AND ENFORCEABLE BY GRANTEE AGAINST GRANTOR IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

ARTICLE 3

3.01    <u>Successors and Assigns Included in Parties</u>.  Whenever in this Deed to Secure Debt and Security Agreement one of the parties hereto is named or referred to, the legal representatives, successors and permitted assigns of such parties shall be included and all covenants and agreements contained in this indenture by or on behalf of Grantor and by or on behalf of Grantee shall bind and inure to the benefit of their respective heirs, executors, legal representatives, successors and permitted assigns, whether so expressed or not.

3.02    <u>Headings</u>.  The headings of the sections, paragraphs and subdivisions of this Deed to Secure Debt and Security Agreement are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

3.03    <u>Invalid Provisions to Affect No Others</u>.  If fulfillment of any provision hereof or any transaction related hereto or to the Note, at the time performance of such provisions shall be due, shall involve transcending the limit of validity prescribed by law, then <u>ipso facto</u>, the obligation to be fulfilled shall be reduced to the limit of such validity; in no event and under no circumstances whatsoever shall Grantor be charged more than the highest lawful rate of interest permitted under applicable law; if any clause or provision herein contained operates or would prospectively operate to invalidate or impair the enforceability of this Deed to Secure Debt and Security Agreement in whole or in part, then such clause or provision only shall be held for naught, as though not herein contained, and the remainder of this Deed to Secure Debt and Security Agreement shall remain operative and in full force and effect, and shall be enforced to the greatest extent permitted by law.

3.04    <u>Number and Gender</u>.  Whenever the singular or plural number, masculine or feminine or neuter gender is used herein, it shall equally include the other.

3.05    <u>Notices</u>.  Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Deed to Secure Debt and Security Agreement shall be in writing, signed by or on behalf of the party giving the same, and shall be delivered personally, by recognized overnight courier service, or, if mailed, sent by certified United States Mail, postage prepaid, return receipt requested, to the other party at the address of such other party set forth below or at such other address within the continental United States of America as such other party may designate by notice

18

BOOK 4 2 9 4 PAGE  2 3 8

given in accordance herewith; provided further that no notice of change of address shall be effective until the date of receipt thereof. The effective date of such notice shall be the sooner to occur of the date of actual receipt, regardless of the method of delivery, or the date which is three (3) business days after the date on which the notice is postmarked by the United States Postal Service. Delivery to a party or to any officer, partner, agent or employee of such party at the designated address shall constitute effective delivery for purposes hereof. Rejection or other refusal to claim or accept or inability to deliver because of changed address of which no notice was given as prescribed herein shall not affect the effective date of any such notice, election or demand sent as aforesaid. Any such notice, demand, or request shall be addressed as follows:

| | |
|---|---|
| If to Grantee: | BinaNat Capital, LLC<br>2204 Sawgrass Village Drive<br>Ponte Vedra Beach, FL 32082<br>Attn: Robert Storm, President |
| with a copy to: | Menden Freiman, LLP<br>5565 Glenridge Connector NE, Suite 850<br>Atlanta, Georgia 30342<br>Attn:   Nathan T. Johns, Esq. |
| If to Grantor: | ARINAT HOLDINGS, LLC<br>2204 Sawgrass Village Drive<br>Ponte Vedra Beach, Florida 32082<br>Attn:   Robert Storm |

### ARTICLE 4

4.01    Governing Law, Consent to Jurisdiction.    This Deed to Secure Debt and Security Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Georgia, without reference to the application of the choice of law principles. Grantor hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Deed to Secure Debt and Security Agreement may be instituted in the Superior Court of any County in the State of Georgia, or in any United States District Court in Georgia, or in such other appropriate court and venue as Grantee may choose in its sole discretion. Grantor consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which Grantor may now or hereafter have in any such legal action or proceedings.

4.02    Time of Essence.    Time is of the essence in the performance of all obligations hereunder.

4.03    Assignment.    This Deed to Secure Debt and Security Agreement is assignable by Grantee and any assignment hereof by Grantee shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Grantee.

4.04    Replacement of Note.    Upon receipt of evidence reasonably satisfactory to Grantor of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Grantor or, in the case of any such mutilation, upon surrender of the Note, Grantor shall sign in lieu thereof a new note, dated the date to which interest has been paid on the lost, stolen, destroyed or mutilated Note and otherwise of like tenor, with appropriate variations.

BOOK **4 2 9 4** PAGE **239**

4.05   Patriot Act.  Grantor warrants, represents and covenants that neither Grantor nor any Obligor nor any of its respective affiliated entities is or will be an entity or person (i) that is listed in the Annex to, or is otherwise subject to the provisions of, Executive Order 13224 issued on September 24, 2001 ("*EO13224*"); (ii) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("*OFAC*") most current list of "*Specifically Designated National and Blocked Persons*") (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, http:www.treas.gov/ofac/t11sdn.pdf); (iii) who commits, threatened to commit or supports "terrorism", as that term is defined in EO 13224, or (iv) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in subpart {i} – {iv} above are herein referred to as "*Prohibited Person*").  Grantor covenants and agrees that neither Grantor, nor any Obligor nor any of their respective affiliated entities will (i) conduct any business, nor engage in any transaction or dealing, with any "*Prohibited Person*", including, but not limited to, the making or receiving of any contribution of funds, goods, or services to or for the benefit of a Prohibited Person, or (ii) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224, Grantor further covenants and agrees to deliver (from time to time) to Lender any such certification or other evidence as may be requested by Lender in its sole and absolute discretion, confirming that (i) neither Grantor or nor any Obligator is a Prohibited Person and (ii) neither Grantor nor any Obligator has engaged in any business, transaction or dealings with a Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person.

4.06   Attorneys' Fees.  Whenever in any of the Loan Documents Grantor is obligated to pay the legal fees of Grantee's counsel, such fees shall be based upon reasonable attorneys' fees of fifteen percent (15%) of the outstanding principal and interest.

IN WITNESS WHEREOF, Grantor has executed this Deed to Secure Debt and Security Agreement under seal as of the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered
in the presence of:

**ARINAT HOLDINGS, LLC,**
a Georgia limited liability company

_____
Unofficial Witness

By: _____ (SEAL)
Robert Storm, Manager

_____
Notary Public
My Commission Expires:

[NOTARY SEAL]

20

BOOK 4294 PAGE 240

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

All that tract or parcel of land lying and being in Land Lot 204 of the 2nd District, Spalding, County, Georgia, being Lot 3, Hunts Mill Subdivision, a/k/a Hunt's Mill Subdivision as per plat recorded in Plat Book 26, Pages 579 and 580, Spalding County, Georgia Records, which plat is hereby referred to and incorporated herein by reference.

BOOK **4294** PAGE **241**

### EXHIBIT "B"

### PERMITTED ENCUMBRANCES

1. All taxes for the year 2018, a lien not yet due and payable.
2. The exact location of boundary lines, unrecorded easements, possible encroachments and other fact or conditions which would be disclosed by an accurate survey and inspection of the property; and rights, if any, of persons who may be in possession under claims not appearing of record.
3. All matters shown on that certain plat recorded in Plat Book 19, Page 241, SPALDING County, GA Records.
4. Right of Way Deed from Crescent Construction Company, Inc. to Spalding County, dated 4/3/2017, filed for record on 4/21/2017, and recorded in Deed Book 4159, Page 108, SPALDING County, GA Records.
5. All matters shown on that certain plat recorded in Plat Book 26, Pages 579 and 580, SPALDING County, GA Records.

Exhibit 11

**2020145050  DEED BOOK 28704 Pg 502**
**Filed and Recorded: 10/7/2020 1:06:00 PM**
**Recording Fee: $25.00**
**Prepared By:**
**2209073924**

After recording return to:
Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE, Suite 850
Atlanta, Georgia 30342

Please Cross Reference:

Deed to Secure Debt & Security Agreement
at Deed Book 26735 Page 181,
DeKalb County, Georgia Records

Tax Parcel ID:  15-170-11-033

STATE OF GEORGIA:
COUNTY OF DEKALB:

### DEED UNDER POWER OF SALE

THIS INDENTURE, made and entered into as of the 6th day of October, 2020, by and between **BLITZ 7 HOLDINGS, LLC,** a Delaware limited liability company (hereinafter referred to as "Borrower"), acting through **BINANAT CAPITAL, LLC,** a Georgia limited liability company, as Borrower's duly appointed agent and attorney-in-fact (hereinafter referred to as "Lender"), as party of the first part, and **BINANAT CAPITAL, LLC,** a Georgia limited liability company (hereinafter referred to as "Purchaser") as party of the second part;

### W I T N E S S E T H:

WHEREAS, Borrower executed and delivered to Lender that certain Deed to Secure Debt and Security Agreement dated January 24, 2018, filed and recorded February 5, 2018 in Deed Book 26735, Page 181, Clerk of Superior Court of DeKalb County, Georgia records, (the "Security Deed") said Security Deed being given to secure a Promissory Note (the "Note") of even date as the Security Deed in the original principal amount of TWO HUNDRED NINETY THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($290,500.00); and

WHEREAS, default under the Note occurred and by reason of such default Lender elected, pursuant to the terms of the Security Deed and the Note, to declare the entire principal and interest immediately due and payable; and

WHEREAS, the entire indebtedness still being in default, Lender, on behalf of Borrower, and according to the terms of the Security Deed, did advertise said property for sale once a week for four weeks in a newspaper in Dekalb County, Georgia, where the Sheriff carried his advertisement, namely, *The Champion Newspaper*, said dates of publication being September 10, September 17, September 24 and October 1, 2020 and the advertisements in all respects having complied with the requirements of the power of sale in the aforesaid Security Deed and the laws of the State of Georgia governing such sales; and

**WHEREAS,** notice of the Borrower's right to cure said default was given to Borrower, with Borrower failing to cure said default, and notice of the initiation of proceedings to exercise the power of sale provided for in the Security Deed was duly given to Borrower by Lender no later than thirty (30) days prior to the date of foreclosure sale, in writing, and sent by certified mail, return receipt requested, consisting of a copy of the published legal advertisement of the sale and mailed as aforesaid, all in accordance with O.C.G.A. § 44-14-162.2; and

**WHEREAS,** the party of the second part on even date herewith acquired the after-described property by buying the property at a foreclosure sale conducted pursuant to power of sale in that certain Security Deed; and

**WHEREAS,** Lender, as attorney-in-fact for Borrower, did expose said property for sale at public outcry to the highest bidder for cash on Tuesday, October 6, 2020, within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb County before the Courthouse door in Decatur, Georgia, in said county, at which said party of the second part was the highest bidder at and for the sum of Three Hundred Eighty-Four Thousand Five Hundred Seventy-Three and 48/100 Dollars ($384,573.48) cash, and said property was then and there knocked off and sold for said sum.

**NOW THEREFORE,** for and in consideration of the foregoing premises and said sum of money and by virtue of the exercise of the power of sale contained in the Security Deed, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs and assigns the property described on **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property").

**TOGETHER WITH,** all and singular the rights, members and appurtenances thereto appertaining; also, all the estate of Borrower's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

**TO HAVE AND TO HOLD** the said Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of said party of the second part, its representatives, heirs, successors, successors-in-title and assigns, IN FEE SIMPLE forever, in as full and ample a manner as Borrower or Borrower's representatives, heirs, successors or assigns did hold and enjoy the same.

**[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]**

2

**IN WITNESS WHEREOF,** Lender, acting as attorney-in-fact for Borrower has executed this instrument under seal and delivered same as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

**BINANAT CAPITAL, LLC,** a Georgia limited liability company, as Attorney-in-Fact for **BLITZ 7 HOLDINGS, LLC,** a Delaware limited liability company

_____
Witness

By: _____(SEAL)
    Thomas W. Cox, as Attorney for BinaNat
    Capital, LLC

_____
Notary Public
My commission expires

*(NOTARY SEAL)*

3

Exhibit 11

2020145050  DEED BOOK 28704 Pg 505
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## EXHIBIT "A"

### Legal Description

All that tract or parcel of land lying and being in Land Lot 170 of the 15th District, DeKalb County, Georgia, as per survey for Alice W. Blalock, dated August 29, 1974 by Fred E. Pitts, Registered Land Surveyor, and being more particularly described as follows:

BEGINNING at an iron pin on the northeasterly side of Cannon Street 200.1 feet southeasterly from the intersection formed by the northeasterly side of Cannon Street and the southerly side of Hillside Drive; thence in an easterly direction as distance of 173.1 feet to an iron pin; thence in a southeasterly direction a distance of 56.4 feet to an iron pin; thence in a southwesterly direction a distance of 152.4 feet to an iron pin situated on the northeasterly side of Cannon Street; thence in a northwesterly direction along the northeasterly side of Cannon Street a distance of 93.0 feet to an iron pin at the point of beginning.

2021086982  DEED BOOK 29373 Pg 710
Filed and Recorded: 5/17/2021 12:23:00 PM
Recording Fee: $25.00
Real Estate Transfer Tax: $56.20
Prepared By:
2209073924

Tax Parcel ID:  15-170-11-033

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

STATE OF GEORGIA
COUNTY OF FULTON

### LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 6th day of May, 2021, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

### W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as 1910 Cannon Street, Decatur, Georgia 30032 and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"), SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

This is the same property conveyed to Grantor by Deed Under Power of Sale dated October 6, 2020 and recorded October 7, 2020 in the deed records of DeKalb County Superior Court in Deed Book 28704 at Pages 502-505.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this ___11ᵗʰ___ day of
May, 2021, in the presence of:

_____
Unofficial Witness

BINANAT CAPITAL, LLC,
a Georgia limited liability company

By: _____ (SEAL)
Robert Storm, its President

_____
Notary Public, State of Georgia at Large

My commission expires:   10/22/2021

SARAH E SKEETE
Notary Public - State of Florida
Commission # GG 153593
My Comm. Expires Oct 22, 2021

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

Exhibit 12
2021086982  DEED BOOK 29373 Pg 713
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 170 of the 15th District, DeKalb County, Georgia, as per survey for Alice W. Blalock, dated August 29, 1974 by Fred E. Pitts, Registered Land Surveyor, and being more particularly described as follows:

BEGINNING at an iron pin on the northeasterly side of Cannon Street 200.1 feet southeasterly from the intersection formed by the northeasterly side of Cannon Street and the southerly side of Hillside Drive; thence in an easterly direction as distance of 173.1 feet to an iron pin; thence in a southeasterly direction a distance of 56.4 feet to an iron pin; thence in a southwesterly direction a distance of 152.4 feet to an iron pin situated on the northeasterly side of Cannon Street; thence in a northwesterly direction along the northeasterly side of Cannon Street a distance of 93.0 feet to an iron pin at the point of beginning.

Deed Book 62048 Page 183
Filed and Recorded 08/06/2020 12:51:00 PM
2020-0254067
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2209073924
7067927936

After recording return to:                                          **Please Cross Reference:**
**Nathan T. Johns, Esq.**
**MENDENFREIMAN LLP**
**5565 Glenridge Connector NE, Suite 850**              **Deed to Secure Debt & Security Agreement**
**Atlanta, Georgia 30342**                                       **at Deed Book 60010 Page 606,**
                                                                        **Fulton County, Georgia Records**

**Tax Parcel ID:  14-009200010165**

**STATE OF GEORGIA:**
**COUNTY OF FULTON:**

### DEED UNDER POWER OF SALE

        **THIS INDENTURE,** made and entered into as of the 4th day of August, 2020, by and between **GET GREEN INTERNATIONAL, LLC,** a Georgia limited liability company (hereinafter referred to as "Borrower"), acting through **BINANAT CAPITAL, LLC,** a Georgia limited liability company, as Borrower's duly appointed agent and attorney-in-fact (hereinafter referred to as "Lender"), as party of the first part, and **BINANAT CAPITA, LLC,** a Georgia limited liability company (hereinafter referred to as "Purchaser") as party of the second part;

### WITNESSETH:

        **WHEREAS,** Borrower executed and delivered to Lender that certain Deed to Secure Debt and Security Agreement dated May 6, 2019, filed and recorded May 10, 2019 in Deed Book 60010, Page 606, Clerk of Superior Court of Fulton County, Georgia records, (the "Security Deed") said Security Deed being given to secure a Promissory Note (the "Note") of even date as the Security Deed in the original principal amount of ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00); and

        **WHEREAS,** default under the Note occurred and by reason of such default Lender elected, pursuant to the terms of the Security Deed and the Note, to declare the entire principal and interest immediately due and payable; and

        **WHEREAS,** the entire indebtedness still being in default, Lender, on behalf of Borrower, and according to the terms of the Security Deed, did advertise said property for sale once a week for four weeks in a newspaper in Fulton County, Georgia, where the Sheriff carried his advertisement, namely, *The Daily Report,* said dates of publication being July 9, July 16, July 23 and July 30, 2020 and the advertisements in all respects having complied with the requirements of the power of sale in the aforesaid Security Deed and the laws of the State of Georgia governing such sales; and

**WHEREAS,** notice of the Borrower's right to cure said default was given to Borrower, with Borrower failing to cure said default, and notice of the initiation of proceedings to exercise the power of sale provided for in the Security Deed was duly given to Borrower by Lender no later than thirty (30) days prior to the date of foreclosure sale, in writing, and sent by certified mail, return receipt requested, consisting of a copy of the published legal advertisement of the sale and mailed as aforesaid, all in accordance with O.C.G.A. § 44-14-162.2; and

**WHEREAS,** the party of the second part on even date herewith acquired the after-described property by buying the property at a foreclosure sale conducted pursuant to power of sale in that certain Security Deed; and

**WHEREAS,** Lender, as attorney-in-fact for Borrower, did expose said property for sale at public outcry to the highest bidder for cash on Tuesday, August 4, 2020, within the legal hours of sale at the usual place for conducting Sheriff's sales in Fulton County before the Courthouse door in Atlanta, Georgia, in said county, at which said party of the second part was the highest bidder at and for the sum of One Hundred Twenty-Seven Thousand Seven Hundred Seventy-Five and 00/100 Dollars ($127,775.00) cash, and said property was then and there knocked off and sold for said sum.

**NOW THEREFORE,** for and in consideration of the foregoing premises and said sum of money and by virtue of the exercise of the power of sale contained in the Security Deed, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs and assigns the property described on **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property").

**TOGETHER WITH,** all and singular the rights, members and appurtenances thereto appertaining; also, all the estate of Borrower's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

**TO HAVE AND TO HOLD** the said Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of said party of the second part, its representatives, heirs, successors, successors-in-title and assigns, IN FEE SIMPLE forever, in as full and ample a manner as Borrower or Borrower's representatives, heirs, successors or assigns did hold and enjoy the same.

### [THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

Exhibit 13
Deed Book 62048 Page 185

IN WITNESS WHEREOF, Lender, acting as attorney-in-fact for Borrower has executed this instrument under seal and delivered same as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
Notary Public
My commission expires

*(NOTARY SEAL)*

BINANAT CAPITAL, LLC, a Georgia limited liability company, as Attorney-in-Fact for GET GREEN INTERNATIONAL, LLC, a Georgia limited liability company

By: _____ (SEAL)
    Thomas W. Cox, as Attorney for BinaNat
    Capital, LLC

3

Exhibit 13

Deed Book 62048 Page 186
Cathelene Robinson
Clerk of Superior Court

## EXHIBIT "A"

**Legal Description**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 92 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA AND BEING LOT 17, BLOCK B, UNIT I OF THE J.B. ALEXANDER SUBDIVISION AS PER PLAT RECORDED IN PLAT BOOK 27, PAGE 31, BEING IMPROVED PROPERTY KNOWN AS 508 POMONA DRIVE, S.W., ATLANTA, GEORGIA 30315, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING HOUSES IN THE CITY OF ATLANTA, FULTON COUNTY, GEORGIA.

Tax ID#: 14-0092-0001-016-5

4

Deed Book 63180 Page 1
Filed and Recorded 02/16/2021 02:57:00 PM
2021-0039175
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2209073924

**Tax Parcel ID:   14-009200010165**

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

STATE OF GEORGIA
COUNTY OF FULTON

<h2 align="center">L I M I T E D   W A R R A N T Y   D E E D</h2>

THIS INDENTURE, made as of the 16th day of February, 2021, between BINANAT
CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called
"Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part,
hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs,
personal representatives, successors and assigns where the context requires or permits).

<h3 align="center">W I T N E S S E T H:</h3>

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and
other good and valuable consideration, in hand paid at and before the sealing and delivery of these
presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has
granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant,
bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the
tract or parcel of land commonly known as 508 Pomona Drive SW, Atlanta, Georgia 30315, and
more particularly described on Exhibit "A", attached hereto and incorporated herein by this express
reference, TOGETHER WITH every contingent remainder and right of reversion, and together with
all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements,
shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging,
relating or appertaining thereto (collectively the "Property"),  SUBJECT TO only to all matters
of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

This is the same property conveyed to Grantor by Deed Under Power of Sale dated August 4, 2020 and recorded August 6, 2020 in the deed records of Fulton County Superior Court in Deed Book 62048 at Pages 183-186.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

Exhibit 14

Deed Book 63180 Page 3

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this 16ᵗʰ day of February, 2021, in the presence of:

BINANAT CAPITAL, LLC, a Georgia limited liability company

_____
Unofficial Witness

By: _____ (SEAL)
Robert Storm, its President

_____
Notary Public, State of Georgia at Large

My commission expires:

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

Exhibit 14

Deed Book 63180 Page 4
CATHELENE ROBINSON
Clerk of Superior Court

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 92 OF THE 14TH DISTRICT OF FULTON COUNTY, GEORGIA AND BEING LOT 17, BLOCK B, UNIT I OF THE J.B. ALEXANDER SUBDIVISION AS PER PLAT RECORDED IN PLAT BOOK 27, PAGE 31, BEING IMPROVED PROPERTY KNOWN AS 508 POMONA DRIVE, S.W., ATLANTA, GEORGIA 30315, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING HOUSES IN THE CITY OF ATLANTA, FULTON COUNTY, GEORGIA.

Tax ID#: 14-0092-0001-016-5

Deed Book 60716 Pg 127
Filed and Recorded Oct-29-2019 08:41am
2019-0359816
Real Estate Transfer Tax $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

After recording, return to:                    Cross reference to:
Macey, Wilensky & Hennings, LLP                Deed Book 59731, Page 384
Attn: Todd H. Surden.                          Fulton County, Georgia Records
5500 Interstate North Parkway, Suite 435
Atlanta, GA 30328
File No. 219

## DEED UNDER POWER OF SALE

STATE OF GEORGIA
COUNTY OF FULTON

THIS INDENTURE, made and entered into this 3rd day of September, 2019, by CHADWORTH HOMES, INC., acting by and through his duly appointed agent and attorney-in-fact, Binanat Capital, LLC, as Party in the First Part, and BINANAT CAPITAL, LLC, as Party in the Second Part:

WITNESSETH: That, whereas, heretofore, Chadworth Homes, Inc., on February 14, 2019, executed and delivered a Deed to Secure Debt and Security Agreement in favor of Binanat Capital, LLC, recorded in Book 59713, Page 384, Fulton County, Georgia Records ("Security Deed"), conveying the Property (as hereinafter described) to secure payment of a Promissory Note of even date in the original principal amount of Three Hundred Eight Thousand, Seven Hundred Fifty and No/100 Dollars ($308,750.00) ("Note");

WHEREAS, default under the terms of the Note occurred, and by reason of said default, Binanat Capital, LLC, elected, pursuant to the terms of the Note and Security Deed, to declare the entire indebtedness evidenced by the Note immediately due and payable;

WHEREAS, Binanat Capital, LLC, as attorney-in-fact for Chadworth Homes, Inc., as aforesaid, according to the terms of the Security Deed, did expose the Property (as hereinafter described) for public sale to the highest and best bidder for cash on the first Tuesday in September, 2019, within the legal hours of sale before the Courthouse door in Fulton County, Georgia, after first advertising said sale by a notice published in the *Daily Report*, the official legal organ for Fulton County, Georgia, once per week for four weeks immediately preceding

Deed Book 60716 Pg 128

said sale; providing notice of the foreclosure sale to Chadworth Homes, Inc. as required by Georgia law and also in the form of a copy of the notice of sale submitted to the publisher at least thirty (30) days prior to the foreclosure sale occurring on September 3, 2019; and otherwise complying with the terms of the Security Deed and said advertising; and

WHEREAS, at the public sale, Binanat Capital, LLC, being the highest and best bidder for Two Hundred Ninety-Five Thousand and No/100 Dollars ($295,000.00).

NOW, THEREFORE, in consideration of the premises and said sum of $295,000.00, cash in hand paid, the receipt of which is hereby acknowledged, Chadworth Homes, Inc., acting by and through its duly appointed agent and attorney-in-fact, Binanat Capital, LLC, does hereby sell, grant, bargain, transfer, and convey unto Binanat Capital, LLC, its successors and assigns, the following described property, to-wit:

All that tract or parcel of land lying and being in Land Lot 55 of the 14th District of Fulton County, Georgia, and being the West half of Lot 17 in (Block D), according to plat recorded at Deed Book X-3, Page 456 1/2 and being more particularly described as follows:

Beginning at a point on the Southerly side of Haygood Avenue one-hundred (100) feet Easterly from the Southeasterly corner of Haygood and Fern Avenue; running thence Easterly along the South side of Haygood Avenue twenty five (25); thence Southerly one hundred (100) feet to a ten (10) foot alley, thence West along the North Side of said alley twenty five (25) feet; thence North one hundred (100) feet to the Southerly side of Haygood Avenue and the point of beginning.

(the "Property"). The Property being commonly known as 101 Haygood Avenue SE, Atlanta, Fulton County, GA 30315.

Together with all fixtures and other personal property conveyed by the Security Deed.

Together with all and singular the rights, members, and appurtenances thereto appertaining; also, all the estate, right, title, interest, claim, or demand of Chadworth Homes, Inc., its successors, representatives, and assigns, legal, equitable, or otherwise whatsoever, in and to the same.

The Property is conveyed subject to any outstanding taxes or assessments which may be liens against the Property, any matters disclosed by survey and inspection, any liens, encumbrances, restrictions, covenants, zoning ordinances and any matters of record superior to the Security Deed.

TO HAVE AND TO HOLD the said bargained premises, together with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in any wise appertaining, to the only proper use, benefit and behoof of Binanat Capital, LLC, the said party of the Second Part, its successors and assigns, forever, in FEE SIMPLE.

Deed Book 60716 Pg 129
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

IN WITNESS WHEREOF, the said Party in the First Part has hereunto affixed its hand and seal, the day and year first above written.

BINANAT CAPITAL, LLC, as-attorney-in-fact for Chadworth Homes, Inc.

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

By: _____ (SEAL)
Robert Storm, its President

_____
Notary Public
My Commission Expires:

[NOTARY SEAL]

Deed Book 63576 Page 165   Exhibit 16
Filed and Recorded 04/15/2021 02:40:00 PM
2021-0158549
Real Estate Transfer Tax $83.40
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2209073924

Tax Parcel ID:   14-0055-0008-003-1

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

STATE OF GEORGIA
COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 8th day of April, 2021, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

## W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as 101 Haygood Avenue SE, Atlanta, Georgia 30315, and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"),  SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

Deed Book 63576 Page 166

This is the same property conveyed to Grantor by Deed Under Power of Sale dated September 3, 2019 and recorded October 29, 2019 in the deed records of Fulton County Superior Court in Deed Book 60716 at Pages 127-129.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

Exhibit 16

Deed Book 63576 Page 167

   IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

                                        **GRANTOR:**

Signed, sealed and delivered this 15th day of    BINANAT CAPITAL, LLC,
April, 2021, in the presence of:                           a Georgia limited liability company

_____           By:  _____ (SEAL)
Unofficial Witness                              Robert Storm, its President

_____
Notary Public, State of Georgia at Large

My commission expires: 07/31/21

NICHOLAS SUDIK
Notary Public – State of Florida
Commission # GG 129840
My Comm. Expires Jul 31, 2021

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

Exhibit 16

Deed Book 63576 Page 168
CATHELENE ROBINSON
Clerk of Superior Court

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 55 of the 14th District of Fulton County, Georgia, and being the West half of Lot 17 in (Block D), according to plat recorded at Deed Book X-3, Page 456 1/2 and being more particularly described aa follows:

Beginning at a point on the Southerly side of Haygood Avenue one-hundred (100) feet Easterly from the Southeasterly corner of Haygood and Fern Avenue; running thence Easterly along the South side of Haygood Avenue twenty five (25); thence Southerly one hundred (100) feet to a ten (10) foot alley, thence West along the North Side of said alley twenty five (25) feet; thence North one hundred (100) feet to the Southerly side of Haygood Avenue and the point of beginning.

Type: GEORGIA LAND RECORDS
Recorded: 2/12/2020 5:16:00 PM
Fee Amt: $25.00  Page 1 of 3
Houston, Ga. Clerk Superior Court
Carolyn V. Sullivan Clerk

Participant ID: 2209073924

**BK 8484  PG 1 - 3**

After recording, return to:
MendenFreiman, LLP
Attn: Nathan Johns
5565 Glenridge Connector, Suite 850
Atlanta, GA 30342
File No. 3840.144

Cross reference to:
Deed Book 8020, Page 323
Houston County, Georgia Records

## DEED UNDER POWER OF SALE

STATE OF GEORGIA
COUNTY OF HOUSTON

THIS INDENTURE, made and entered into this 5th day of November, 2019, by WINDMILL CREEK PROPERTIES, LLC, acting by and through its duly appointed agent and attorney-in-fact, Binanat Capital, LLC, as Party in the First Part, and BINANAT CAPITAL, LLC, as Party in the Second Part:

WITNESSETH:   That, whereas, heretofore, on November 9, 2018, Windmill Creek Properties, LLC executed and delivered a Deed to Secure Debt and Security Agreement in favor of Binanat Capital, LLC, recorded in Book 8020, Page 323, Houston County, Georgia Records ("Security Deed"), conveying the Property (as hereinafter described) to secure payment of a promissory note of even date in the original principal amount of Six Hundred Seventy-Five Thousand and No/100 Dollars ($675,000.00) ("Note");

WHEREAS, default under the terms of the Note occurred, and by reason of said default, Binanat Capital, LLC, elected, pursuant to the terms of the Note and Security Deed, to declare the entire indebtedness evidenced by the Note immediately due and payable;

WHEREAS, Binanat Capital, LLC, as attorney-in-fact for Windmill Creek Properties, LLC, as aforesaid, according to the terms of the Security Deed, did expose the Property (as hereinafter described) for public sale to the highest and best bidder for cash on the first Tuesday in November, 2019, within the legal hours of sale before the Courthouse door in Houston County, Georgia, after first advertising said sale by a notice published in the *Houston Home Journal,* the official legal organ for Houston County, Georgia, once per week for four weeks

immediately preceding said sale; providing notice of the foreclosure sale to Windmill Creek Properties, LLC, as required by Georgia law and also in the form of a copy of the notice of sale submitted to the publisher at least thirty (30) days prior to the foreclosure sale occurring on November 5, 2019; and otherwise complying with the terms of the Security Deed and said advertising; and

WHEREAS, at the public sale, Binanat Capital, LLC, being the highest and best bidder for Three Hundred Sixty-Seven Thousand Four Hundred Twelve and 50/100 Dollars ($367,412.50).

NOW, THEREFORE, in consideration of the premises and said sum of $367,412.50 cash in hand paid, the receipt of which is hereby acknowledged, Windmill Creek Properties, LLC, acting by and through its duly appointed agent and attorney-in-fact, Binanat Capital, LLC, does hereby sell, grant, bargain, transfer, and convey unto Binanat Capital, LLC, its successors and assigns, the following described property, to-wit:

> All that tract or parcel of land lying and being in Land Lot 90 of the 13th Land District of Houston County, Georgia, being known and designated as Farm 9, consisting of 12.493 acres, shown on plat entitled "Old Southern Farms", prepared by Brent Cunningham & Co., Inc., dated February 1, 2013 and recorded in Plat Book 75, Page 12, Clerk's Office, Houston Superior Court. Said plat is incorporated herein for the purpose of a more complete and accurate description of the metes, bounds and dimensions of said property.

(the "Property"). The Property being commonly known as 134 Brown Hill Road, Elko, Georgia 31025.

Together with all fixtures and other personal property conveyed by the Security Deed.

Together with all and singular the rights, members, and appurtenances thereto appertaining; also, all the estate, right, title, interest, claim, or demand of Windmill Creek Properties, LLC, its successors, representatives, and assigns, legal, equitable, or otherwise whatsoever, in and to the same.

The Property is conveyed subject to any outstanding taxes or assessments which may be liens against the Property, any matters disclosed by survey and inspection, any liens, encumbrances, restrictions, covenants, zoning ordinances and any matters of record superior to the Security Deed.

TO HAVE AND TO HOLD the said bargained premises, together with all and singular the rights, members and appurtenances thereof, to the same being, belonging or in any wise appertaining, to the only proper use, benefit and behoof of Binanat Capital, LLC, the said party

of the Second Part, its successors and assigns, forever, in FEE SIMPLE.

IN WITNESS WHEREOF, the said Party in the First Part has hereunto affixed its hand and seal, the day and year first above written.

BINANAT CAPITAL, LLC, as-attorney-in-fact for Windmill Creek Properties, LLC, a Georgia limited liability company

Signed, sealed and delivered
in the presence of:

_____
Unofficial Witness

By: _____ (SEAL)

Robert Storm, as President

_____
Notary Public
My Commission Expires:

[NOTARY SEAL]

**Tax Parcel ID:   00092-0-059-000**

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

Type:  GEORGIA LAND RECORDS
Recorded: 4/21/2021 3:23:00 PM
Fee Amt:  $123.20  Page 1 of 4
Transfer Tax: $98.20
Houston, Ga. Clerk Superior Court
Carolyn V. Sullivan Superior Court Clerk

Participant ID: 2209073924

## BK 9115  PG 314 - 317

STATE OF GEORGIA
COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 16th day of April, 2021, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as 0 Brown Hill Road, Elko, Georgia 31025, and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"), SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

This is the same property conveyed to Grantor by Deed Under Power of Sale dated November 5, 2019 and recorded February 12, 2020 in the deed records of Houston County Superior Court in Deed Book 8484 at Pages 1-3.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this _____ day of
April, 2021, in the presence of:

BINANAT CAPITAL, LLC,
a Georgia limited liability company



Unofficial Witness

By: _____(SEAL)
Robert Storm, its President

Notary Public, State of ~~Georgia~~ at Large
                                    Florida

My commission expires: 12/12/2023

ANGELICA MONROSIER
Notary Public - State of Florida
Commission # GG 939461
My Comm. Expires Dec 12, 2023

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 90 of the 13th Land District of Houston County, Georgia, being known and designated as Farm 9, consisting of 12.493 acres, shown on plat entitled "Old Southern Farms", prepared by Brent Cunningham & Co., Inc., dated February 1, 2013 and recorded in Plat Book 75, Page 12, Clerk's Office, Houston Superior Court. Said plat is incorporated herein for the purpose of a more complete and accurate description of the metes, bounds and dimensions of said property.

2020480072 DEED BOOK 28900 Pg 423
Filed and Recorded: 12/15/2020 1:46:00 PM
Recording Fee: $25.00
Prepared By:
2209073924

**Tax Parcel ID:**   15-146-07-017; 15-146-07-018;
15-146-12-029; 15-146-12-030;
15-146-12-031

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREEMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

STATE OF GEORGIA
COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 9th day of December, 2020, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as 891, 891S and 895 Bouldercrest Drive, Atlanta, Georgia 30312 and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"), SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

This is the same property conveyed to Grantor by Deed Under Power of Sale dated December 1, 2020 and recorded December 2, 2020 in the deed records of DeKalb County Superior Court in Deed Book 28863 at Pages 24-28.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

IN WITNESS WHEREOF, Grantor[s] has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this 9th of December, 2020, in the presence of:

BINANAT CAPITAL, LLC,
a Georgia limited liability company

_____
Unofficial Witness

By:  _____ (SEAL)
    Robert Storm, its President

_____
Notary Public

My commission expires: 07/31/21

NICHOLAS SUDIK
Notary Public – State of Florida
Commission # GG 129840
My Comm. Expires Jul 31, 2021

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*



## EXHIBIT "A"

Tract 1:

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 146 of the 15th District of DeKalb County, Georgia, known as Lots 11 and 12 in Block D of the C.C. Murphy Subdivision as per plat of the same recorded in Plat Book 9, page 80, in the office of the Clerk, Superior Court of DeKalb County, Georgia, and being more particularly described as follows:

BEGINNING at an iron pin at the southwest corner of Lot 13 in Block D of said subdivision, said beginning point being located 382 feet south, as measured in a direct north and south line from Bouldercrest Drive; thence south along the rear line or Lots 33, 34 and 35 of said subdivision a distance of 50 feet to a stake; thence in a northeasterly direction along the dividing line between Lots 10 and 11 in said block a distance of 312 feet to Bouldercrest Drive; thence northwesterly along the southwesterly side of Bouldercrest Drive 50 feet to a stake; thence southwesterly along the dividing line between Lots 12 and 13 in said block a distance of 282 feet to the POINT OF BEGINNING, the same being improved property known as 891 Bouldercrest Drive (formerly East McConough Road) according to the present numbering of houses in the City of Atlanta, Georgia, and being a part of the same property conveyed by C.C. Murphy and Jack B. Stewart to Mrs. R.L. Swinney by Warranty Deed dated August 24, 1928 and recorded in Deed Book 289, page 88, DeKalb County, Georgia records.

Tract 2:

All that tract or parcel of land lying and being in land lot 146 of the 15th District of DeKalb County, Georgia, being Lots Nos. 9 and 10, Block "D" of the C. C. Murphy property, as shown on plat by C. M. Hughes, C. E. of August, 1928, recorded in Plat Book 9, page 80, DeKalb County Records, and being more particularly described as follows:

BEGINNING at a point on the southwest side of Bouldercrest Drive (formerly known as Boulder Crest Drive and as Flat Shoals Avenue) five hundred sixty four (564) feet southeasterly from the southeast corner of Cavanaugh Avenue and Bouldercrest Drive, and running thence southwesterly three hundred thirty five (335) feet to an iron pin; thence southerly fifty (50) feet to an iron pin; thence northeasterly three hundred seventy five (375) feet to Bouldercrest Drive; thence northwesterly along the southwest side of Bouldercrest Drive fifty (50) feet to the POINT OF BEGINNING; being known as 895 Bouldercrest Drive, according to the present system of numbering houses in the City of Atlanta, Georgia.

2020180076 DEED BOOK 28900 Pg 427
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Exhibit 19

Tract 3:

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 146 of the 15th District of DeKalb County, Georgia, known as Lots 13 and 14 in Block D of the C.C. Murphy Subdivision as per plat of the same recorded in Plat Book 9, page 80, in the office of the Clerk, Superior Court of DeKalb County, Georgia, and being more particularly described as follows:

BEGINNING at an iron pin at the southwest corner of Lot 13 in Block D of said subdivision, said beginning point being located 382 feet south, as measured in a direct north and south line from Bouldercrest Drive; thence north along the rear line of Lots 33 and 32 of said subdivision a distance of 50 feet to a stake; thence in a northeasterly direction along the dividing line between Lots 14 and 15 in said block a distance of 257 feet to Bouldercrest Drive; thence southeasterly along the southwesterly side of Bouldercrest Drive 50 feet to a stake; thence southwesterly along the dividing line between Lots 12 and 13 in said block a distance of 282 feet to the POINT OF BEGINNING, the same being improved property known as 891S Bouldercrest Drive (formerly East McConough Road) according to the present numbering of houses in the City of Atlanta, Georgia, and being a part of the same property conveyed by C.C. Murphy and Jack B. Stewart to Mrs. R.L. Swinney by Warranty Deed dated August 24, 1928 and recorded in Deed Book 289, page 88, DeKalb County, Georgia records.

Exhibit 20
2020113167  DEED BOOK 28533 Pg 666
Filed and Recorded: 8/6/2020 12:54:00 PM
Recording Fee: $25.00
Prepared By:
2209073924
7067927936

After recording return to:                                    **Please Cross Reference:**
**Nathan T. Johns, Esq.**
**MENDENFREIMAN LLP**
**5565 Glenridge Connector NE, Suite 850**          **Deed to Secure Debt & Security Agreement**
**Atlanta, Georgia 30342**                                      **at Deed Book 26926 Page 533,**
                                                                        **DeKalb County, Georgia Records**

Tax Parcel ID:  15 171 15 009

**STATE OF GEORGIA:**
**COUNTY OF FULTON:**

## DEED UNDER POWER OF SALE

      **THIS INDENTURE**, made and entered into as of the 4th day of August, 2020, by and between **TAYLOR BUILT HOMES, LLC,** a Georgia limited liability company (hereinafter referred to as "Borrower"), acting through **BINANAT CAPITAL, LLC,** a Georgia limited liability company, as Borrower's duly appointed agent and attorney-in-fact (hereinafter referred to as "Lender"), as party of the first part, and **BINANAT CAPITAL, LLC,** a Georgia limited liability company (hereinafter referred to as "Purchaser") as party of the second part;

### WITNESSETH:

      **WHEREAS,** Borrower executed and delivered to Lender that certain Deed to Secure Debt and Security Agreement dated April 19, 2018, filed and recorded May 22, 2018 in Deed Book 26926, Page 533, Clerk of Superior Court of DeKalb County, Georgia records, (the "Security Deed") said Security Deed being given to secure a Promissory Note (the "Note") of even date as the Security Deed in the original principal amount of TWO HUNDRED NINETY THOUSAND AND NO/100 DOLLARS ($290,000.00); and

      **WHEREAS,** default under the Note occurred and by reason of such default Lender elected, pursuant to the terms of the Security Deed and the Note, to declare the entire principal and interest immediately due and payable; and

      **WHEREAS,** the entire indebtedness still being in default, Lender, on behalf of Borrower, and according to the terms of the Security Deed, did advertise said property for sale once a week for four weeks in a newspaper in DeKalb County, Georgia, where the Sheriff carried his advertisement, namely, *The Champion,* said dates of publication being July 9, July 16, July 23 and July 30, 2020 and the advertisements in all respects having complied with the requirements of the power of sale in the aforesaid Security Deed and the laws of the State of Georgia governing such sales; and

**WHEREAS**, notice of the Borrower's right to cure said default was given to Borrower, with Borrower failing to cure said default, and notice of the initiation of proceedings to exercise the power of sale provided for in the Security Deed was duly given to Borrower by Lender no later than thirty (30) days prior to the date of foreclosure sale, in writing, and sent by certified mail, return receipt requested, consisting of a copy of the published legal advertisement of the sale and mailed as aforesaid, all in accordance with O.C.G.A. § 44-14-162.2; and

**WHEREAS**, the party of the second part on even date herewith acquired the after-described property by buying the property at a foreclosure sale conducted pursuant to power of sale in that certain Security Deed; and

**WHEREAS**, Lender, as attorney-in-fact for Borrower, did expose said property for sale at public outcry to the highest bidder for cash on Tuesday, August 4, 2020, within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb County before the Courthouse door in Decatur, Georgia, in said county, at which said party of the second part was the highest bidder at and for the sum of Two Hundred Eighty-One Thousand Eight Hundred Eighty and 33/100 Dollars ($281,880.33) cash, and said property was then and there knocked off and sold for said sum.

**NOW THEREFORE**, for and in consideration of the foregoing premises and said sum of money and by virtue of the exercise of the power of sale contained in the Security Deed, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs and assigns the property described on **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property").

**TOGETHER WITH**, all and singular the rights, members and appurtenances thereto appertaining; also, all the estate of Borrower's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

**TO HAVE AND TO HOLD** the said Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of said party of the second part, its representatives, heirs, successors, successors-in-title and assigns, IN FEE SIMPLE forever, in as full and ample a manner as Borrower or Borrower's representatives, heirs, successors or assigns did hold and enjoy the same.

**[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]**

2

Exhibit 20
2020113167  DEED BOOK 28533 Pg 668

**IN WITNESS WHEREOF**, Lender, acting as attorney-in-fact for Borrower has executed this instrument under seal and delivered same as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness



Notary Public
My commission expires

*(NOTARY SEAL)*

**BINANAT CAPITAL, LLC**, a Georgia limited liability company, as Attorney-in-Fact for **TAYLOR BUILT HOMES, LLC**, a Georgia limited liability company

By: _____ (SEAL)
Thomas W. Cox, as Attorney for BinaNat Capital, LLC

3

Exhibit 20
2020113167  DEED BOOK 28533 Pg 669
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**EXHIBIT "A"**

**Legal Description**

All that tract or parcel of land lying and being in Land Lot 171 of the 15th District, DeKalb County, Georgia, being Lot 8, Block FF, East Lake Terrace #3, according to Plat Book 8, page 9, DeKalb County, Georgia Records and being more particularly described as follows:

BEGINNING at an iron pin located on the East right of way line of Hooper Street 200 feet North as measured along the East right of way line of Hooper Street, from the point of intersection of the East right of way line of Hooper Street with the North right of way line of Mellville Avenue; thence running North along the East right of way line of Hooper Street 50 feet to an iron; thence running east forming an interior angle of 89 degrees 55 minutes with the East right of way line of Hooper Street and along the South line of Lot 9, said block and subdivision 150 feet to an iron pin; thence running South along the West line of Lot 25, said block and subdivision 50 feet to an iron pin; thence running West along the North line of Lot 7, said block and subdivision 150 feet to an iron pin located on the East right of way line of Hooper Street at the point of beginning; being improved property known as 1968 Hooper Street, according to the present system of numbering houses in the County of DeKalb, Georgia.

4

Exhibit 21

**2021086974  DEED BOOK 29373 Pg 663**
**Filed and Recorded: 5/17/2021 12:11:00 PM**
**Recording Fee: $25.00**
**Real Estate Transfer Tax: $36.90**
**Prepared By:**
**2209073924**

**Tax Parcel ID:  15 171 15 009**

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 850
Atlanta, Georgia 30342

STATE OF GEORGIA
COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 6th day of May, 2021, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

## W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as 1968 Hooper Street, Decatur, Georgia 30032 and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"), SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

This is the same property conveyed to Grantor by Deed Under Power of Sale dated August 4, 2020 and recorded August 6, 2020 in the deed records of DeKalb County Superior Court in Deed Book 28533 at Pages 666-669.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this _11th_ day of May, 2021, in the presence of:

_____
Unofficial Witness

BINANAT CAPITAL, LLC,
a Georgia limited liability company

By: _____ (SEAL)
Robert Storm, its President

_____
Notary Public, State of Georgia at Large

My commission expires: _10/22/2021_

SARAH E SKEETE
Notary Public – State of Florida
Commission # GG 153503
My Comm. Expires Oct 22, 2021

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

Exhibit 21

2021086974  DEED BOOK 29373 Pg 666
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 171 of the 15th District, DeKalb County, Georgia, being Lot 8, Block FF, East Lake Terrace #3, according to Plat Book 8, page 9, DeKalb County, Georgia Records and being more particularly described as follows:

BEGINNING at an iron pin located on the East right of way line of Hooper Street 200 feet North as measured along the East right of way line of Hooper Street, from the point of intersection of the East right of way line of Hooper Street with the North right of way line of Mellville Avenue; thence running North along the East right of way line of Hooper Street 50 feet to an iron; thence running east forming an interior angle of 89 degrees 55 minutes with the East right of way line of Hooper Street and along the South line of Lot 9, said block and subdivision 150 feet to an iron pin; thence running South along the West line of Lot 25, said block and subdivision 50 feet to an iron pin; thence running West along the North line of Lot 7, said block and subdivision 150 feet to an iron pin located on the East right of way line of Hooper Street at the point of beginning; being improved property known as 1968 Hooper Street, according to the present system of numbering houses in the County of DeKalb, Georgia.

2020113165  DEED BOOK 28533 Pg 662
**Filed and Recorded: 8/6/2020 12:56:00 PM**
**Recording Fee: $25.00**
**Prepared By:**
**2209073924**
**7067927936**

After recording return to:
**Nathan T. Johns, Esq.**
**MENDENFREIMAN LLP**
**5565 Glenridge Connector NE, Suite 850**
**Atlanta, Georgia 30342**

Please Cross Reference:

Deed to Secure Debt & Security Agreement
at Deed Book 26418 Page 40,
DeKalb County, Georgia Records

**Tax Parcel ID: 15 171 20 004**

**STATE OF GEORGIA:**
**COUNTY OF FULTON:**

## DEED UNDER POWER OF SALE

THIS INDENTURE, made and entered into as of the 4th day of August, 2020, by and between **BLITZ 7 HOLDINGS, LLC**, a Delaware limited liability company (hereinafter referred to as "Borrower"), acting through **BINANAT CAPITAL, LLC**, a Georgia limited liability company, as Borrower's duly appointed agent and attorney-in-fact (hereinafter referred to as "Lender"), as party of the first part, and **BINANAT CAPITAL, LLC**, a Georgia limited liability company (hereinafter referred to as "Purchaser") as party of the second part;

## W I T N E S S E T H:

WHEREAS, Borrower executed and delivered to Lender that certain Deed to Secure Debt and Security Agreement dated July 28, 2017, filed and recorded August 7, 2017 in Deed Book 26418, Page 40, Clerk of Superior Court of DeKalb County, Georgia records, (the "Security Deed") said Security Deed being given to secure a Promissory Note (the "Note") of even date as the Security Deed in the original principal amount of TWO HUNDRED FIFTY-FIVE THOUSAND AND NO/100 DOLLARS ($255,000.00); and

WHEREAS, default under the Note occurred and by reason of such default Lender elected, pursuant to the terms of the Security Deed and the Note, to declare the entire principal and interest immediately due and payable; and

WHEREAS, the entire indebtedness still being in default, Lender, on behalf of Borrower, and according to the terms of the Security Deed, did advertise said property for sale once a week for four weeks in a newspaper in DeKalb County, Georgia, where the Sheriff carried his advertisement, namely, *The Champion*, said dates of publication being July 9, July 16, July 23 and July 30, 2020 and the advertisements in all respects having complied with the requirements of the power of sale in the aforesaid Security Deed and the laws of the State of Georgia governing such sales; and

Exhibit 2
2020113165 DEED BOOK 28533 Pg 663

**WHEREAS**, notice of the Borrower's right to cure said default was given to Borrower, with Borrower failing to cure said default, and notice of the initiation of proceedings to exercise the power of sale provided for in the Security Deed was duly given to Borrower by Lender no later than thirty (30) days prior to the date of foreclosure sale, in writing, and sent by certified mail, return receipt requested, consisting of a copy of the published legal advertisement of the sale and mailed as aforesaid, all in accordance with O.C.G.A. § 44-14-162.2; and

**WHEREAS**, the party of the second part on even date herewith acquired the after-described property by buying the property at a foreclosure sale conducted pursuant to power of sale in that certain Security Deed; and

**WHEREAS**, Lender, as attorney-in-fact for Borrower, did expose said property for sale at public outcry to the highest bidder for cash on Tuesday, August 4, 2020, within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb County before the Courthouse door in Decatur, Georgia, in said county, at which said party of the second part was the highest bidder at and for the sum of Two Hundred Thirty-Eight Thousand Four Hundred Fifty and No/100 Dollars ($238,450.00) cash, and said property was then and there knocked off and sold for said sum.

**NOW THEREFORE**, for and in consideration of the foregoing premises and said sum of money and by virtue of the exercise of the power of sale contained in the Security Deed, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs and assigns the property described on **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property").

**TOGETHER WITH**, all and singular the rights, members and appurtenances thereto appertaining; also, all the estate of Borrower's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

**TO HAVE AND TO HOLD** the said Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of said party of the second part, its representatives, heirs, successors, successors-in-title and assigns, IN FEE SIMPLE forever, in as full and ample a manner as Borrower or Borrower's representatives, heirs, successors or assigns did hold and enjoy the same.

**[THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]**

2

IN WITNESS WHEREOF, Lender, acting as attorney-in-fact for Borrower has executed this instrument under seal and delivered same as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
Notary Public
My commission expires

*(NOTARY SEAL)*

BINANAT CAPITAL, LLC, a Georgia limited liability company, as Attorney-in-Fact for BLITZ 7 HOLDINGS, LLC, a Delaware limited liability company

By: _____(SEAL)
    Thomas W. Cox, as Attorney for BinaNat
    Capital, LLC

CINDY H LANDREAU
GWINNETT COUNTY, GEORGIA
MY COMMISSION EXPIRES
JULY 19, 2022
NOTARY PUBLIC

3

2020113165  DEED BOOK 28533 Pg 665
**Debra DeBerry**
**Clerk of Superior Court**
**DeKalb County, Georgia**

**EXHIBIT "A"**

**Legal Description**

All that tract or parcel of land lying and being in Land Lot 171 of the 15th District, DeKalb County, Georgia, being Lot 76, Block F, Buena Vista Subdivision, as per plat recorded in Plat Book 15, Page 32, DeKalb County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 538 Ashburton Avenue according to the present system of numbering property in DeKalb County, Georgia.

**Tax Parcel ID: 15-171-20-004**

2022031065    DEED BOOK  **30118** <sup>Pg</sup> **626**

Filed and Recorded:
**2/11/2022 12:32:14 PM**
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Real Estate Transfer Tax $0.00

PLEASE RETURN THIS RECORDED INSTRUMENT TO:

Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE
Suite 650
Atlanta, Georgia 30342

**W** Windward Law Group
12600 Deerfield Parkway
Suite125
Alpharetta, GA 30004

STATE OF GEORGIA
COUNTY OF FULTON

## LIMITED WARRANTY DEED

THIS INDENTURE, made as of the 2nd day of February, 2022, between BINANAT CAPITAL, LLC, a Georgia limited liability company, as party of the first part, hereinafter called "Grantor", and SINDRE, LLC, a Georgia limited liability company, as party of the second part, hereinafter called "Grantee" (the words "Grantor" and "Grantee" to include their respective heirs, personal representatives, successors and assigns where the context requires or permits).

## W I T N E S S E T H:

THAT, Grantor, for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt, adequacy and sufficiency of which being hereby acknowledged by Grantor, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, all of Grantor's interest in and to the tract or parcel of land commonly known as 538 Ashburton Avenue, Decatur, Georgia 30032 and more particularly described on Exhibit "A", attached hereto and incorporated herein by this express reference, TOGETHER WITH every contingent remainder and right of reversion, and together with all buildings, rights, members, structures, easements, alleys, ways, appurtenances, improvements, shrubbery, trees, plants, fixtures, privileges, tenements or hereditaments, in any way belonging, relating or appertaining thereto (collectively the "Property"), SUBJECT TO and only to all matters of record as of the date hereof (hereinafter collectively referred to as the "Exceptions").

Exhibit 23

DEED BOOK 30118 Pg 627

This is the same property conveyed to Grantor by Deed Under Power of Sale dated August 4, 2020 and recorded August 6, 2020 in the deed records of DeKalb County Superior Court in Deed Book 28533 at Pages 662-665.

THAT, Grantor will, subject to the Exceptions, warrant and forever defend the right and title to Grantor's interest in and to the Property unto Grantee and the heirs, legal representatives, successors and assignees of Grantee against the claims of all persons claiming by, through or under Grantor but not otherwise.

TO HAVE AND TO HOLD the said Property unto Grantee, together with all and singular to the rights, members, easements, licenses, benefits and appurtenances thereof, to the same being, belonging or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever, in FEE SIMPLE, in as full and ample a manner as the same was held, possessed and enjoyed, or might have been held, possessed and enjoyed, by the Grantor.

Exhibit 23

DEED BOOK 30118 Pg 628

IN WITNESS WHEREOF, Grantor has signed and sealed this Deed the day and year first above written.

**GRANTOR:**

Signed, sealed and delivered this 2nd day of February, 2022, in the presence of:

BINANAT CAPITAL, LLC,
a Georgia limited liability company

By: _Robert Storm_ (SEAL)

Robert Storm, its President

Unofficial Witness

_Christina Marron_

Notary Public, State of Georgia at Large
Florida

My commission expires:

```
Christina Marron
NOTARY PUBLIC - STATE OF FLORIDA
MY COMMISSION EXPIRES JAN. 23, 2023
COMMISSION NO. GG 294015
```

*MENDENFREIMAN LLP drafted this deed without the aid of survey or title search, upon the request of the grantor, and assumes no responsibility for accuracy.*

Exhibit 23

DEED BOOK 30118 Pg 629
**Debra DeBerry**
Clerk of Superior Court
DeKalb County, Georgia

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 171 of the 15th District, DeKalb County, Georgia, being Lot 76, Block F, Buena Vista Subdivision, as per plat recorded in Plat Book 15, Page 32, DeKalb County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 538 Ashburton Avenue according to the present system of numbering property in DeKalb County, Georgia.

Exhibit 24

2020034445 DEED BOOK 28118 Pg 217
Filed and Recorded: 2/19/2020 6:00:00 PM
Recording Fee: $25.00
Prepared By:
2209073924

After recording return to:
Nathan T. Johns, Esq.
MENDENFREIMAN LLP
5565 Glenridge Connector NE, Suite 850
Atlanta, Georgia 30342

**Please Cross Reference:**

Deed to Secure Debt & Security Agreement
at Deed Book 26574 Page 56,
DeKalb County, Georgia Records

**Tax Parcel ID: 15 171 21 027**

**STATE OF GEORGIA:**
**COUNTY OF DEKALB:**

## DEED UNDER POWER OF SALE

THIS INDENTURE, made and entered into as of the 4th day of February, 2020, by and between **BLITZ 7 HOLDINGS, LLC**, a Delaware limited liability company (hereinafter referred to as "Borrower"), acting through **BINANAT CAPITAL, LLC**, a Georgia limited liability company, as Borrower's duly appointed agent and attorney-in-fact (hereinafter referred to as "Lender"), as party of the first part, and **BINANAT CAPITAL, LLC**, a Georgia limited liability company (hereinafter referred to as "Purchaser") as party of the second part;

### W I T N E S S E T H :

WHEREAS, Borrower executed and delivered to Lender that certain Deed to Secure Debt and Security Agreement dated October 27, 2017, filed and recorded November 1, 2017 in Deed Book 26574, Page 56, Clerk of Superior Court of DeKalb County, Georgia records, (the "Security Deed") said Security Deed being given to secure a Promissory Note (the "Note") of even date as the Security Deed in the original principal amount of TWO HUNDRED NINETY THOUSAND AND NO/100 DOLLARS ($290,000.00); and

WHEREAS, default under the Note occurred and by reason of such default Lender elected, pursuant to the terms of the Security Deed and the Note, to declare the entire principal and interest immediately due and payable; and

WHEREAS, the entire indebtedness still being in default, Lender, on behalf of Borrower, and according to the terms of the Security Deed, did advertise said property for sale once a week for four weeks in a newspaper in DeKalb County, Georgia, where the Sheriff carried his advertisement, namely, *The Champion Newspaper*, said dates of publication being January 9, 16, 23, and 30, 2020 and the advertisements in all respects having complied with the requirements of the power of sale in the aforesaid Security Deed and the laws of the State of Georgia governing such sales; and

Exhibit 24

2020034445  DEED BOOK 28118 Pg 218

WHEREAS, notice of the Borrower's right to cure said default was given to Borrower, with Borrower failing to cure said default, and notice of the initiation of proceedings to exercise the power of sale provided for in the Security Deed was duly given to Borrower by Lender no later than thirty (30) days prior to the date of foreclosure sale, in writing, and sent by certified mail, return receipt requested, consisting of a copy of the published legal advertisement of the sale and mailed as aforesaid, all in accordance with O.C.G.A. § 44-14-162.2; and

WHEREAS, the party of the second part on even date herewith acquired the after-described property by buying the property at a foreclosure sale conducted pursuant to power of sale in that certain Security Deed; and

WHEREAS, Lender, as attorney-in-fact for Borrower, did expose said property for sale at public outcry to the highest bidder for cash on Tuesday, February 4, 2020, within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb County before the Courthouse door in Decatur, Georgia, in said county, at which said party of the second part was the highest bidder at and for the sum of TWO HUNDRED NINETY THOUSAND AND 00/100 Dollars ($290,000.00) cash, and said property was then and there knocked off and sold for said sum.

NOW THEREFORE, for and in consideration of the foregoing premises and said sum of money and by virtue of the exercise of the power of sale contained in the Security Deed, the party of the first part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the party of the second part, its successors, representatives, heirs and assigns the property described on **Exhibit** **"A"** attached hereto and incorporated herein by reference (the "Property").

TOGETHER WITH, all and singular the rights, members and appurtenances thereto appertaining; also, all the estate of Borrower's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same.

TO HAVE AND TO HOLD the said Property and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of said party of the second part, its representatives, heirs, successors, successors-in-title and assigns, IN FEE SIMPLE forever, in as full and ample a manner as Borrower or Borrower's representatives, heirs, successors or assigns did hold and enjoy the same.

## [THE REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, Lender, acting as attorney-in-fact for Borrower has executed this instrument under seal and delivered same as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

**BINANAT CAPITAL, LLC**, a Georgia limited liability company, as Attorney-in-Fact for **BLITZ 7 HOLDINGS, LLC**, a Delaware limited liability company

_____
Witness

By: _____ (SEAL)
Thomas W. Cox, as Attorney for BinaNat Capital, LLC

_____
Notary Public
My commission expires

*(NOTARY SEAL)*

3

Exhibit 24

2020034445  DEED BOOK 28118 Pg 220
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## EXHIBIT "A"

### Legal Description

ALL THAT TRACT AND PARCEL OF LAND LYING AND BEING IN LAND LOT 171 OF THE 15TH DISTRICT, DEKALB COUNTY, GEORGIA RECORDS, AND BEING LOT 59, BLOCK E, OF BUENA VISTA HEIGHTS SUBDIVISION, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 14, PAGE.154, DEKALB COUNTY RECORDS, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERN SIDE OF ASHBURTON AVENUE 645 FEET SOUTHERLY, AS MEASURED ALONG THE WESTERN SIDE OF ASHBURTON AVENUE, FROM THE POINT FORMED BY THE INTERSECTION OF THE SOUTHERN SIDE OF GLENWOOD ROAD WITH THE WESTERN SIDE OF ASHBURTON AVENUE; SAID POINT OF BEGINNING ALSO BEING AT THE SOUTHEAST CORNER OF LOT 58, SAID BLOCK AND SUBDIVISION; RUNNING THENCE WESTERLY ALONG THE SOUTHERN LINE OF SAID LOT 58, A DISTANCE OF 150 FEET TO AN IRON PIN; RUNNING THENCE SOUTHERLY 71.6 FEET TO AN IRON PIN AT THE NORTHWEST CORNER OF LOT 60, SAID BLOCK AND SUBDIVISION; (THE RECORDED PLAT DISCLOSES THIS LAST CALL TO BE 70 FEET); RUNNING THENCE EASTERLY ALONG THE NORTHERN LINE OF SAID LOT 60, A DISTANCE OF 150 FEET TO A POINT ON THE WESTERN SIDE OF ASHBURTON AVENUE; RUNNING THENCE NORTHERLY ALONG THE WESTERN SIDE OF ASHBURTON AVENUE 70 FEET TO THE POINT OF BEGINNING; BEING IMPROVED PROPERTY KNOWN AS NO. 551 ASHBURTON AVENUE, DECATUR, GEORGIA, AND BEING ALL AS SHOWN ON PLAT OF SURVEY BY VIRGIL F. GADDY AND ASSOCIATES DATED APRIL 15, 1968.

2020108997  DEED BOOK 28510 Pg 143
Filed and Recorded: 7/29/2020 11:22:00 AM
Recording Fee: $25.00
Prepared By:
2869972434
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**AFTER RECORDING RETURN TO:**
Leonard Medley
Medley & Associates, LLC
2727 Paces Ferry Rd SE
Bldg 2 Suite 1450
Atlanta, GA 30339

File Number:  202007040

[SPACE ABOVE THIS LINE FOR PROCESSING INFORMATION]    [SPACE ABOVE THIS LINE FOR RECORDING INFORMATION]

## QUITCLAIM DEED

State of Georgia
County of Cobb

**THIS INDENTURE**, made the 24th day of July, 2020, between Binanat Capital LLC of the County of FULTON, and State of GEORGIA, as party or parties of the first part, hereinafter called Grantor, and Sindre LLC, of the County of FULTON, and the State of GEORGIA, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

**WITNESSETH** that: Grantor, for and in consideration of the sum of Ten Dollars and No Cents ($10.00) and other valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, by these presents does hereby remise, convey and forever QUITCLAIM unto the said grantee,

All that tract and parcel of land lying and being in Land Lot 171 of the 15th District, DeKalb County, Georgia Records, and being Lot 59 , Block E, of Buena Vista Heights Subdivision, as per plat thereof recorded in Plat Book 14, Page 154, DeKalb County Records, and being more particularly described as follows:

Beginning at a point on the Western side of Ashburton Avenue 645 feet Southerly, as measured along the Western side of Ashburton Avenue, from the point formed by the intersection of the Southern side of Glenwood Road with the Western side of Ashburton Avenue; said point of beginning also being the Southeast corner of Lot 58, said Block and Subdivision; running thence Westerly along the Southern line of said Lot 58, a distance of 150 feet to an iron pin; running thence Southerly 71.6 feet to an iron pin at the Northwest Corner of Lot 60, said Block and Subdivsion; (The recorded plat discloses this last call to be 70 feet); running thence Easterly along the Northern line of said Lot 60, a distance of 150 feet to a point on the Western side of Ashburton Avenue; running thence Northerly along the Western side of Ashburton Avenue 70 feet to the point of beginning; being improved property known as No. 551 Ashburton Avenue, Decatur, Georgia, and being all shown on Plat of Survey by Virgil F. Gaddy and Associated dayed April 15, 1968.

PARCEL ID: 15 171 21 027

**TO HAVE AND TO HOLD** the said described premises to grantee, so that neither grantor nor any person or persons claiming under grantor shall at any time, by any means or ways, have, claim or demand any right or title to said premises or appurtenances, or any rights thereof.

**IN WITNESS WHEREOF**, Grantor has signed and sealed this deed, the day and year first above written.

Signed, sealed and delivered
in the presence of:

Binanat Capital LLC

_Robert Storm_                    (Seal)
ROBERT STORM MEMBER

_Sabrina Storm_
Unofficial Witness
Sabrina Storm

_[signature]_
Notary Public
My Commission Expires: 10/27/2020

STEPHANIE JONES
Notary Public - State of Florida
Commission # GG 042858
My Comm. Expires Oct 27, 2020
Bonded through National Notary Assn.

Exhibit 26

Deed Book 16025 Page 743
Filed and Recorded 2/8/2022 1:22:00 PM
2022-0015721
Connie Taylor
Clerk of Superior Court
Cobb County, GA
Participant IDs: 2209073924

**Tax Parcel ID: 19058400010 and 19058400360**

**Return recorded document to:**
**Nathan T. Johns, Esq.**
**Menden Freiman, LLP**
**5565 Glenridge Connector NE, Suite 850**
**Atlanta, Georgia 30342**

**Cross Reference:**

**Deed to Secure Debt and Security Agreement**
**at Deed Book 15516, at Page 2087,**
**Cobb County, Georgia Records**

## TRANSFER AND ASSIGNMENT

STATE OF GEORGIA                                         COUNTY OF FULTON

FOR VALUE RECEIVED, BINANAT CAPITAL, LLC, a Georgia limited liability company, does hereby transfer, assign and convey to PV CAPITAL, LLC, a Georgia limited liability company, whose address is 2204 Sawgrass Village Drive, Ponte Vedra Beach, Florida 32082, their successors and/or assigns, all of BINANAT CAPITAL, LLC's rights, title and interest in, to and under that certain Deed to Secure Debt and Security Agreement executed by JAY-IRE PROPERTIES, LLC, dated February 9, 2018, recorded February 21, 2018 at Deed Book 15516, Page 2087, Cobb County, Georgia Records together with the property therein described, the indebtedness secured thereby and all powers and privileges contained in said security instruments secured thereby.

IN WITNESS WHEREOF, Assignor has caused these presents to be executed on its behalf, to be subscribed, and its seal affixed hereto, effective this 25th day of January, 2022.

Signed, sealed and delivered this
7th day of February, 2022
in the presence of:

_____
Unofficial Witness

_____
Notary Public

BINANAT CAPITAL, LLC,
a Georgia limited liability company

By: _____ [SEAL]
    Robert Storm, its President

Christina Marron
NOTARY PUBLIC - STATE OF FLORIDA
MY COMMISSION EXPIRES JAN. 23, 2023
COMMISSION NO. GG 294015

Exhibit 27

Deed Book 63611 Page 590
Filed and Recorded 04/21/2021 02:23:00 P
2021-0162941
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2209073924

Tax Parcel ID: 13-0031-0002-001-2

**Return recorded document to:**                                   **Cross Reference:**
Nathan T. Johns, Esq.
Menden Freiman, LLP                              **Deed to Secure Debt and Security Agreement**
5565 Glenridge Connector NE, Suite 850                 **at Deed Book 61839, at Page 529,**
Atlanta, Georgia 30342                                  **Fulton County, Georgia Records**

### TRANSFER AND ASSIGNMENT

STATE OF GEORGIA                                           COUNTY OF FULTON

     FOR VALUE RECEIVED, BINANAT CAPITAL, LLC, a Georgia limited liability company, does hereby transfer, assign and convey to PV CAPITAL, LLC, a Georgia limited liability company, whose address is 2204 Sawgrass Village Drive, Ponte Vedra Beach, Florida 32082, their successors and/or assigns, all of BINANAT CAPITAL, LLC's rights, title and interest in, to and under that certain Deed to Secure Debt and Security Agreement executed by Chico Level, dated June 19, 2020, recorded June 30, 2020 at Deed Book 61839, Page 529, Fulton County, Georgia Records together with the property therein described, the indebtedness secured thereby and all powers and privileges contained in said security instruments secured thereby.

     IN WITNESS WHEREOF, Assignor has caused these presents to be executed on its behalf, to be subscribed, and its seal affixed hereto, effective this 16th day of April, 2021.

Signed, sealed and delivered this                   BINANAT CAPITAL, LLC,
_21st_ day of April, 2021                         a Georgia limited liability company
in the presence of;

_____                         By: _____ [SEAL]
Unofficial Witness                                    Robert Storm, its President

_____
Notary Public

ANGELICA MONROSIER
Notary Public - State of Florida
Commission # GG 939461
My Comm. Expires Dec 12, 2023

Deed Book 62691 Page 208
Filed and Recorded 11/30/2020 10:44:00 AM
2020-0354591
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2209073924

Return recorded document to:
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE, Ste 850
Atlanta, Georgia 30342

Cross Reference:
Deed to Secure Debt & Security Agreement
at Deed Book 61114, Page 682,
Fulton County, Georgia Records

Tax ID: 14-0091-0006-031-0

## TRANSFER AND ASSIGNMENT

STATE OF GEORGIA

COUNTY OF FULTON

FOR VALUE RECEIVED, BINANAT CAPITAL, LLC, a Georgia limited liability company, does hereby transfer, assign and convey to PV CAPITAL, LLC, a Georgia limited liability company, whose address is 5565 Glenridge Connector NE, Suite 850, Atlanta, Georgia 30342, their successors and/or assigns, all of BINANAT CAPITAL, LLC's rights, title and interest in, to and under that certain Deed to Secure Debt and Security Agreement executed by RED LABEL RESTORATION GROUP, LLC, a Georgia limited liability company, dated January 23, 2020, recorded at Deed Book 61114, Page 682, Fulton County, Georgia Records, together with the property therein described, the indebtedness secured thereby and all powers and privileges contained in said security instruments secured thereby.

IN WITNESS WHEREOF, Assignor has caused these presents to be executed on its behalf, to be subscribed, and its seal affixed hereto, effective this 23rd day of November, 2020.

Signed, sealed and delivered
this 23rd day of November,
2020, in the presence of:

BINANAT CAPITAL, LLC,
a Georgia limited liability company

By: _Robert Storm_____ [SEAL]

_Christ[a] Adeno_
Unofficial Witness

Robert Storm, its Manager

_____
Notary Public

ANGELICA MONROSIER
Notary Public - State of Florida
Commission # GG 939461
My Comm. Expires Dec 12, 2023

Deed Book 62691 Page 263
Filed and Recorded 11/30/2020 10:47:00 AM
2020-0354598
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2209073924

Return recorded document to:
Nathan T. Johns, Esq.
Menden Freiman, LLP
5565 Glenridge Connector NE, Ste 850
Atlanta, Georgia 30342

Cross Reference:
Deed to Secure Debt & Security Agreement
at Deed Book 62641, Page 266,
Fulton County, Georgia Records

Tax ID: 14-0074-0009-007-8

## TRANSFER AND ASSIGNMENT

STATE OF GEORGIA                                    COUNTY OF FULTON

FOR VALUE RECEIVED, BINANAT CAPITAL, LLC, a Georgia limited liability company, does hereby transfer, assign and convey to PV CAPITAL, LLC, a Georgia limited liability company, whose address is 5565 Glenridge Connector NE, Suite 850, Atlanta, Georgia 30342, their successors and/or assigns, all of BINANAT CAPITAL, LLC's rights, title and interest in, to and under that certain Deed to Secure Debt and Security Agreement executed by ALL LEGAL HUSTLES, LLC, a Georgia limited liability company, dated November 12, 2020, recorded at Deed Book 62641, Page 266, Fulton County, Georgia Records, together with the property therein described, the indebtedness secured thereby and all powers and privileges contained in said security instruments secured thereby.

IN WITNESS WHEREOF, Assignor has caused these presents to be executed on its behalf, to be subscribed, and its seal affixed hereto, effective this 23rd day of November, 2020.

Signed, sealed and delivered          BINANAT CAPITAL, LLC,
this 23rd day of November,            a Georgia limited liability company
2020, in the presence of:

_Christina Adio_
Unofficial Witness                    By: _Robert Storm_          [SEAL]
                                      Robert Storm, its Manager

_____
Notary Public

ANGELICA MONROSIER
Notary Public - State of Florida
Commission # GG 939461
My Comm. Expires Dec 12, 2023

Exhibit 30

Deed Book 62692 Page 34
Filed and Recorded 11/30/2020 10:50:00 AM
2020-0354647
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2209073924

Return recorded document to:                                Cross Reference:
Nathan T. Johns, Esq.                          Deed to Secure Debt & Security Agreement
Menden Freiman, LLP                                 at Deed Book 60929, Page 555,
5565 Glenridge Connector NE, Ste 850                 Fulton County, Georgia Records
Atlanta, Georgia 30342

Tax ID: 14-0116-0001-013-4

## TRANSFER AND ASSIGNMENT

STATE OF GEORGIA                                          COUNTY OF FULTON

FOR VALUE RECEIVED, BINANAT CAPITAL, LLC, a Georgia limited liability company, does hereby transfer, assign and convey to PV CAPITAL, LLC, a Georgia limited liability company, whose address is 5565 Glenridge Connector NE, Suite 850, Atlanta, Georgia 30342, their successors and/or assigns, all of BINANAT CAPITAL, LLC's rights, title and interest in, to and under that certain Deed to Secure Debt and Security Agreement executed by DESIGNS BY TOUCHE', LLC, a Georgia limited liability company, dated November 22, 2019, recorded at Deed Book 60929, Page 555, Fulton County, Georgia Records, together with the property therein described, the indebtedness secured thereby and all powers and privileges contained in said security instruments secured thereby.

IN WITNESS WHEREOF, Assignor has caused these presents to be executed on its behalf, to be subscribed, and its seal affixed hereto, effective this 23rd day of November, 2020.

Signed, sealed and delivered                  BINANAT CAPITAL, LLC,
this 23rd day of November,                    a Georgia limited liability company
2020, in the presence of:

_____                     By: _____  [SEAL]
Unofficial Witness                                Robert Storm, its Manager

_____
Notary Public

ANGELICA MONROSIER
Notary Public - State of Florida
Commission # GG 939461
My Comm. Expires Dec 12, 2023

Exhibit 31

Deed Book 16025 Page 759
Filed and Recorded 2/8/2022 1:25:00 PM
2022-0015724
Connie Taylor
Clerk of Superior Court
Cobb County, GA
Participant IDs: 2209073924

**Tax Parcel ID: 20030601680**

**Return recorded document to:**                    **Cross Reference:**
**Nathan T. Johns, Esq.**
**Menden Freiman, LLP**                    **Deed to Secure Debt and Security Agreement**
**5565 Glenridge Connector NE, Suite 850**          **at Deed Book 15516, at Page 2110,**
**Atlanta, Georgia 30342**                    **Cobb County, Georgia Records**

## TRANSFER AND ASSIGNMENT

STATE OF GEORGIA                                   COUNTY OF FULTON

FOR VALUE RECEIVED, BINANAT CAPITAL, LLC, a Georgia limited liability company, does hereby transfer, assign and convey to PV CAPITAL, LLC, a Georgia limited liability company, whose address is 2204 Sawgrass Village Drive, Ponte Vedra Beach, Florida 32082, their successors and/or assigns, all of BINANAT CAPITAL, LLC's rights, title and interest in, to and under that certain Deed to Secure Debt and Security Agreement executed by Carl M. Felder and Janice W. Felder, dated February 9, 2018, recorded February 21, 2018 at Deed Book 15516, Page 2110, Cobb County, Georgia Records together with the property therein described, the indebtedness secured thereby and all powers and privileges contained in said security instruments secured thereby.

IN WITNESS WHEREOF, Assignor has caused these presents to be executed on its behalf, to be subscribed, and its seal affixed hereto, effective this 25th day of January, 2022.

Signed, sealed and delivered this               BINANAT CAPITAL, LLC,
7th day of February 2022                    a Georgia limited liability company
in the presence of:

_____                    By: _____ [SEAL]
Unofficial Witness                         Robert Storm, its President

_____
Notary Public

Christina Marron
NOTARY PUBLIC - STATE OF FLORIDA
MY COMMISSION EXPIRES JAN. 23, 2023
COMMISSION NO. GG 294015

Exhibit 32

Filing # 188247789 E-Filed 12/18/2023 02:13:43 PM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.: 2022-CA-959
DIVISION: CV-H

BINANAT CAPITAL, LLC, a Georgia limited
liability company,

                 Plaintiff,

vs.

ANNIE B. ROBERTS, an individual;
UNKNOWN SPOUSE OF ANNIE B. ROBERTS;
JADA TRENNETTE ROBERTS, an individual;
UNKNOWN SPOUSE OF JADA TRENNETTE
ROBERTS; WILLIAM ROBERTS III, an
individual; UNKNOWN SPOUSE OF WILLIAM
ROBERTS III; THE CITY OF JACKSONVILLE,
MUNICIPAL CODE COMPLIANCE DIVISION,
a Florida municipal corporation; DDD MARKET
DEVELOPMENT LLC, a Florida limited liability
company; JOHN DOE AND JANE DOE AS
UNKNOWN TENANTS IN POSSESSION; ANY
AND ALL UNKNOWN PARTIES CLAIMING
BY, THROUGH, UNDER AND AGAINST THE
HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO
BE DEAD OR ALIVE, WHETHER SAID
UNKNOWN PARTIES MAY CLAIM AN
INTEREST AS SPOUSES, HEIRS, DEVISEES,
GRANTEES OR OTHER CLAIMANTS,

                 Defendants.

_____/

## <u>AMENDED FINAL JUDGMENT OF FORECLOSURE</u>

      THIS CAUSE having come before the Court on Plaintiff's Emergency Motion to Reset

Foreclosure Sale on Mortgage, and the Court having reviewed the matter, having heard argument

at a hearing on December 13, 2023, and being otherwise fully advised in the premises, it is:

      ADJUDGED that:

      1.      Defendants Annie B. Roberts; Unknown Spouse of Annie B. Roberts; Jada

Trennette Roberts; Unknown Spouse of Jada Trennette Roberts; William Roberts III; Unknown

Spouse of William Roberts III; the City of Jacksonville Municipal Code Compliance Division;

DDD Market Development LLC; John Doe and Jane Doe, as unknown tenants in possession; and,

Any And All Unknown Parties Claiming By, Through, Under And Against The Herein Named

Individual Defendant(s) Who Are Not Known To Be Dead Or Alive, Whether Said Unknown

Parties May Claim An Interest As Spouses, Heirs, Devisees, Grantees Or Other Claimants  have

been duly and regularly served, and the Court has jurisdiction over the parties and subject matter

of this action.

2.      The note and mortgage sued upon by Plaintiff, BinaNat Capital, LLC, in this action

are in default as alleged in the Amended Complaint.

3.      As to each Defendant, there are no genuine issues of material fact, and Plaintiff is

entitled to a judgment in its favor as a matter of law.

4.      **The Property.** The mortgage sued upon by Plaintiff in this action constitutes a

valid lien upon the following-described property located and situated in Duval County, Florida

(collectively, the "Property").

The land referred to herein below is situated in the County of DUVAL, State of Florida, and described as follows:

Beginning at the Southwest corner of Broad and State Streets, as the same are now laid and established and running thence Southerly along the Westerly line of Broad Street, a distance of 93 feet to a point where there is a fence; thence Westerly in an inside angle of 90 degrees 12 minutes with the line last mentioned in a line which is thereby made parallel with the Southerly line of State Street, a distance of 46.80 feet along said fence to another fence; thence northerly in an inside angle of 90 degrees 48 minutes with the last mentioned line, a distance of 17 feet along a fence to a fence corner; thence westerly in an angle of 90° degrees 43 minutes with the last mentioned line, which angle is measured outside of the land hereby northerly in an inside angle of 89 degrees 43 minutes with the last mentioned line a distance of 76 feet along the fence line to the Southerly line of State Street; thence easterly along the Southerly line of State Street, a distance of 61 feet to the point or place of beginning, the said land being part of Block 117, according to Hart's Map of Jacksonville.

5.    **Amounts Due**.  The equities of this action are in favor of Plaintiff, and Plaintiff is

entitled to the foreclosure of its mortgage.  Plaintiff, whose address is 2204 Sawgrass Village

Drive, Ponte Vedra Beach, FL 32082 is due:

| Description | Amount: |
|---|---|
| Amount of Final Judgment of Foreclosure entered on March 1, 2023 | $246,431.47 |
| Post Judgment Interest at 18% per annum as of December 13, 2023 | $34,878.49 |
| | |
| TOTAL DUE | $281,309.96 |

which shall bear interest at the rate of 18% per annum.

6.    **Lien on Property**.  Plaintiff holds a lien for the total sums set forth in Paragraph 5

superior to any claims, interest, or estates of Defendants, any person or entities claiming by,

through, under or against these Defendants, on the Property.

7.    **Sale of Property.**  If the total sum set forth in Paragraph 5, with interest at the rate

prescribed above and all costs of this action accruing subsequent to this Judgment, is not paid, the

Clerk of the Court shall sell Property described in Paragraph 4 at public sale on **January 29, 2024,**

**at 11: 00 a.m.**, to the highest bidder for cash, except as hereinafter set forth, Duval County's Public

Auction website, www.duval.realforeclose.com, in accordance with Section §45.031 Florida

Statutes.

8.    **Costs for Property.**  Plaintiff shall advance all subsequent costs of this action and

shall be reimbursed by the Clerk if Plaintiff is not the purchaser of the Property for sale.  If Plaintiff

is the purchaser of Property, the bid may be assigned without further Order of this Court and the

Clerk shall credit the Plaintiff's bid with the total sum set forth in Paragraph 5 above, together with

interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay

the bid in full.

9.    **Distribution of Proceeds.**   On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the Certificate if Plaintiff is the successful bidder; third, Plaintiff's attorneys' fees; fourth, the total sum due to Plaintiff, as set forth in Paragraph 5, less the items paid, plus interest at the rate prescribed in Paragraph 5 from this date to the date of the sale.  The Clerk shall retain any amount remaining pending the further Order of this Court. Any amounts so retained are to be distributed as determined by Order of this Court.

10.    IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS, PURSUANT TO THIS FINAL JUDGMENT.

11.    IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE.  IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.  THE UNITED STATES SHALL NOT BE BOUND BY THE SIXTY DAY TIME PERIOD IMPOSED BY FLA. STAT. 45.032 UPON MOTIONS FOR DISTRIBUTION OF SURPLUS PROCEEDS.

12.    IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF.    YOU ARE NOT REQUIRED TO HAVE A LAWYER OR OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, DUVAL COUNTY, 501 ADAMS ST., JACKSONVILLE, FL 32202, PHONE (904) 255-2000, WITHIN TEN (10) DAYS AFTER THE

SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE
THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

13.     IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP
YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL
PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN
ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO
MAKE SURE YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE
NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY
WITHOUT THE PROPER INFORMATION.  IF YOU CANNOT AFFORD TO PAY AN
ATTORNEY, YOU MAY CONTACT JACKSONVILLE AREA LEGAL AID (904) 356-8371
TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES.  IF THEY CANNOT
ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL
AGENCY OR SUGGEST OTHER OPTIONS.  IF YOU CHOOSE TO CONTACT
JACKSONVILLE AREA LEGAL AID (904) 356-8371, FOR ASSISTANCE, YOU SHOULD
DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

14.     On filing the Certificate of Sale, Defendant's Right of Redemption as prescribed
by § 45.0315 Florida Statutes shall be terminated.  On filing the Certificate of Title with respect to
the property described in Paragraph 4 above, the Defendants, and all persons claiming by, through,
under or against them since the filing of Notice of Lis Pendens in this action, are foreclosed of all
estate, interest or claim in the property described in Paragraph 4 and the purchasers at the sale shall
be let into possession of the property.

15.     Plaintiffs are permitted to assign to any third party this Final Judgment, Plaintiffs'
right to bid at the foreclosure sale contemplated in Paragraph 7, and/or any successful bid made

by Plaintiffs as the sale contemplated in Paragraph 7, and the Clerk of the Court shall recognize the assignment without necessity of any further Order.

16.    Jurisdiction over this action is retained to enter such further Orders that are proper, including, without limitation, the entry of a deficiency decree and writs of possession.

DONE AND ORDERED this 18th day of December 2023.

_____
G.L. Feltel, Jr.
Circuit Court Judge

Copies to:

**Wendy L. Mummaw, Esq.**
**Assistant General Counsel**
117 West Duval Street, Suite 480
Jacksonville, FL 32202
WMummaw@coj.net
PRein@coj.net
*Attorney for COJ Municipal Code Division*

**Annie B. Roberts**
1422 Starratt Creek Drive
Jacksonville, FL 32226
gone_fishing11@msn.com
*Pro se*

**Jada Trennette Roberts**
1422 Starratt Creek Drive
Jacksonville, FL 32226
gone_fishing11@msn.com
*Pro se*

**Unknown Spouse of William Roberts, III**
7025 Greenfern Lane
Jacksonville, FL 32277

**William Roberts, III**
7025 Greenfern Lane
Jacksonville, FL 32277

**DDD Market Development LLC**
c/o Diedra L. Dix-Wynn
11985 Chester Creek Road
Jacksonville, FL 32218

**Austin B. Calhoun, Esq.**
Jimerson Birr, P.A.
One Independent Drive, Suite 1400
Jacksonville, FL 32202
acalhoun@jimersonfirm.com
samanthab@jimersonfirm.com
fileclerk@jimersonfirm.com
*counsel for Plaintiff*

Filing # 204773025 E-Filed 08/15/2024 10:05:46 AM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.: 2022-CA-959
DIVISION: CV-H

BINANAT CAPITAL, LLC, a Georgia limited
liability company,

               Plaintiff,

vs.

ANNIE B. ROBERTS, an individual;
UNKNOWN SPOUSE OF ANNIE B. ROBERTS;
JADA TRENNETTE ROBERTS, an individual;
UNKNOWN SPOUSE OF JADA TRENNETTE
ROBERTS; WILLIAM ROBERTS III, an
individual; UNKNOWN SPOUSE OF WILLIAM
ROBERTS III; THE CITY OF JACKSONVILLE,
MUNICIPAL CODE COMPLIANCE DIVISION,
a Florida municipal corporation; DDD MARKET
DEVELOPMENT LLC, a Florida limited liability
company; JOHN DOE AND JANE DOE AS
UNKNOWN TENANTS IN POSSESSION; ANY
AND ALL UNKNOWN PARTIES CLAIMING
BY, THROUGH, UNDER AND AGAINST THE
HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO
BE DEAD OR ALIVE, WHETHER SAID
UNKNOWN PARTIES MAY CLAIM AN
INTEREST AS SPOUSES, HEIRS, DEVISEES,
GRANTEES OR OTHER CLAIMANTS,

               Defendants.

_____/

### ORDER CORRECTING SCRIVENER'S ERROR IN LEGAL DESCRIPTION; AMENDING FINAL JUDGMENT OF FORECLOSURE *NUNC PRO TUNC*; AND DIRECTING CLERK TO ISSUE AMENDED CERTIFICATE OF SERVICE

       THIS MATTER came on for consideration upon the Plaintiff's Motion to Correct

Scrivener's Error in Legal Description; Motion to Amend Final Judgment of Foreclosure *Nunc*

*Pro Tunc*; Motion to Direct Clerk to Issue Amended Certificate of Title, the Court being fully

advised in the premises.

       ORDER AND ADJUDGED:

       1.     Plaintiff's Motion to Correct Scrivener's Error is hereby **GRANTED.**

2.    Plaintiff's Motion to Amend Final Judgment of Foreclosure *Nunc Pro Tunc* is hereby **GRANTED.**

3.    The Amended Final Judgment entered on December 18, 2023 is hereby amended, *nunc pro tunc to December 18, 2023*, to correct the scrivener's error in the legal description of the property sold via foreclosure sale set thereby, and correcting the judgment to include the correct legal description as detailed below, in paragraph 5.

4.    The Certificate of Title to Plaintiff, BINANAT CAPITAL, LLC, which was issued on February 12, 2024, and recorded on February 13, 2024, in the Duval County Official Records Book 20951, Page 566, shall be corrected and reissued as follows in paragraph 5.

5.    The Clerk is DIRECTED to and shall **ISSUE** an Amended Certificate of Title to Binanat Capital LLC showing the legal description as the following:

THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND SITUATE, LYING AND BEING IN THE CITY OF JACKSONVILLE, COUNTY OF DUVAL AND STATE OF FLORIDA, DESCRIBED AS: BEGINNING AT THE SOUTHWEST CORNER OF BROAD AND STATE STREETS, AS THE SAME ARE NOW LAID AND ESTABLISHED AND RUNNING THENCE SOUTHERLY ALONG THE WESTERLY LINE OF BROAD STREET, A DISTANCE OF 93 FEET TO A POINT WHERE THERE IS A FENCE; THENCE WESTERLY IN AN INSIDE ANGLE OF 90 DEGREES 12 MINUTES WITH THE LINE LAST MENTIONED IN A LINE WHICH IS THEREBY MADE PARALLEL WITH THE SOUTHERLY LINE OF STATE STREET, A DISTANCE OF 46.80 FEET ALONG SAID FENCE TO ANOTHER FENCE; THENCE NORTHERLY IN AN INSIDE ANGLE OF 90 DEGREES 48 MINUTES WITH THE LAST MENTIONED LINE, A DISTANCE OF 17 FEET ALONG A FENCE TO A FENCE CORNER; THENCE WESTERLY IN AN ANGLE OF 90 DEGREES 43 MINUTES WITH THE LAST MENTIONED LINE, WHICH ANGLE IS MEASURED OUTSIDE OF THE LAND HEREBY DESCRIBED, A DISTANCE OF 13.90 FEET ALONG A FENCE LINE TO ANOTHER FENCE; THENCE NORTHERLY IN AN INSIDE ANGLE OF 89 DEGREES 43 MINUTES WITH THE LAST MENTIONED LINE A DISTANCE OF 76 FEET ALONG THE FENCE LINE TO THE SOUTHERLY LINE OF STATE STREET; THENCE EASTERLY ALONG THE SOUTHERLY LINE OF STATE STREET, A DISTANCE OF 61 FEET TO THE POINT OR PLACE OF BEGINNING, THE SAID LAND BEING PART OF BLOCK 117, ACCORDING TO HART'S MAP OF JACKSONVILLE.

Property Address:816 N. Broad Street, Jacksonville, FL 32202

**DONE AND ORDERED** in Chambers in Duval County, Florida on this 15th day of August 2024.

G.L. Feltel, Jr.
Circuit Court Judge

Copies to: All counsel and parties

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CIVIL ACTION NO: 16-2022-CA-000959-XXXX-MA
DIVISION:
CV-H

AMENDED
This Document is Amending OR BK 20951
PG 566
This Documents is being Amended to reflect
the property's true and correct legal
description.

SPACE FOR RECORDING ONLY F.S. §695.26

BINANAT CAPITAL, LLC

Plaintiff(s)

vs.

ANNIE B ROBERTS
UNKNOWN SPOUSE OF ANNIE B. ROBERTS
JADA TRENNETTE ROBERTS
UNKNOWN SPOUSE OF JADA TRENNETTE ROBERTS
WILLIAM ROBERTS III
UNKNOWN SPOUSE OF WILLIAM ROBERTS III
JANE DOE        Defendant(s)
JOHN DOE
CITY OF JACKSONVILLE, MUNICIPAL CODE COMPLIANCE
DIVISION
DDD MARKET DEVELOPMENT LLC

FILED

AUG 19 2024

DUVAL CLERK OF COURT

Amended
CERTIFICATE OF TITLE

The undersigned Clerk of the Court certifies that he executed and filed a Certificate of Sale in this action on Jan 29, 2024 for the property

described herein and that no objections to the sale have been filed within the time allowed for filing objections.

The following property in Duval County, Florida:

PLEASE SEE EXHIBIT A

was sold to BINANAT CAPITAL, LLC
whose address is: 2204 Sawgrass Village Drive , Ponte Vedra Beach , FL 32082

WITNESS my hand and the seal of the court on Aug 19 2024 , as Clerk of the Circuit Court.



JODY PHILLIPS
CLERK OF THE CIRCUIT AND COUNTY COURTS
By: TRHYA MOORADIAN

Deputy Clerk

THAT CERTAIN PIECE, PARCEL OR TRACT OF LAND SITUATE, LYING AND BEING IN THE CITY OF JACKSONVILLE, COUNTY OF DUVAL AND STATE OF FLORIDA, DESCRIBED AS:
BEGINNING AT THE SOUTHWEST CORNER OF BROAD AND STATE STREETS, AS THE SAME ARE NOW LAID AND ESTABLISHED AND RUNNING THENCE SOUTHERLY ALONG THE WESTERLY LINE OF BROAD STREET, A DISTANCE OF 93 FEET TO A POINT WHERE THERE IS A FENCE; THENCE WESTERLY IN AN INSIDE ANGLE OF 90 DEGREES 12 MINUTES WITH THE LINE LAST MENTIONED IN A LINE WHICH IS THEREBY MADE PARALLEL WITH THE SOUTHERLY LINE OF STATE STREET, A DISTANCE OF 46.80 FEET ALONG SAID FENCE TO ANOTHER FENCE; THENCE NORTHERLY IN AN INSIDE ANGLE OF 90 DEGREES 48 MINUTES WITH THE LAST MENTIONED LINE, A DISTANCE OF 17 FEET ALONG A FENCE TO A FENCE CORNER; THENCE WESTERLY IN AN ANGLE OF 90 DEGREES 43 MINUTES WITH THE LAST MENTIONED LINE, WHICH ANGLE IS MEASURED OUTSIDE OF THE LAND HEREBY DESCRIBED, A DISTANCE OF 13.90 FEET ALONG A FENCE LINE TO ANOTHER FENCE; THENCE NORTHERLY IN AN INSIDE ANGLE OF 89 DEGREES 43 MINUTES WITH THE LAST MENTIONED LINE A DISTANCE OF 76 FEET ALONG THE FENCE LINE TO THE SOUTHERLY LINE OF STATE STREET; THENCE EASTERLY ALONG THE SOUTHERLY LINE OF STATE STREET, A DISTANCE OF 61 FEET TO THE POINT OR PLACE OF BEGINNING, THE SAID LAND BEING PART OF BLOCK 117, ACCORDING TO HART'S MAP OF JACKSONVILLE.

Property Address:816 N. Broad Street, Jacksonville, FL 32202